**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| COSTAR REALTY INFORMATION and COSTAR GROUP, INC., | |
| Plaintiffs, | Civil Action No. 8:08-CV-663-AW |
| v. | |
| MARK FIELD D/B/A ALLIANCE VALUATION GROUP, *et al*. | |
| Defendants. | |

**PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION**
**TO DEFENDANTS LAWSON VALUATION GROUP'S AND**
**RUSS GRESSETT'S MOTIONS TO DISMISS AND FOR VENUE TRANSFER**

Plaintiffs CoStar Realty Information and CoStar Group, Inc. (collectively, "CoStar"), by their attorneys, submit this Consolidated Memorandum in Opposition to the (1) Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Lawson Valuation Group ("Lawson"); (2) Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, a transfer to the Southern District of Texas Pursuant to 28 U.S.C. § 1404 filed by Defendant Russ A. Gressett ("Gressett").[1] For the reasons set forth below, both motions should be denied in their entirety.

---

[1] CoStar is submitting a Consolidated Opposition because Lawson and Gressett raise substantially the same arguments in their Rule 12(b)(2) and Rule 12(b)(6) motions – each challenge jurisdiction on essentially the same grounds and each challenge CoStar's 18 U.S.C. § 1030 and Civil RICO claims on

## APPENDIX OF EXHIBITS

**EXHIBIT A**   Transcript of Hearing Before Judge Messitte, CoStar Realty Information, Inc. v. Atkinson Hunt, Case No. PJM 06-655 (August 28, 2006)

**EXHIBIT B**   Declaration of Steven J. Williams (May 19, 2008)

   **Exhibit 1**  CoStar's Online Terms of Use

   **Exhibit 2**  Log of the log-ins under a user name and password assigned to Russ A. Gressett of Alliance Valuation Group

   **Exhibit 3**  Log of the log-ins under a user name and password assigned to Debra Lawson of the Alliance Valuation Group

   **Exhibit 4**  Log of contacts between CoStar and Russ Gressett

   **Exhibit 5**  Log of contacts between CoStar and Debra Lawson

---

essentially the same grounds. CoStar will expressly address any differences between the two motions as necessary below, and will address Gressett's alternative request for a venue transfer separately below.

## INTRODUCTION AND SUMMARY

Both Lawson's and Gressett's Motions contain similar (if not identical) jurisdictional arguments and arguments concerning CoStar's claim against them under 18 U.S.C. § 1030 and Civil RICO. But the more profound similarity between the two motions is that they simply ignore the well-pleaded allegations of CoStar's complaint against each of them. CoStar's allegations and the attached declaration provide a more than ample basis to support the Court's exercise of personal jurisdiction over Lawson and Gressett, and support CoStar's substantive claims against them. And, for the same reasons, the Court should deny Gressett's attempt to transfer this case to Texas.

**The Court Has Personal Jurisdiction Over Lawson and Gressett**. Both Lawson's and Gressett's Motions completely ignore CoStar's allegations, as set forth in Paragraphs 13, 18-20, and 24, that both Lawson and Gressett have specifically consented to the Court's jurisdiction and the District of Maryland as a venue. When Lawson and Gressett each first logged on to CoStar's website with the user names and passwords provided to them through Alliance, they had to click "I Accept" to CoStar's Terms of Use, which contained a forum and venue selection clause and consent to jurisdiction in this Court. *See* First Amended Complaint at ¶¶ 18-20, 24. It is beyond dispute at this point that such forum selection clauses are enforceable. *See Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 693-95 (D. Md. 2000) (enforcing forum selection clause against plaintiff who clicked button on screen labeled "Agree" to indicate agreement with defendant's Terms of Service). Accordingly, the Court has personal jurisdiction over both Lawson and Gressett.

Moreover, even if Lawson and Gressett had not specifically consented to jurisdiction in Maryland as a result of their acceptance of CoStar's Terms of Use, their tortious activity – illegal access to CoStar's password-protected services – occurred in Maryland, where CoStar's computers and Internet

servers are located. *See* First Amended Complaint at ¶ 13. Thus, under black-letter law providing that jurisdiction lies where a tort is committed and where a defendant has "purposefully directed" its activities towards Maryland, this Court has personal and specific jurisdiction over Lawson and Gressett because of their tortious conduct in Maryland. *See, e.g.*, *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692-93 (D. Md. 2002).

**CoStar Has Sufficiently Alleged A Claim Under 18 U.S.C. § 1030**. Lawson and Gressett's central contention in their motion to dismiss CoStar's claim under 18 U.S.C. § 1030 is that CoStar has failed to allege that it has suffered an *interruption in service* that caused it a $5,000 or greater loss. However, Defendants' assertion that CoStar is required to plead and prove an interruption of service is based on an incorrect reading of the civil remedy provisions of Section 1030 that has been adopted by a minority of district courts. As set forth in detail below, the plain language of Section 1030 suggests that a civil plaintiff need only plead and prove *any* loss of $5,000 or more, which *includes* losses from an interruption of service, but does not exclude any other losses. *See* 18 U.S.C. § 1030(e)(11). Indeed, Defendants' reading of the Section 1030(e)(11) would render portions of that subsection a nullity, a result that should be avoided under established canons of statutory interpretation.

**CoStar Has Sufficiently Alleged A Copyright Claim.** Lawson's and Gressett's key contention as to why CoStar has failed to allege a copyright infringement claim with specificity is based solely on an Eastern District of Virginia case that has not only has been specifically criticized by the leading treatise on civil procedure, but was later acknowledged to be bad law and counter to Supreme Court precedent by another court in the same district. Given the obvious lack of legal precedence of that case, Lawson's and Gressett's argument is simply frivolous.

