IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| CoSTAR REALTY INFORMATION, INC., <br> 22 Bethesda Metro Center, 10th Floor <br> Bethesda, Maryland 20814 <br><br> and <br><br> CoSTAR GROUP, INC. <br> 2 Bethesda Metro Center, 10th Floor <br> Bethesda, Maryland 20814 <br><br> Plaintiffs, <br><br> v. <br><br> Mark Field d/b/a Alliance <br> Valuation Group <br> 2858 Via Bellota <br> San Clemente, California 92673, <br><br> LAWSON VALUATION GROUP, INC. <br> 8895 N. Military Trail, Suite 304E <br> Palm Beach Gardens, Florida 33410-6263, <br><br> RUSS A. GRESSETT <br> 5625 FM 1960 West, Suite 509 <br> Houston, Texas 77069, <br><br> GERALD A. TEEL COMPANY, INC. <br> 974 Campbell Rd., Suite 204 <br> Houston, Texas 77024-2813, and <br><br> PATHFINDER MORTGAGE COMPANY <br> 23172 Plaza Point Dr., Suite 285 <br> Laguna Hills, California 92653, <br><br> and <br><br> JOHN DOES 1-4 <br> Addresses Currently Unknown <br><br> Defendants. | CIVIL ACTION NO. AW-08-663 |

**Defendant Gressett's Reply to Plaintiff's Response to**
**Motion to Dismiss and alternatively, Motion to Transfer Venue**

# DEFENDANT RUSS A. GRESSETT'S REPLY TO PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR VENUE TRANSFER AND OBJECTIONS TO RESPONSIVE EVIDENCE

Defendant Russ A. Gressett ("Defendant" or "Mr. Gressett") hereby files this Reply to Plaintiffs' Consolidated Response in Opposition to Defendants' Motions to Dismiss and for Venue Transfer and his Objections to Plaintiff's Responsive Evidence. In support thereof, Defendant respectfully states the following:

## I.

### OBJECTIONS TO PLAINTIFF'S RESPONSIVE EVIDENCE

1. Defendant objects to Plaintiff's inclusion of a hearing transcript from 2006 in front of the Hon. Peter J. Messitte of the Southern Division. The transcript is hearsay and Judge Messitte's ruling does not serve as binding precedent on this Court.

## II.

### REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION

**A.  Lack of Personal Jurisdiction**

2. Plaintiff's Response argues that this Court may exercise personal jurisdiction over Mr. Gressett based on several phone calls to Plaintiff and Mr. Gressett having accessed Plaintiff's website on numerous occasions from his computer in Houston, Texas. But these allegations are insufficient to confer personal jurisdiction over Mr. Gressett.

3. Plaintiff begins its argument by trying to convince this Court that Judge Messitte's decision in a separate matter is the beginning and end of the analysis. This argument exemplifies the overall weakness in Plaintiff's Response against Mr. Gressett.

2

Judge Messitte was presented with different facts *and* a different Terms of Use document. *See Exhibit A to Plaintiff's Response*, at pg. 8. Therefore, Judge Messitte's decision in the *Atkinson* matter is inconclusive, has no precedential value, and certainly cannot serve as a means for this Court to shortcut its analysis of the Motion to Dismiss.

4. Minimum contacts exist, so as to confer personal jurisdiction over a defendant, where his "conduct and connection with the forum State [are] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Supreme Court has emphasized that, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985), (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

5. Plaintiff claims that Mr. Gressett's acceptance of its website's Terms of Use is sufficient to confer personal jurisdiction over Mr. Gressett, because it forms a contract with a clause consenting to this Court's jurisdiction. Even assuming this is true, the U.S. Supreme Court has established that where the case involves a contract with a nonresident defendant the court must perform an "individualized and pragmatic inquiry" into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp.*, 471 U.S. at

3

479; see also *Municipal Mortgage & Equity v. South Fork Apartments Ltd. Partnership*, 93 F.Supp.2d 622, 626 (D. Md. 2000). While the presence of a forum selection clause is a factor, it does not itself foreclose the analysis. This is especially true when the forum selection clause is contained in boiler-plate language as part of a twelve-page "Terms of Use" document attached to a website log-in. Instead, the specific facts that the Court should weigh include "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity*, 93 F. Supp. 2d at 626 (internal quotation omitted). Ultimately, the question is whether the alleged contract had a "substantial connection" to the forum state. *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000). No such purposeful connection can be attached to Mr. Gressett.