**CoStar Has Sufficiently Alleged A Civil RICO Claim.**  Both Lawson and Gressett appear to concede that CoStar has alleged each and every element of a Civil RICO claim against them, but claim that CoStar is under a heightened pleading standard because criminal copyright infringement is the underlying crime that supports CoStar's claim.  Then, finding that CoStar's Civil RICO claim fails to include such heightened pleas, they assert a failure on CoStar's part.  However, even if CoStar's claim were subject to such a heightened pleading requirement – a requirement not adopted in this district – Defendants need only look to the allegations of CoStar's copyright infringement claims, which were specifically incorporated by reference in its Civil RICO claim, for all the details they desire.

**The District of Maryland Is the Proper Venue For This Case**.  Gressett separately moves for a transfer of venue pursuant to 28 U.S.C. § 1404 to the Eastern District of Texas.  However, as noted with respect to the personal jurisdiction of this Court over Gressett, Gressett specifically agreed to CoStar's Terms of Use, which selects this Court as the venue for any disputes between the parties.  As such, his transfer of venue motion should be denied outright.  Moreover, even if a full analysis were conducted under the standards of Section 1404, the convenience of the parties and the interest of justice suggest that this case remain before the Court.

Finally, based on the fact that the face of CoStar's First Amended Complaint plainly demonstrates this Court's personal jurisdiction over Defendants, and that Lawson's and Gressett's motions are frivolous in light of those allegations, CoStar hereby requests its attorneys' fees and with respect to this motion.

## FACTUAL BACKGROUND

Headquartered in Maryland, CoStar is a leading, national, commercial real estate information services provider.  *See* First Amended Complaint at ¶¶ 1, 2 & 14.  This case arises out of Defendants'

unauthorized use of CoStar's services, fraudulent representations and contract violations. *See id.* at ¶¶ 25-31.

CoStar's suite of proprietary, web-accessed information services help commercial real estate professionals, such as brokers, owners, lenders, appraisers, and REITs, to understand market conditions and identify and evaluate specific opportunities. *Id.* at ¶¶ 14-15. CoStar invests enormous effort and expense in building and maintaining its services, employing a research force of several hundred individuals located in Maryland alone. *Id.* CoStar's computer servers, which host its database, are house in Bethesda, MD. *See id.* at ¶ 13. CoStar licenses its products to businesses pursuant to written license agreements, for use by a designated number of individuals that are employees for those businesses at a site designated in the CoStar license agreement. *Id.* at ¶¶ 15-17. The CoStar license agreement prohibits password sharing of any kind and sets forth certain permitted and prohibited uses of the CoStar service and the content obtained therefrom. *Id.* at ¶¶ 17-19. Furthermore, CoStar's login web page, as well as its web site Terms of Use, specifically reference the prohibition on logins by unauthorized users. *See id.* at ¶¶ 21-22.

CoStar and Alliance Valuation Group ("Alliance"), another Defendant in this case, agreed to an 11-user license in June 2002. *See id.* at ¶ 25. However, as alleged in the First Amended Complaint, Alliance redistributed its user names and passwords to, among others, Lawson and Gressett, who are third parties and thus not employees of Alliance. *See id.* at ¶¶ 27-29. Lawson and Gressett then used those user names and passwords to Lawson and Gressett to obtain access to CoStar's products and to make unauthorized copies of CoStar's copyrighted works, including copyrighted photographs. *See id.* ¶¶ at 29-30.

As alleged in the First Amended Complaint, in order to access CoStar's services, both Lawson and Gressett were required to indicate their acceptance of CoStar's Terms of Use when they first logged into CoStar's website, as well as at periodic intervals thereafter. *See id.* at ¶ 19. Moreover, each subsequent time Lawson and Gressett logged into CoStar's website, they were presented with a prominent notice advising them that "By logging in you are agreeing to CoStar's <u>terms of use</u>." *Id.*

CoStar's Terms of Use provide that the user "irrevocably consent[s] to the exclusive jurisdiction of the federal and state courts located in the State of Maryland for any action to enforce these Terms of Use."

## **LEGAL STANDARDS**

**1.** **<u>Personal Jurisdiction</u>.** A federal district court may exercise personal jurisdiction over a non-resident defendant where an applicable state long-arm statute confers jurisdiction and the assertion of that jurisdiction is consistent with constitutional due process. *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 768 (D. Md. 2004) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)). Because the Maryland legislature designed its long-arm statute to extend personal jurisdiction to the limits allowed by federal due process, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 317 (4th Cir. 2000) (citation and quotations omitted). Under the due process clause of the Fourteenth Amendment, defendants are subject to a Court's jurisdiction if they have had sufficient minimum and purposeful contacts with Maryland that gave rise to the suit. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (1985).

"When the Court rules on a motion to dismiss for lack of personal jurisdiction without the benefit of an evidentiary hearing, the plaintiff's burden is 'simply to make a prima facie showing of a sufficient

jurisdictional basis in order to survive the jurisdictional challenge.'  The Court, however, must construe all relevant pleadings and inferences in favor of the plaintiff."  *Baker & Kerr, Inc. v. Brennan*, 26 F. Supp. 2d 767, 769 (D. Md. 1998) (Williams, J.).