6. Mr. Gressett accessed Plaintiff's website from Texas. There is no evidence of any negotiations, performance or payments made by Mr. Gressett in Maryland by accessing the website. There is no allegation or evidence that Mr. Gressett used any of the information on Plaintiff's website in Maryland or that he intentionally sought to conduct any business in Maryland when he accessed the site. Accordingly, there is no evidence Mr. Gressett had any purposeful connection to Maryland.

7. Plaintiff also argues that Mr. Gressett placing several phone calls to Plaintiff in Maryland may substantiate personal jurisdiction over him. However, merely making phone calls to a party located in the forum state cannot establish personal jurisdiction a defendant. *See, e.g., Stover v. O'Connell Associates, Inc.*, 84 F.3d 132, 137 (4th Cir. 1996), cert. denied, 519

U.S. 983 (1996) (finding a defendant's "occasional telephonic requests for information from Maryland-based investigation services" it contracted with to be insufficient to subject the defendant to personal jurisdiction in a Maryland court). Again, Plaintiff's Response remains tied to Mr. Gressett's access of its website alone to establish personal jurisdiction. But the very nature of internet access defeats this argument and cannot create the minimum contacts necessary to establish personal jurisdiction.

8. Any argument that Mr. Gressett's access of Plaintiff's website warrants the exercise of jurisdiction over Mr. Gressett must fail. Whether viewed as a tort or otherwise website access is insufficient to establish the necessary purposeful "minimum contacts" in Maryland for this Court exercise jurisdiction over Mr. Gressett. This Court should be careful in determining whether or not a party's accessing of a Maryland-based website from a foreign jurisdiction is sufficient to establish "presence" in Maryland for purposes of conferring jurisdiction. As the Fourth Circuit cautioned in *ALS Scan*:

> "if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated."

*ALS Scan, Inc. v. Digital Service consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002). Because of the passive nature of internet access itself, there is a clear danger to due process if website access can confer jurisdiction.

9. In the *Stover* case, the Fourth Circuit, interpreting Maryland law, stated that ordering a product or service by telephone from a company in a different state does not

subject the customer to that state's jurisdiction. *See Stover*, 84 F.3d at 137, citing, *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417-18, 104 S.Ct. 1868, 1873-74, 80 L.Ed.2d 404 (1984). The Fourth Circuit explained that "while it is true that the electronic connection transports the customer's order for the product or service into the forum state, thereby prompting a response, such conduct does not establish the customer's "presence" in that jurisdiction." *Stover*, at 137. The *Stover* Court went on to conclude that the use of a telephone to facilitate transactions between remote locations to establish "presence" in a state would upset generally held expectations. *Id.*, citing *Craig v. General Finance Corp.*, 504 F. Supp. 1033, 1038-39 (D. Md. 1981). In other words, the mere ordering of the product remotely from a Maryland resident does not raise the expectation in the purchaser that he will be hauled into a Maryland court. The Fourth Circuit wisely explained that such an overly broad definition of personal jurisdiction would redefine the nature of state sovereignty. *Id.* It would be absurd to treat the use or purchase of products or services through a website any differently than those same transactions made by telephone.

10. Accordingly, while it is certainly true, as Plaintiff argues in its Response, that a defendant does not have to be physically present in the state to subject himself to personal jurisdiction, it is also true that he must establish his "presence" in the state through some intentional conduct. Accessing an internet website is unique in that it does not require the person to seek out the forum state. The information or the website is simply available to him, wherever he may be in the world. For this reason, this Court must guard against allowing access to a website, where the site's owner is located in Maryland, to establish

6

personal jurisdiction over any person, wherever in the world he may be located. As the Fourth Circuit has forewarned, such a rule of law would obliterate the territorial separateness of the states. "In view of the traditional relationship among the States and their relationship to a national government with its nationwide judicial authority, it would be difficult to accept a structural arrangement in which each State has unlimited judicial power over every citizen in each other State who uses the Internet." *ALS Scan*, 293 F.3d, at 713.

11. Plaintiff again emphasizes Mr. Gressett's website access in an alternative argument by claiming that Mr. Gressett's actions constituted a tort directed at Maryland. Plaintiff alleges that, because it is based in Maryland and its computers and servers are located there, the alleged tortious conduct by Mr. Gressett was directed at Maryland so as to confer jurisdiction. As it has unsuccessfully attempted before, Plaintiff is relying on the "effects" of Defendant's conduct to trigger jurisdiction. *CoStar Group, Inc. v. LoopNet Inc.*, 106 F.Supp.2d 780, 785 (D. Md. 2000).