      **2.**      <u>**Rule 12(b)(6).**</u>  For purposes of a Rule 12(b)(6) motion, all allegations in the complaint are deemed true and all contravening allegations are deemed untrue.  Lawson and Gressett must show beyond doubt that CoStar can allege no set of facts entitling it to relief.  *Edge Partners, L.P. v. Docksar*, 944 F. Supp. 438, 440 (D. Md. 1996).  Matters outside the pleadings are not properly considered on a motion to dismiss.  *Jordan v. Wash. Mut. Bank*, 211 F. Supp. 2d 670 (D. Md. 2005).

      **3.**      <u>**Motion to Transfer Venue.**</u>  As the Court recently stated in *Mamami v. Sanchez de Lozada Sanchez Bustamante*, 2008 WL 1752985, *2 (D. Md. Apr. 15, 2008):

> The standards for transfer under § 1404 are: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones,* 232 F. Supp. 2d 491, 499 (D. Md. 2002). In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Courts are to consider the following factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Cross v. Fleet Reserve Ass'n Pension Plan,* 383 F. Supp. 2d 852, 856 (D. Md. 2005). However, unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight Inc.,* 748 F.2d 916, 921 (4th Cir. 1984). The decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Centers, Inc.,* 933 F.2d 1253, 1257 (4th Cir. 1991).

# ARGUMENT

## I. THE COURT HAS PERSONAL JURISDICTION OVER LAWSON AND GRESSETT

### A. As Set Forth In the First Amended Complaint, Lawson And Gressett Have Consented To This Court's Jurisdiction With Respect To Disputes With CoStar

As CoStar alleges in its First Amended Complaint, Lawson and Gressett each have specifically consented to the Court's jurisdiction over them by accepting CoStar's online Terms of Use, which contains a forum selection clause. That forum selection clause, like other forum selection clauses, has been specifically upheld in this District as a valid basis for asserting jurisdiction and should once again be enforced to allow the Court to exercise personal jurisdiction over Lawson and Gressett. *See* Exh. A, Transcript of Hearing Before Judge Messitte, *CoStar Realty Information, Inc. v. Atkinson Hunt*, Case No. PJM 06-655 (August 28, 2006) ("Atkinson Tr.") at 37-44.

There is no question that both Lawson and Gressett have agreed to CoStar's online Terms of Use. Each person that uses a CoStar user name and password on CoStar's website for the first time is presented with a copy of CoStar's online Terms of Use and is asked to click "I Accept" to those terms before using CoStar's service.[2] *See* First Amended Complaint at ¶ 19. Furthermore, each user is periodically required to click "I Accept" to CoStar's Terms of Use, further indicating their assent. *See id.* CoStar's records show that a person or persons using user names assigned to "Russ A. Gressett of Alliance Valuation Group" and "Debra Lawson of the Alliance Valuation Group" logged on to CoStar's website on a number of occasions and accordingly would have had to indicate their acceptance to CoStar's Terms of Use. Exh. B, Declaration of Steve Williams ("Williams Decl.") at ¶¶ 4-6. The kind of assent that Lawson and Gressett would have had to have made to use CoStar's services is

---

[2] In this regard, the statement by Russ Gressett (paragraph 6 of his declaration) that he has not entered into any contracts with entities in the state of Maryland is incorrect.

sufficient for the purposes of Maryland contract law.  *See Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 693-95 (D. Md. 2000).

Given their acceptance of CoStar's Terms of Use, the Court's personal jurisdiction over Lawson and Gressett naturally follows.  The Terms of Use state:

**Jurisdiction**

CoStar is headquartered in the State of Maryland of the United States. These Terms of Use and your use of this Product shall be governed by the laws of the State of Maryland without regard to its conflicts of laws principles. The federal and state courts located in the State of Maryland shall be the exclusive jurisdiction for any action brought against CoStar in connection with these Terms of Use or use of the Product. You irrevocably consent to the jurisdiction of the federal and state courts located in the State of Maryland, and to the jurisdiction of the federal and state courts located in any State where you are located, for any action brought against you in connection with these Terms of Use or use of the Product.

Exh. B, Williams Decl. at Exh. 1.  It cannot be disputed at this point that a forum selection clause like this is valid and an appropriate basis upon which this Court can exercise personal jurisdiction. *See Koch*, 139 F. Supp. 2d at 692-95 (enforcing forum selection clause contained in AOL's online terms of service); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) ("[a] valid forum selection clause [should be] given weight in all but the most exceptional cases."); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses "are prima facie valid and should be enforced . . ."); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (noting that the "Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity").  Indeed, Judge Messitte found jurisdiction over a defendant based on essentially identical allegations involving CoStar's Terms of Use.  *See* Exh. A, Atkinson Tr. at 38-39.  Because neither Lawson nor Gressett provide the Court with any reason not to honor the forum selection clause of CoStar's Terms of Use, the clause should be honored and their Motions should be denied.

B.  Personal Jurisdiction Over Lawson And Gressett Is Appropriate Because They Have Committed Tortious Acts In Maryland And Because They Have Purposefully Directed Their Conduct At Maryland

Even if there were some reason not to enforce the forum selection clause – which, as discussed above, there is not – the Court should still find that it may exercise personal jurisdiction over Lawson and Gressett.  It is axiomatic that a federal district court may exercise personal jurisdiction over a non-resident defendant where an applicable state long-arm statute confers jurisdiction and the assertion of that jurisdiction is consistent with constitutional due process.  *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 768 (D. Md. 2004) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)).  Lawson's and Gressett's contacts with Maryland are such that at all times relevant to this case they should have reasonably anticipated being haled into court here.  *Id.* (citations omitted).