12. Under the "effects" test articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 787 n. 6, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a court may exercise personal jurisdiction over a nonresident defendant acting outside the forum who intentionally directs tortious conduct toward the forum state knowing it will cause harm to a forum resident. Under *Calder*'s analysis, the plaintiff must demonstrate the defendant's conduct was intentional and tortious, the forum was the focal point of the harm suffered by the plaintiff, and the defendant "expressly aimed" its tortious conduct toward the forum such that the forum could be said to be the focal point of the tortious activity. *Id.*, at 789-90.

7

For example, the *Calder* Court found it was appropriate to exercise personal jurisdiction in California over two Florida residents who wrote and edited an allegedly libelous article about actress Shirley Jones because the defendants knew the article would have a "potentially devastating impact" on Jones and knew that the "brunt" of that injury would be felt by Jones in California, where she lived and worked and where the National Enquirer had its largest circulation. *Id.* at 789-90. The Court held that because the defendants' intentional and allegedly tortious actions were expressly aimed at California, they must reasonably have anticipated being haled into court there to answer for their conduct. *Id.*

13. Therefore, the Court in *LoopNet* explained, the mere fact that a nonresident defendant's act causes an effect in the forum state, or even that such effect was foreseeable, is not enough by itself to support jurisdiction under *Calder*. *See LoopNet*, 106 F. Supp. 2d at 785. The Court noted that the "effects test" is limited to cases where the nonresident defendant commits an intentional tort knowing the conduct will cause harm to the plaintiff in the forum state. Under this analysis, the *LoopNet* Court found a lack of personal jurisdiction over the defendant, because it was clear the defendant had no intent to cause harm in Maryland. *Id.*

14. By accessing Plaintiff's website, Mr. Gressett did nothing to aim his actions at Maryland. There is no allegation that Mr. Gressett performed any acts in Maryland, nor that he used any information on Plaintiff's website in Maryland. Mr. Gressett has never been to Maryland nor conducted business in Maryland. *See Gressett Affidavit*, attached to Defendant's

Motion to Dismiss. Because all jurisdictional allegations flow through the website, and this is insufficient, the Court should not exercise personal jurisdiction over Mr. Gressett.

**B. Failure of Alleged Violations of the Computer Fraud and Abuse Act.**

15. In support of its claims for violation of the Computer Fraud and Abuse Act ("CFAA"), Plaintiff argues that "interruption of service" is not required to maintain its claims. But this assertion misses the crux of Defendant's Motion. Whether "interruption of service" is required or not, Plaintiff's allegations fail to set forth its damages with adequate specificity and dismissal is proper.

16. Plaintiff's First Amended Petition alleges that it has suffered "damage" and the amount of its loss in the aggregate exceeds $5,000 during a one-year period. *Plaintiff's Amended Petition*, (DOC. 19, at pg. 17, para. 70). But as the plain language of the statute makes clear, there is a distinction between "damage" and "loss" in a CFAA cause of action. 18 U.S.C. §1030. Because Plaintiff claimed "damage" under the CFAA claim, it was required to explain what damage occurred with more specificity that the sheer statement of lost value and nothing more.

17. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Hence, a claim of damage under the CFAA necessarily involves some interruption of service. Conversely, "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost

9

incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Whether this list of recoverable losses is inclusive or not, Plaintiff's petition fails to designate a single one. Nor does the Petition allege any other type of loss.

18. A district court must accept as true the allegations in the Complaint when deciding a Motion to Dismiss, but "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Allmond v. Bank of America*, 2008 WL 205320 (M.D. Fla. 2008) citing *Jackson v. Bellsouth Telecomms*, 372 F.3d 1250 (11th Cir. 2004). "To survive a motion to dismiss, a complaint must in light of the nature of the action... sufficiently allege each element of the cause of action so as to inform the opposing party of the claim and its general basis." *IFast, Ltd. v. Alliance for Telecommunications*, 2007 WL 3224582 (D. Md. 2007) quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005)(internal quotations omitted).

19. Plaintiff's First Amended Complaint fails to address any item of loss including "interruption of service." Plaintiff's Amended Complaint provides no basis for its vague conclusion that Mr. Gressett's actions caused it damages that have "amounted in an aggregated loss of over $5,000 during a one-year period." *Plaintiff's Amended Petition* (DOC 19, at pg. 17, para. 70). Such conclusory allegations are insufficient as a matter of law to provide proper notice of Plaintiff's claims against Mr. Gressett. Therefore, Plaintiff has failed to properly allege a claim for violations of CFAA against Mr. Gressett and dismissal should be granted.