Lawson and Gressett should not be permitted to claim that they had no reason to believe that their conduct implicated Maryland jurisdiction.  Maryland's long-arm statute confers specific jurisdiction, among other things, where a party transacts business in the state or causes tortious injury in the state.  Md. Code Ann. § 6-103(b)(1), (3) and (4).  Here, there are contracts that Lawson and Gressett were directly a party to (the Terms of Use) and they knew they were using CoStar's computers, which are, quite naturally, located in Maryland with CoStar.  *See* First Amended Complaint at ¶¶ 1-2, 13-14.

As the Court is aware, the fact that a defendant has never set foot in a jurisdiction, as Lawson and Gressett apparently claim, is not a determining factor in a court's exercise of personal jurisdiction.  *Burger King*, 471 U.S. at 476.  Rather, the question is whether Defendants have directed their activities at forum residents such that they would have fair warning that they might be subject to the forum's jurisdiction.  *Id.* at 472 (citations omitted); *Cole-Tuve, Inc. v. Amer. Machine Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004) (foreign defendants who intentionally harm residents of the forum state

subject to personal jurisdiction); *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692-93 (D. Md. 2002) ("strongest factor" in deciding whether personal jurisdiction is based upon business activities directed at forum residents, is whether defendant initiated contact with forum residents).

Here, there is little question that Lawson and Gressett directed their activities at Maryland. Lawson and Gressett improperly accessed CoStar's Maryland computer servers and directed their improper conduct at CoStar, which is headquartered in Maryland and which suffered damages in Maryland due to Defendants' conduct. Moreover, as discussed in the accompanying declaration of Steve Williams, Lawson and Gressett made phone calls to CoStar's Bethesda, Maryland headquarters, seeking assistance from CoStar in using CoStar's products. *See* Exh. B, Williams Decl. at ¶¶ 8, 9. Even the contact information on CoStar's website directs users to CoStar in Bethesda, Maryland. *See* http://www.costar.com/Contacts/. In sum, Lawson's and Gressett's efforts involved computer servers located in Maryland and CoStar's Maryland personnel. Lawson and Gressett transacted business in Maryland by accepting the Terms of Use on CoStar's website, thereby forming a contract with CoStar each time they accessed the website (*see* First Amended Complaint ¶ 27), and by initiating communications with CoStar regarding the use of CoStar's services (*see* Exh. B, Williams Decl. at ¶¶ 8, 9). *See Giannaris*, 219 F. Supp. 2d at 693; *see also Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 369-70 (D. Md. 1993). Furthermore, Lawson's and Gressett's unauthorized use of CoStar's website was intended to cause tortious injury to CoStar in Maryland. *See Cole-Tuve*, 342 F. Supp. 2d at 36l. Thus, there are ample reasons to exercise personal jurisdiction over Lawson and Gressett with regard to this lawsuit.[3]

---

[3] Lawson and Gressett rely heavily on *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649 (D. Md. 2001). That case, however, is distinguishable. In *Ottenheimer*, the defendants' contacts with Maryland were not connected to the plaintiff's claims. *Id.* at 651-52, 654-55. In contrast, in this

## II. COSTAR HAS STATED A COGNIZABLE CLAIM UNDER 18 U.S.C. § 1030

The crux of Lawson's and Gressett's motion to dismiss CoStar's claim under 18 U.S.C. § 1030 is that CoStar has failed to allege that it has suffered an adequate loss of $5,000 or more under § 1030(e)(11). Citing two cases that stand in the distinct minority among federal cases, Lawson and Gressett would have the Court rewrite § 1030 to be limited only to instances in which the loss suffered by the Plaintiff resulted from an *interruption in service*. However, that reading is not only implausible in light of the plain language of the statute, but would render other portions of the statute a nullity, in violation of basic tenets of statutory construction.

The fallacy of Lawson's and Gressett's position is made plain by the text of the definition of "loss" itself, which reads:

> (g) the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11). By its own terms, Section 1030 applies broadly to "*any reasonable cost to any victim*" and then sets forth specific types of damages that are *included* in that definition of "reasonable cost." When a statute introduces a list with the term "including," courts generally interpreted the language that follows as enumerating "illustrative application[s]," not as constituting an "all-embracing

---

case, Lawson's and Gressett's contacts with Maryland, particularly their unauthorized uses of CoStar's web services, are directly connected to CoStar's claims. *See Burger King*, 471 U.S. at 476 n. 18 (even one contact may be sufficient to establish jurisdiction, if the action arises out of that contact). Lawson and Gressett's reliance on *Screen v. Equifax Information Sys., LLC*, 303 F. Supp. 2d 685 (D. Md. 2004), also does not support their position. In *Screen*, the defendant's purported contacts with Maryland arose from the plaintiff's initiation of phone calls from Maryland. *Id*. at 687-88. Here, it is the *defendants*, not the plaintiff, who initiated contacts with Maryland. By initiating the contact with CoStar, Lawson and Gressett expressly aimed their intentional, wrongful conduct toward Maryland, thereby causing harm to CoStar in Maryland. *See Giannaris*, 219 F. Supp. 2d at 693.

definition." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1 (1941). *Accord Jones v. American Postal Workers Union*, 192 F.3d 417, 426 (4th Cir. 1999).