10

Defendant Gressett's Reply to Plaintiff's Response to
Motion to Dismiss and alternatively, Motion to Transfer Venue

C.  **Proper Venue is in Texas.**

20. As has been discussed previously, Mr. Gressett has insufficient minimum contacts to confer personal jurisdiction over him in Maryland. Venue is improper in a forum where the court cannot exercise personal jurisdiction over the defendant.

21. Moreover, the forum selection clause of Plaintiff's Terms of Use document does not foreclose the Court's analysis. Inconvenience to the resisting party constitutes a ground for voiding a clause if enforcement would effectively deprive that party of his day in court." *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corporation*, 696 F.2d 315, 317 (4th Cir. 1982). While the burden is high, it is applicable in this instance based on the significant differences between the two parties.

21. Plaintiff is a large corporation with admittedly over 800 employees, including a "field research force" of 120 employees that are sent to every state to "canvas the country" and obtain the information placed on Plaintiff's website. *See Plaintiff's First Amended Complaint*, pg. 5, para. 14 (Doc. 19-2). Based on its pleadings, Plaintiff has a national client base and does business in every state.

22. Mr. Gressett is a single individual. He has never lived or worked outside of Texas. *See Gressett Affidavit*, at para. 2-3, attached to Defendant's Motion to Dismiss. He has never lived or maintained a business in Maryland, or, for that matter, had any significant contact with Maryland. *Id.*, at para. 4-12.

23. For Plaintiff to say the balance of inconveniences between itself and Mr. Gressett is a "wash" is ludicrous. Plaintiff's business allows it both the means and resources to try a case in any state in the country with little relative inconvenience. Mr. Gressett,

11

conversely, will suffer significant burden and expense, relative to his means. *Gressett Affidavit*, at pg. 2, attached to Defendant's Motion to Dismiss. To force Mr. Gressett to defend this action in Maryland would work a devastating financial hardship to him, whereas to Plaintiff, it would be nothing more than a standard operating procedure. For these reasons, justice and the convenience of the parties warrant transferring this action to the Southern District of Texas.

## II. PRAYER

As the facts and analysis above demonstrate, Defendant has no minimum contacts with Texas. Furthermore, the Court's assumption of jurisdiction over Defendant would offend traditional notions of fair play and substantial justice and would be inconsistent with due process. Moreover, Plaintiff has failed to state a claim violations of the CFAA. For these reasons, Defendant asks the Court to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(2) and 12(b)(6).

In the alternative, the relevant factors weigh heavily in favor of Defendant's motion to dismiss and/or transfer pursuant to FED. R. CIV. P. 12(b)(3). Finally, in the alternative, this case should be transferred to the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1404(a).

Respect fully submitted,

**GREENBERG TRAURIG, L.L.P.**

By: /s Pamela A. Ferguson
Mary-Olga Lovett
Texas Bar No. 00789289
Pamela A. Ferguson
Texas Bar No. 24059743
1000 Louisiana, Suite 1800
Houston, Texas 77002
Telephone: 713-374-3500
Facsimile: 713-374-3505

Steven M. Schneebaum
U.S.D.C. of Maryland Bar No. 04160
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
Telephone: 202-530-8544
Facsimile: 202-261-2665

**Attorneys for Defendant Russ A. Gressett**

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure and has been served upon the following counsel of record this 20th day of June, 2008, by Notices of Electronic Filing generated by CM/ECF and by certified mail.


Shari Ross Lahlou
Sanya Sarich
William J. Sauers
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 2004
Ph: 202 624.2500
Fax: 202 628.5116


R. Wayne Pierce
The Pierce law Firm LLC
133 Defense Hwy Ste 106
Anapolis, MD 21401-7015
Ph: 410 573.9959
Fax: 410 573.9956

Gary A. Woodfield
Simeon D. Brier
One North Clematis Street, Suite 400
West Palm Beach, FL 33401
Ph: 561 833.7700
Fax: 561 655.8719

James E. Armstrong, IV
1875 Eye Street, NW
Washington, DC 20006
Ph: 202 478.7370
Fax: 202 478.7380


/s/Pamela A. Ferguson
Pamela A. Ferguson