The majority of courts addressing the issue have interpreted the plain language of Section 1030 broadly and to include situations where the claim is based on unauthorized access to the plaintiff's computers for the purposes of accessing information, such as presented in this case. In *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 996-97 (E.D. Cal. 2007), the court held that the plaintiff had asserted a valid claim under 18 U.S.C. § 1030 when it alleged that it had suffered a loss of more than $5,000 as a result of the defendant's unauthorized use of a user name and passcode to access the plaintiff's computers. *Accord Charles Schwab & Co. v. Carter,* 2005 WL 351929, *3 (N.D. Ill. Feb. 11, 2005) (stating "several district courts have recognized that damage caused by unauthorized access or access in excess of authorization to a computer system may be redressed under the CFAA."). *Pacific Aerospace & Electronics, Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003) ("Caselaw supports an employer's use of the CFAA's Civil Remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system"); *see George S. May Int'l Co. v. Hostetler,* 2004 WL 1197395, *3 (N.D. Ill. May 28, 2004) (holding that plaintiff stated a claim under the CFAA when it alleged that the defendant had exceeded his authorized access and acquired trade secrets that were later used to the detriment of the plaintiff); *see also Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 936 (9th Cir. 2004) (holding that loss of business and business goodwill constitutes recoverable damages under the CFAA); *Resource Center for Independent Living, Inc. v. Ability Resources, Inc.*, 534 F. Supp. 2d 1204, 1210-11 and n. 30 (D. Kan. 2008). To underscore this point, the court in *Frees, Inc. v. McMillan*, 2007 WL 2264457, *5-6 (W.D. La. Aug. 6, 2007), conducted an exhaustive analysis of the jurisdictional

requirements of 18 U.S.C. § 1030 based on a reading of the plain language of the statute and concluded that there was no statutory requirement that a loss be related to an "interruption of service."

Lawson's and Gressett's argument that claims under 18 U.S.C. § 1030 are limited to losses related to interruptions of service improperly reads out significant portions of the statute. As noted above, the definition of loss is written with an "including" clause that demands that the rest of the definition as illustrative and not exclusive. However, if, as Defendants argue, the statute limited losses to those resulting from "interruptions of service," the language between "any reasonable cost to any victim" and "because of interruption of service" would be rendered superfluous. The cost of "conducting a damage assessment," despite being specifically allowed, could not support a claim under Defendants' reading if there was no interruption of service. It is well-established that "'courts should disfavor interpretations of statutes that render language superfluous.'" *In re Witt,* 113 F.3d 508, 512 (4th Cir. 1997) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146 (1992)).[4]

Moreover, Defendants' imposition of an "interruption of service" requirement on Section 1030 claims would make the tail of the statute (the jurisdictional "loss" requirement) wag the dog. After all, Section 1030(a)(4) makes it unlawful to:

> knowingly and with intent to defraud, access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct further[] the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

This language – which explains exactly what the unlawful conduct giving rise to a claim is – is predicated on unauthorized access to a protected computer (*i.e.*, one used in interstate commerce, such

---

[4] Had Congress intended to limit "losses" to those resulting from an "interruption of service," the easiest and most grammatically clear way to do so would have been to state "any reasonable cost to any victim because of the interruption of service, including . . . ."

as CoStar's database servers) to obtain something of value (here, CoStar's data). Defendants would take the $5,000 jurisdictional loss requirement to negate the unlawfulness of accessing a protected computer to take something of value where the unauthorized access did not result in an interruption in service – a result plainly inconsistent with the overall scheme of the statute.

## III.    COSTAR HAS ALLEGED A VALID COPYRIGHT CLAIM AGAINST LAWSON AND GRESSETT

Both Lawson and Gressett make the argument that CoStar has failed to allege its copyright claim with sufficient particularity under a purportedly heightened pleading standard. In doing so, Defendants hang their rhetorical hat on a single case, *Paragon Services, Inc. v. Hicks,* 843 F. Supp. 1077, 1081 (E.D. Va. 1994), which, even a modicum of research would show is not only solitary among federal courts in its application of a heightened pleading standard to copyright infringement claims, but *is no longer good law in the district in which it was decided.* Lawson's and Gressett's argument is thus not only meritless, it is frivolous.

After *Paragon* was decided, it was specifically criticized in the leading federal civil procedure treatise as being "in clear violation" of the Supreme Court's ruling in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160 (1993). 5 Charles A. Wright & Arthur R. Miller, FED. PRACTICE AND PROCEDURE, § 1237. And, indeed, when the Eastern District of Virginia, from whence *Paragon* came, revisited *Paragon*'s ruling just four years later, the court concluded that *Paragon* was wrongly decided. *See Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 789-90 (E.D. Va. 1998). Instead, the *Jetform* court decided to follow the precedent of the Seventh Circuit in *Mid America Title Company v. Kirk,* 991 F.2d 417, 421-22 and n. 9 (7th Cir. 1993), which held that copyright infringement claims which merely allege ownership of the copyright by the plaintiff,

registration in compliance with the applicable statute, and infringement by the defendant are sufficient under Fed. R. Civ. P. 8.

In this case, CoStar has easily alleged sufficient facts to support a copyright claim against both Lawson and Gressett. In paragraphs 50 and 51 of the First Amended Complaint, CoStar alleges that it owns valid and registered copyrights in its databases of commercial real estate information as well as millions of photographs. In paragraph 30 of the First Amended Complaint, CoStar alleges that Lawson and Gressett (among others) used their unauthorized access to CoStar's password-protected *services to make unauthorized copies and displays of CoStar's copyrighted databases and photographs*. And, as paragraph 52 alleges, such actions constituted infringement of CoStar's copyrights, which is consistent with an unbroken line of copyright precedents. *See, e.g.*, *Lowry's Reports, Inc. v. Legg Mason, Inc.* 271 F. Supp. 2d 737, 745 (D. Md. 2003); *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 518-19 (9th Cir. 1993) (finding that unauthorized transfer of copyrighted material into a computer's random access memory infringed owner's copyrights). CoStar then further provides, by way of example, a list of such photographs infringed by Lawson and Gressett, as well as their copyright registration numbers, as Exhibit A to the First Amended Complaint. *See* First Amended Complaint at ¶ 53 and Exh. A. Accordingly, CoStar has alleged the elements that are necessary to prove its copyright infringement claim. *See, e.g.*, *Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 660 (4th Cir. 1993) (noting that a copyright plaintiff need only prove ownership of a valid copyright and copying by the defendant).

## IV. COSTAR HAS STATED A COGNIZABLE CIVIL RICO CLAIM

Lawson and Gressett also seek to challenge CoStar's Civil RICO claim against them, which is based on CoStar's assertion that their infringement of CoStar's copyrights constitutes criminal copyright infringement. Their assertions are predicated not only on the mistaken assumption that CoStar's

copyright claim fails under the discredited *Paragon* decision but that CoStar's Civil RICO claim is again subjected to a heightened pleading standard. As set forth in Section III above, *Paragon* is bad law and CoStar's copyright infringement claim is properly alleged. Moreover, there is no heightened pleading standard for a Civil RICO claim, and even if there were, CoStar's detailed complaint concerning the continuous fraudulent and criminally infringing conduct of Alliance, Lawson and Gressett more than meets any heightened pleading standard.

In order to establish a valid civil RICO claim, a plaintiff must allege: "(1) the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). A plaintiff must also allege an injury that has been caused by the racketeering activity. *See id.* An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern" requires the commission of at least two acts of racketeering activity within a ten-year period. *See* 18 U.S.C. § 1961(5). "Racketeering activity is any act indictable under the various provisions of 18 U.S.C. § 1961." *Stewart v. Wachowski*, 2004 WL 2980783, *3 (C.D. Cal. Dec. 16, 2004). Criminal copyright infringement is a predicate indictable act under 18 U.S.C. § 1961. *See id.* Criminal copyright infringement is defined as willful copyright infringement if such infringement was committed either: (1) for the purposes of commercial advantage or private financial gain; (2) by the reproduction of copyright works with a total retail value of more than $1,000; *or* (3) by distributing a work being prepared for commercial distribution. *See* 17 U.S.C. § 505(1). A defendant need not be convicted or even criminally charged of criminal copyright infringement to be liable under the civil RICO statute. *See Stewart*, 2004 WL 2980783 at *4.

CoStar plainly alleges all of the necessary elements of a Civil RICO claim. CoStar alleges that Lawson and Gressett's infringement was willful and for the purposes of commercial advantage or private financial gain. *See* First Amended Complaint at ¶ 73. The private financial gain of Lawson and Gressett is obvious from the other allegations: CoStar charges a subscription fee for its services, which Lawson and Gressett avoided by obtaining user names and passwords unlawfully from Alliance Valuation Group. *See id.* at ¶¶ 15-16, 27-29. Thus, the predicate acts of the criminal copyright statute, 17 U.S.C. § 505(1) are alleged.[5]

With regard to the other substantive elements of the Civil RICO claim, CoStar has made ample and specific allegations that are sufficient to survive Lawson's and Gressett's Motions to Dismiss. Lawson's and Gressett's only complaint with respect to CoStar's Civil RICO allegations is the "enterprise" element of the Civil RICO cause of action. They contend that CoStar's allegations are "conclusory," citing only to paragraphs 72-78 of the Complaint and thus insufficient.[6] However,

---

[5] Lawson's and Gressett's citation to *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 768 (D. Colo. 2007) is not only inapposite, but the case cited does not even contain the proposition for which Lawson cites it – namely that a Civil RICO plaintiff depending on a criminal copyright claim must specify which defendant committed which acts giving rise to the claim. Instead, the holding cited by Lawson relates to the Civil RICO claim <u>*based on wire fraud*</u>, which is a fraud-based claim that *is* subject to a heightened pleading requirement under Fed. R. Civ. P. 9(b). *See id.* ("Claims for <u>*wire fraud*</u> as a RICO predicate must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).") (emphasis added). Lawson's and Gressett's attempt to mischaracterize the holding of this case, compounded with their citation of the obviously invalid *Paragon* case, not only demonstrates that their Motions are frivolous in nature and thus CoStar should recover its legal fees and costs in responding to the Motions, but raises substantial questions about whether their arguments are consistent with the obligations of a litigant to the Court.

[6] For support that these allegations are "conclusory" and thus insufficient, Lawson and Gressett each cite to "*id.,*" which, despite the fact that the most recent citation is CoStar's Complaint, must mean the aforementioned *Internet Archive v. Shell*. However, in that case, the reason that the Civil RICO claim failed to allege an "enterprise" was because a RICO enterprise cannot be formed between a corporation and its board of directors, lest every action against a corporation be a Civil RICO claim. *See Internet Archive*, 505 F. Supp. 2d at 768-69. The case therefore does nothing to support Defendants' position.

-19-

CoStar's allegations meet its statutory burden – paragraphs 25 through 31 describe how Alliance, Lawson, Gressett and others formed a nationwide association in fact to traffic in CoStar user names and passwords assigned to Alliance. Gressett, as part of this enterprise, further re-sold the user names and passwords he had access to other parties, including the John Does named in the First Amended Complaint. *See* First Amended Complaint ¶ 28. This conduct occurred over a multi-year period, as alleged in paragraph 25. As summed up in paragraph 75:

> Through their consistent interactions and dealings with each other, and because their relationship is in part based upon the willful and criminal infringement of CoStar's copyrights and other rights, Defendants are associated in fact and constitute an "enterprise" for the purposes of 18 U.S.C. § 1961(4).

While Lawson and Gressett claim that allegation is "conclusory," it simply sums up the detailed allegations of the other portions of the First Amended Complaint that establish that Alliance, Lawson and Gressett had an continuing multi-year organization that functioned as a unit separate from the businesses that Defendants operated. As such, CoStar has met any standard for pleading the existence of an "enterprise" among Defendants, including Lawson and Gressett.

IV. **GRESSETT'S MOTION FOR A VENUE TRANSFER SHOULD BE DENIED BECAUSE THIS DISTRICT IS THE MOST APPROPRIATE FORUM TO LITIGATE THIS ACTION**

Gressett's motion for a transfer of venue should be denied because the factors considered under § 1404 weigh decidedly against transfer." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (unless the balance is strongly in favor of transfer, the plaintiff's choice of forum will rarely be disturbed). In weighing whether to transfer under § 1404, courts consider: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice." *Cross v. Fleet Reserve Assoc.*

*Pension*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citing *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615 (D. Md. 2002)).

    A.    The Forum Selection Clause Of the Agreement Between CoStar and Gressett Mandates That this Case Be Heard in Maryland.

As noted in detail above, Gressett specifically agreed to litigate any cases with CoStar concerning use of CoStar's services in the state and federal courts of Maryland by accepting CoStar's Terms of Use. Accordingly, Gressett's motion to transfer should be denied on the grounds of the existence of that forum selection clause, which waives any right he would have to challenge the convenience of Maryland as a forum. *See, e.g., Capital Source Finance, LLC v. Delco Oil, Inc.,* 2007 WL 3119775, *10-11 (D. Md. Sep 17, 2007); *Davis Media Group, Inc v. Best Western Internat'l, Inc.*, 302 F. Supp. 2d 464, 470 (D. Md. 2004) (enforcing forum selection clause in context of motion to transfer venue to protect the parties' legitimate expectations).

    B.    CoStar's Choice of Forum Is Entitled To Substantial Weight.

A plaintiff's choice of forum is entitled to substantial weight by a court in determining whether transfer is appropriate under § 1404. *Cross*, 383 F. Supp. 2d at 856. This is especially true where, as here, events giving rise to the litigation took place in the forum. *Cole-Tuve, Inc. v. Amer. Machine Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004) (plaintiff's choice of forum accorded "considerable weight" where defendant's online activities giving rise to litigation affected plaintiff's business in Maryland). Here, Gressett's misuse and unlawful distribution of CoStar's services directly affected CoStar's business in Maryland requiring that substantial deference be paid to CoStar's choice of forum. *See* First Amended Complaint at ¶¶ 13-14.

C.    The Inconvenience To CoStar, Its Witnesses, and Other Parties Weighs Against Transfer.

Also to be considered by the Court in determining whether to transfer is the convenience of the parties and the witnesses. CoStar and its witnesses, on the other hand, will suffer inconvenience if required to travel to the Eastern District of Texas to litigate this case. As detailed in the Declaration of Steve Williams, CoStar and all the witnesses that may testify in this litigation reside in Maryland and will be inconvenienced by litigation in Texas. *See* Exh. B, Williams Decl. at ¶ 10; *Cole-Tuve*, 342 F. Supp. 2d at 370 (courts will not impose burden of litigating in an different forum upon a plaintiff where only connection with proposed transferee forum is that defendants reside there).[7] At the very least, the convenience issue is "a wash" between the parties which weighs in favor of keeping this case in Maryland. *Choice Hotels Internat'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998) (denying transfer and reasoning that "there has been no substantial showing by defendant that a transfer . . . would do anything other than shift the greater burden and inconvenience of trial from defendants to plaintiffs, which is not a proper purpose of a transfer of venue.").

Moreover, it should be noted that Gressett is not the only defendant in this lawsuit. Two other defendants, Mark Field (d/b/a Alliance Valuation Group) and Pathfinder Mortgage Corporation, are located in California, and Lawson is located in Florida. While Gressett may find convenience in Texas as a forum, the other Defendants may be more inconvenienced by travel to Texas rather than Washington.

Finally, out of respect for convenience to Gressett, CoStar is willing to offer to take any deposition of Mr. Gressett or his employees at or near his place of business.

---

[7] CoStar also has a legitimate expectation that its forum selection clause will be enforced.

D.    <u>The Interests Of Justice Weigh Against Transfer</u>.

Courts also look to the interests of justice on a § 1404 motion which encompasses "'all those factors bearing on transfer that are unrelated to convenience of witnesses and parties.'"  *Cross*, 383 F. Supp. 2d at 857 (quoting *Sheet Metal Workers Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988)).   These factors include, as is relevant here, a court's familiarity with applicable law, the possibility of an unfair trial or harassment, ease of access to sources of proof and court congestion.  *Id.*; *Baylor Heating and Air Conditioning*, 702 F. Supp. at 1260.  Weighing these factors, it is plain that transfer is not warranted.

First, the parties' agreement calls for application of the state law of this forum – Maryland law. Second, there is no allegation that Defendant will receive and unfair trial or be harassed by litigating in Maryland.   Third, this case centers around CoStar's database services and its contract with Mark Field (d/b/a Alliance Valuation Group)  all of which are located in and administered in Maryland.   As such, many of the relevant documents are to be found in Maryland.   *See* Exh. B, Williams Decl. at ¶ 10. Clearly, the interests of justice weigh heavily against transfer.

## VI.    LAWSON'S "COMMINGLING CAUSES OF ACTION" ARGUMENT SHOULD BE REJECTED

The Court should reject Lawson's bizarre[8] argument (Section V of its brief) that CoStar's First Amended Complaint should be dismissed in its entirety because, CoStar has "commingled" legal and equitable causes of action in its pleading.   Lawson's principle authority for its argument is a 1949 Supreme Court case that – quite offhandedly – notes that, while *not fatal*, it is not proper to plead different *theories* in the same paragraph of a complaint.  *See O'Donnell v. Elgin, J. & E. Ry. Co.*, 338

---

[8] It should be noted and perhaps emphasized that Gressett's Motion (filed after Lawson's), which otherwise copies Lawson's arguments verbatim, does not even include this "commingling" theory.

U.S. 384, 392, 70 S.Ct. 200 (1949). Indeed, that sentence was only *dictum* in that case, as the Court was not ruling on the propriety of the pleading. *See id.* Lawson's other authority, a Pennsylvania district court case, involved a plaintiff's failure to identify his breach of contract claim as a separate *count* in his complaint, leaving the court and the defendant with no indication that he intended to pursue that separate cause of action. *See Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 831 (W.D. Pa. 1992). At the time the plaintiff made the court aware of that claim, the defendant had filed for summary judgment on the plaintiff's federal discrimination claim. *See id.* Having decided that the defendant was entitled to summary judgment on the federal claim, which was the sole basis for its jurisdiction, the court found that the sanction of dismissing plaintiff's claim in its entirety would be a "harsh" result and simply dismissed the breach of contract claim without prejudice so that it could be re-filed in state court. *See id.* It is hard to see why Lawson would believe that either precedent would reasonably support the argument it asserts – that CoStar's claims should be dismissed *in their entirety* because CoStar incorporated the other allegations into each count of the First Amended Complaint.[9]

CoStar's First Amended Complaint was a fairly standard pleading under the Federal Rules. It contains introductory paragraphs, statements of jurisdiction and venue, a statement of the case, separate counts, and a prayer for relief. Undoubtedly, the Court has seen many of these types of pleadings before, and there is no reason to believe that it is in any way inconsistent with Fed. R. Civ. P. 10(b), which states that "[i]f doing so would promote clarity," separate claims should be put into separate counts. There is no basis for dismissing the First Amended Complaint based on Lawson's argument,

---

[9] Lawson's statement that CoStar's pleading fails because CoStar requests injunctive relief on its breach of contract claim because "some of its injury is irreparable." First Amended Complaint at ¶ 39. This contention is beyond a red herring – the courts are no longer divided between law and equity and it is black letter law that a breach of contract claim can lead to injunctive relief, especially in cases where

which can only be construed as a means of further increasing CoStar's costs in responding to Lawson's motion.

## CONCLUSION AND REQUEST FOR FEES AND COSTS

For the foregoing reasons, CoStar respectfully requests that (1) Defendant Lawson's Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) be denied, (2) Defendant Gressett's Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) or, in the alternative, for a venue transfer pursuant to 28 U.S.C. § 1404 be denied, and (3) that the Court award CoStar its attorneys' fees and costs in responding to the Motions, or other such relief as the Court may deem appropriate.

Dated: May 19, 2008                                    Respectfully submitted,


        /s/
_____
Shari Ross Lahlou, Bar. No. 16570
William Sauers Bar. No. 17355
Sanya Sarich (*pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 624-2500
Facsimile (202) 628-5116
Email   slahlou@crowell.com
       wsauers@crowell.com
       ssarich@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc., a Delaware Corporation, and CoStar Group, Inc., a Delaware Corporation*

---

intellectual property rights are involved.  *See, e.g.*, *Dairy King, Inc. v. Kraft, Inc.*, 665 F. Supp. 1181, 1185 (D. Md. 1987).

## CERTIFICATE OF SERVICE

I hereby certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the above document was served upon the attorneys of record for the following parties by electronically filing the document with the Clerk of Court using the CM/ECF system, which caused a Notice of Electronic Filing (NEF) to be sent to the following on May 19, 2008:

Simeon Brier
Gary A. Woodfield
Edwards Angell Palmer Dodge LLP
350 East Las Olas Blvd.
Suite 1150
Fort Lauderdale, FL 33301
Telephone: 954.667.6140
Facsimile: 954.727.2601
sbrier@eapdlaw.com
gwoodfield@eapdlaw.com

*Attorneys for Defendant Lawson Valuation Group*


R. Wayne Pierce
The Pierce Law Firm, LLC
133 Defense Highway
Suite 106
Annapolis, MD 21401-7015
Telephone: 410.573.9959
Facsimile: 410.573.9956
wpierce@adventurelaw.com

*Attorney for Defendants Mark Field d/b/a Alliance Valuation Group and Pathfinder Mortgage Company*

Mary-Olga Lovett
Pamela Ferguson
Greenberg Traurig
1000 Louisiana Street
Suite 1800
Houston, TX 7700
Telephone: 713.374.3500
Facsimile: 713.374.3505
lovettm@gtlaw.com
fergusonp@gtlaw.com

*Attorneys for Defendant Russ A. Gressett*


I further certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the

above document was sent to the following via overnight FedEx on May 19, 2008:

Gerald A. Teel Co., Inc.
974 Campbell Rd.
Suite 204
Houston, TX 77069

_____/s/_____

Sanya Sarich (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C.  20004-2595
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116
Email: ssarich@crowell.com

*Attorneys for Plaintiffs CoStar Realty
Information, Inc., and CoStar Group, Inc.*
