THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| COSTAR REALTY INFORMATION, INC., | * | |
| *et al.*, | * | |
|            Plaintiffs, | * | |
| | * | |
|     v. | * | Civil Action No. AW-08-00663 |
| | * | |
| MARK FIELD D/B/A ALLIANCE | * | |
| VALUATION GROUP, *et al.*, | * | |
| | * | |
|         Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiffs, CoStar Realty Information, Inc., and CoStar Group, Inc., ("CoStar") bring this action against Defendants, Lawson Valuation Group, Inc., ("Lawson") and Russ A. Gressett ("Gressett") alleging violations of both state and federal law in connection with the alleged impermissible use of CoStar's website by Defendants Lawson and Gressett (collectively "Defendants"). Currently pending before the Court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim, or, in the alternative, Motion to Transfer Venue, as well as a Motion for a More Definite Statement. (Paper Nos. 30 & 32) The Court has reviewed the entire record, as well as the pleadings and exhibits, if any, with respect to the instant motions. The issues have been fully briefed, and a hearing was held on February 27, 2009. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will grant Defendants' Motion to Dismiss the Civil RICO claim, and deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, Motion to Transfer Venue, and Motion for a More Definite Statement.

1

Dockets.Justia.com

# I.    FACTUAL AND PROCEDURAL BACKGROUND

CoStar is a national commercial real estate information services provider, incorporated in Delaware with its principal place of business in Bethesda, Maryland.  (Compl. ¶ ¶ 1, 14.) Defendant, Mark Field D/B/A Alliance Valuation Group ("Alliance"),  who is not a party to the motions at issue, is a California resident doing business in California.  (*Id.* at ¶ 3.)  Lawson is a Florida corporation that performs real property valuations and appraisals.  (*Id.* at ¶ 4.)  Gressett is a Texas resident doing business as TGC Realty Counselors, with a principal place of business in Texas.  (Compl. ¶ 5; Gressett Aff. ¶¶ 2-3.)  The following facts give rise to this lawsuit.

CoStar owns a database with photos of real property around the country, as well as other information, to enable individuals and businesses involved in the real estate business to do things such as, but not limited to, find property for sale, find available space for tenants, and research brokers.  (Compl. ¶ 15.)  A very limited amount of CoStar's database is accessible to the public at no cost.  (*Id.* at ¶ 16.)  In most instances, CoStar licenses the information on its database to authorized users for a subscription fee.  (*See id* at ¶¶ 16, 21.)  Customers interested in CoStar's database may become authorized users by entering into an online agreement through the Terms of Use provision on CoStar's website or entering into a written agreement and subscribing to one or more of CoStar's information services.  (*Id.* at ¶ 17.)  Authorized users of CoStar's database are given a user identification number ("user ID") and a passcode to access the website.  (Compl. ¶ 18.) An authorized user must enter a valid user ID and passcode at the "Subscriber Login Area" to gain authorized access to CoStar's database.  (*Id.*)  The method to become an authorized user of the website and a warning against unauthorized use appears each time a user accesses the database.  (*Id.* at ¶ 19.)  Specifically, the "Subscriber Login Area" states that by logging in to the database, the user

agrees to CoStar's Terms of Use. A link to the Terms of Use is provided and states that access is restricted to authorized users, and the sharing of passcodes is prohibited. (*Id.* at ¶ 19.) The first time an authorized user accesses the database, a pop-up screen containing CoStar's Terms of Use provision which states the legal obligations of users, appears. (Compl. ¶ 24.) The authorized user must scroll through and affirmatively accept the Terms of Use the first time they use CoStar's database, as well as at periodic intervals after the initial use. (*Id.* at ¶ 19.) The Terms of Use provision states that: (1) portions of the website are only available to those who have purchased a subscription and have agreed to either a license agreement or the Terms of Use; (2) by accessing or using the site, the user agrees to the Terms of Use and agrees to be bound to a legally binding contract; and (3) by accessing or using the site, the user confirms that he has the authority to assent to the terms of the contract. (*Id.* at ¶¶ 20-21.) The Terms of Use also warns unauthorized users against using the site if they lack the authority to be bound by the agreement, and contains a forum selection clause that provides that the user consents to the jurisdiction of federal and state courts located in the State of Maryland for any action to enforce the Terms of Use provision. (*Id.* at ¶¶ 20, 24.)

Alliance entered into two 11-user written license agreements with CoStar. (Compl. ¶ 11.) The first one in June 2002 and the other in November 2004. (*Id.* at ¶ 11.) The contract provided that Alliance would not provide third parties access to or use of CoStar's database, sub-license the use of the database, and, also, specifically provided that Alliance could not share its user ID or passcode without the express written consent of CoStar. (*Id.* at ¶ 26.) CoStar alleges that Alliance shared its user ID and passcode with Lawson and Gressett in violation of their contract; and as a result Lawson and Gressett continuously used CoStar's services, receiving Alliance's contractual

benefit with CoStar, without CoStar's express authorization[1]. (*Id.* at ¶¶ 13, 27.) With respect to Gressett, CoStar specifically alleges that Gressett used CoStar's database without authorization from at least April 14, 2004 to February 14, 2008. (Ex. 2.) CoStar also maintains that on at least six occasions between January 2005 and October 2007, Gressett called CoStar in Maryland, representing himself as an employee of Alliance, in order to gain assistance or technical support from CoStar in order to access the database. (Ex. 4.) With respect to Lawson, CoStar states that Lawson used CoStar's database without authorization from March 11, 2004 to February 14, 2008, and that Lawson also called CoStar in Maryland for technical support no less than five times from March 2004 to October 2007. (Paper 33, Ex. 3, 5.) CoStar alleges that Lawson and Gressett infringed the copyrights of at least sixty-seven photographs in its database compilations. (Compl. ¶¶ 52-53; Ex. A.)

CoStar filed its original complaint against the Defendants in this Court on March 13, 2008. On April 3, 2008, CoStar filed an eight Count Amended Complaint alleging (1) Breach of contract by Alliance; (2) Breach of contract by Lawson, Gressett, Gerald A. Teel Company, Inc., ("Gateel"), and Pathfinder Mortgage Corp. ("Pathfinder"), and 1 - 4 John Does ("Does")[2]; (3) Fraud by Alliance and Gressett; (4) Tortious interference with contract and prospective business relationship by Alliance; (5) Direct copyright infringement by Lawson, Gressett, Gateel, Pathfinder, and Does; (6) Contributory and vicarious copyright infringement by Alliance; (7) Violation by Lawson, Gressett, Gateel, Pathfinder and Does of 18 U.S.C. § 1030: Fraud and related activity in connection with computers; and (8) Civil RICO violations by all Defendants. In response, Gressett filed Motions to

---

[1] Defendants allege that CoStar is unable to indicate the date when Alliance shared the passcode.

[2] Neither Gateel, Pathfinder, or Does are parties to these motions.

Dismiss pursuant to Federal Rules of Civil Procedure 12 (b)(2), (3), and (6) (challenging Counts Five, Seven, and Eight), and in the alternative, a Motion to Transfer Venue, and Lawson filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) (challenging Counts Five, Seven, and Eight), and 12(e), and in the alternative, a Motion to Transfer Venue.[3] The facts underlying the claims against both Lawson and Gressett are the same. The Court will address the motions in the order outlined above, and where the motions overlap, the Court will address them simultaneously.

**II.    Motions to Dismiss**

   *A.    Personal Jurisdiction*

The Defendants first challenge this Court's authority to assert personal jurisdiction on the basis that they lack sufficient connections with Maryland to satisfy the State's long-arm statute, or Due Process. CoStar, asserts that jurisdiction is proper over the Defendants based on both the forum selection clause located within the Terms of Use on its website and under the Maryland long-arm statute, consistent with Due Process. Specifically, CoStar argues that Lawson and Gressett have consented to jurisdiction in Maryland by accepting the Terms of Use on its website, and due to their continuous tortious conduct in Maryland for their private business purposes. Lawson and Gressett argue that presence and consent is lacking because neither of the Defendants have ever been to Maryland or done any business in Maryland, their actions in Maryland lack sufficient effects in Maryland, and the complaint fails to allege sufficient facts to support formation of a contract in Maryland.

---

   [3] As a part of the Complaint, CoStar also filed a fraud claim against Gressett, however, Gressett did not move to dismiss it.

1.    <u>Standard of Review for Rule 12(b)(2)</u>

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), and the question of jurisdiction is resolved based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction.  *Mylan Labs*., *Inc. v. Akzon, N.V.*, 2 F. 3d 56, 60 (4th Cir. 1993)*; see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs*., *Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."  *Mylan*, 2 F.3d at 60; *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

2.    <u>Forum Selection Clause</u>

Users of CoStar's website who do not enter into a written licensing agreement, but pay to use CoStar's database on an a la carte basis, agree to a Terms of Use provision which has a forum selection clause that provides, in relevant part:

> You irrevocably consent to the jurisdiction
> of the federal and state courts located in the
> State of Maryland, and to the jurisdiction of
> the federal and state courts located in any State
> where you are located, for any action brought
> against you in connection with these Terms of
> Use or use of the Product.

(Paper 33, Ex. 1.)[4]  CoStar argues that the forum selection clauses are binding, and by  accepting the

---

[4]CoStar's written licensing agreement contains a forum selection clause with similar language as CoStar's Terms of Use.  The written license agreement also provides for the state and federal courts in Maryland as the designated forum for any disputes brought by CoStar in connection with the written agreement or the licensed product.  At the hearing, Lawson and Gressett argued that they believed they were sublicensees of the written

Terms of Use, within the forum selection clause, Lawson and Gressett consented to personal jurisdiction in Maryland. (Compl. ¶ 13.) In addition CoStar posits, and the Court agrees, that Lawson and Gressett availed themselves of the contractual benefits provided by CoStar and Alliance and should be subject to the same jurisdictional requirements as Alliance. (*Id.*) Lawson and Gressett dispute the validity of the forum selection clause and argue that they in no way formed a contract with CoStar or consented to personal jurisdiction in this Court. (Paper 30, 32; Gressett Aff. ¶ 6.) CoStar maintains that in order to access its database an authorized user must have a valid user ID and passcode. (*Id.* at ¶¶ 17-18.) CoStar maintains, and the Defendants do not dispute, that Alliance provided its user name and passcode to Lawson and Gressett who then illegally accessed CoStar's database, in violation of Alliance's written contractual agreement with CoStar. (*Id.* at ¶ 29.) CoStar alleges that Lawson and Gressett accessed its website on several occasions over a four year period and agreed to the Terms of Use. (*Id.* at ¶ 37.)

In most instances, "whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis[,]" and Maryland courts "have construed [the] long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause." *Bond v. Messerman*, 895 A.2d 990, 999 (Md. 2006). It is a well-established point of law that "[c]hallenges to personal jurisdiction may be waived by either expressed or implied consent," *Heller Financial Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290 (7th Cir. 1989), and personal jurisdiction is a waivable right, and as such, "'there are a variety of legal arrangements by

---

agreement. In addition, Gressett called CoStar for technical support on six different occasions from January 3, 2005 to October 3, 2007 using Alliance's name and representing himself as a user of Alliance's account. (Paper 33, Ex. 4.) Lawson called CoStar for technical support on five different occasions from March 9, 2004 to October 16, 2007 using Alliance's name and representing himself as a user of Alliance's account. (Paper 33, Ex. 5.) Thus, as contractual beneficiaries of Alliance's written agreement, Lawson and Gressett have also consented to jurisdiction in Maryland via the forum selection clause located within the written agreement.

which a litigant may give 'expressed or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).

Thus, it follows that "'expressed or implied consent to the jurisdiction of [a] court' is sufficient to satisfy the requirements of due process for assumption of jurisdiction over a nonresident defendant." *Toshin Prods. Co. v. Woods*, No. 86-2157, 1989 WL 87015, at *2 (D. Md. July 28, 1989) (citing *Ins. Corp. of Ireland*, 456 U.S. at 702). In many cases forum selection clause issues are raised in the context of venue, however, courts have also held that a valid forum selection clause, standing alone, is enough to confer personal jurisdiction on a nonresident defendant. *See e.g. Heller Fin. Inc.*, 883 F.2d at 1292 n. 4 (citing *Burger King Corp.*, 471 U.S. at 472 n. 14, for the proposition that "[o]bviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction"); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) (stating that "[d]ue process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause"); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1407 (9th Cir. 1994) (declaring that "[w]e agree with the Seventh Circuit, and hold that the district court erred in concluding that the forum selection clause in the passenger ticket could not confer personal jurisdiction over the parties who entered into it.")

This Court adopts the position of other circuits and agrees with CoStar that the Defendants have consented to the jurisdiction of this Court. CoStar's Terms of Use specifically contains a provision authorizing all lawsuits for an enforcement of the Terms of Use to be brought in a federal or state court in Maryland. (Compl. ¶ 24.) A user of CoStar's database must accept the Terms of Use the first time the user accesses the database and at periodic intervals thereafter. (*Id.* at ¶ 19.)

Considering that neither Lawson nor Gressett deny accessing CoStar's database over several years, the fact that a user must accept the Terms of Use the first time a user accesses the database before being allowed to use it is convincing. Moreover, even if the Defendants neglected to read the Terms of Use initially, which neither Lawson nor Gressett argue, both Lawson and Gressett had to periodically assent to the Terms of Use in the almost four years they accessed CoStar's database. Therefore, the Court finds the exercise of personal jurisdiction of Lawson and Gressett permissible given their express and implied consent to the forum selection clause. The Court is mindful of the fact that the forum selection clause must be valid in order to maintain personal jurisdiction. For the following reasons the Court finds the forum selection clause is valid.

Courts have aptly addressed the issue whether parties are bound by user agreements, containing forum selection clauses, in the internet context. *Burcham v. Expedia, Inc.* involved a lawsuit brought by an attorney, Burcham, against Expedia, where Burcham used Expedia's website service to book a hotel reservation. No. 4:07CV1963, 2009 WL 586513, at *1 (E.D. Mo. March 6, 2009). The website contained a user agreement with a forum selection clause. *See id.* Burcham stated that he may have used a third party account and therefore was unaware of the terms of the user agreement. *Id.* at *2. The court, in determining that Burcham was bound to bring a lawsuit in a different jurisdiction pursuant to the forum selection clause located within the online agreement, noted, "the legal effect of online agreements is an emerging area of the law that has been addressed by a number of courts. Courts presented with the issue apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement." *Id.* (citing *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) (citing *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 28-30 (2d Cir. 2002)). The court noted that

"clickwrap" agreements, agreements that require "[a] customer [to] affirmatively click a box on the website acknowledging receipt of and assent to the contract terms before he or she is allowed to proceed using the website . . . have been routinely upheld by circuit and district courts." *Burcham*, 2009 WL 586513 at *2 (citing *Specht*, 306 F.3d at 22 n. 4; *A.V. v. iParadigms, L.L.C.*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008) (citing cases); *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 921 (N.D. Ill. 2003). Furthermore, "failure to read an enforceable online agreement, 'as with any binding contract, will not excuse compliance with its terms.'" *Burcham*, 2009 WL 586513 at *2 (citing *Feldman*, 413 F. Supp. 2d at 236).

In *Motise v. America Online, Inc.*, the court, in ruling on a defendants 12(b)(3) motion, held, by virtue of a derivative rights theory, a third party user of a contracting party's online account is bound by the same user agreement as the contracting party even though the third party user was not presented with and did not assent to the online user agreement. 346 F. Supp. 2d 563, 566 (S.D. N.Y. 2004). The court found persuasive the defendant's argument that the third party user of the online services was a sublicensee of the contracting party, the licensee who had originally accepted the terms of service when he created the account. *Id.* The court said the plaintiff was a sublicensee of the licensee, and as such enjoyed the privileges that the defendant conditionally granted to the contracting party. *Id.* The court then stated that the sublicensee could not, therefore, have greater rights than the licensee. *Id.* The court ended its derivative rights theory analysis by noting that "[a]ny other conclusion would permit individuals to avoid the [d]efendant's Terms of Service simply by having third parties create accounts and then using them as the [p]laintiff did. As such, the [p]laintiff, as a user of another's account, is subject to the Terms of Service, and the forum selection clause is enforceable in this case." *Motise*, 346 F. Supp. 2d at 566.

In this case, the forum selection clause is mandatory and valid and Defendants fail to show its unreasonableness. The forum selection clause states that a user "irrevocably consents" to the jurisdiction of a federal or state court located in Maryland. (Compl. ¶ 24.) Furthermore, The formation of the forum selection clause is not purported, by Lawson or Gressett, to have been made by fraud or duress, and rightly could not be so since both parties affirmatively consented to the forum selection clause within the Terms of Use repeatedly over the course of almost four years. (*Id.* at ¶ 76.) Defendants fail to make any argument referencing the validity of the forum selection clause other than to state that there is no contract based on the Terms of Use which contains the forum selection clause. As noted above, several courts have found that an online user agreement, in this case referred to as the Terms of Use, may constitute a valid contract, and this Court agrees.

3.     <u>Maryland Long-Arm Statute and Due Process</u>

Lawson and Gressett argue that minimum contacts are lacking because the only connection with Maryland is accessing CoStar's website, and that alone, is insufficient to support minimum contacts with the forum state. They further argue that CoStar fails to allege facts for when Defendants accessed the website, there is no evidence Lawson accessed the site, and copyright infringement cannot serve as a basis for jurisdiction. Lastly, Defendants argue that this case does not meet the Calder effects test. CoStar argues that jurisdiction is proper in Maryland because Lawson and Gressett committed a tortious act in the state by illegally accessing its database, by calling CoStar and through its "electronic activity" directed toward Maryland. CoStar maintains that Lawson's and Gressett's conduct violate §§ 6-103(b)(1), (3)-(4) of the Maryland long-arm statute.

The Court agrees that Maryland's long-arm statute presents it with an additional bases for asserting personal jurisdiction over the Defendants. When making its determination on personal

jurisdiction, a federal court applies the law of the state in which it sits pursuant to FED. R. CIV. P. 4(k)(1)(A). *Carefirst of Maryland, Inc.*, 334 F.3d at 396. Given that the Defendants' contacts with Maryland give rise to this lawsuit, the Court's inquiry will focus on specific jurisdiction[5]. *See Hill v. Brush Engineered, Inc.*, 383 F. Supp. 2d 814, 817-18 (D. Md. 2005). The assertion of personal jurisdiction is proper when "(1) the exercise of jurisdiction [is] authorized under the state's long-arm statute; and (2) the exercise of jurisdiction . . . comports with the due process requirements of the Fourteenth Amendment." *Id.* Under Maryland law, the assertion of personal jurisdiction requires a two-step process. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006). A court must first determine whether a defendant's conduct violates a specific provision of the Maryland long-arm statute. *Id.* However, "Maryland has construed [its] long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause." *Id.* Due process is satisfied where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). To establish minimum contacts, the defendant's actions must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Due process ensures that assertion of personal jurisdiction over a nonresident defendant is not absent factors that would render it unreasonable. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113 (1987) (listing the reasonableness factors that should be considered in determining the fairness of asserting personal jurisdiction over the nonresident defendant).

---

[5]Gressett argued against the assertion of general jurisdiction and noted that CoStar did not premise jurisdiction on that basis. (Paper 32). The Court does not reach this argument because it has determined that Gressett's and Lawson's action satisfy the requirements of specific jurisdiction.

The most applicable provisions of the long-arm statute are §§ 6-103(b)(1) and (4)[6]. Personal jurisdiction is proper under § 6-103(b)(1) when a defendant "transacts any business or performs any character of work or service in the State;" and under § 6-103(b)(4) when a foreign defendant "[c]auses tortious injury in the State or outside the State if he . . . engages in any other persistent course of conduct in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1), (4) (West 2008). Personal jurisdiction under § 6-103(b)(1), does not require the defendant to have been physically present in Maryland. *John Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.*, 374 F. Supp. 2d 465, 472 (D. Md. 2005) (citing *Bahn v. Chicago Motor Club Ins.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993). This provision requires the defendant to conduct actions which "culminate in purposeful activity within the state." *Bahn*, 634 A.2d at 67. While analyzing § 6-

---

[6] Maryland's long-arm statute provides in relevant part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > . . . .
> >
> > (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> >
> > . . . .
> >
> > (c)(2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(b)(1), (4), and (c)(2) (West 2008).

103(b)(1), the court in *Bahn*, looked at factors that included the nonresident defendant sending mail to and contracting with Maryland plaintiffs. *Id.* at 67-70. Significantly, purposeful activity may be shown by a nonresident defendant initiating contact with the forum state. *See Giannaris v. Cheng*, F. Supp. 2d 687, 692-93 (D. Md. 2002) (granting personal jurisdiction where the nonresident defendant initiated contact with the forum residents). Relevant to the Court's § 6-103(b)(4) analysis, which concerns Defendants' persistent course of conduct in committing a tort in the State, is that copyright infringement is an intentional tort. *See Teletronics Intern., Inc. v. CNA Ins. Co./Transportation Insurance Co.*, No. 04-1509, 2005 WL 115487, at *3 n. 3 (4th Cir. Jan. 20, 2005) (citing *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 120 (4th Cir.1981)).

In this case, Lawson and Gressett's activities satisfy two provisions of Maryland's long-arm statute and due process. Lawson and Gressett's activities are very similar to those in *Bahn*. Lawson and Gressett initiated the business relationship with CoStar by entering into an implied contract to use the information on CoStar's database. (Compl. ¶¶ 27, 29, 37.) Lawson and Gressett benefitted from the express contract between Alliance and Gressett, both going so far as to represent themselves as valid users under Alliance's written license agreement with CoStar which contains a forum selection clause providing exclusive jurisdiction in a federal court in Maryland. (Paper 33, Ex. 4, 5.) Notably, at the hearing, neither Lawson nor Gressett disputed the continuous use of CoStar's services over the approximate four years that the Defendants accessed CoStar's database. CoStar alleges Lawson and Gressett used its services for almost four years (Compl. ¶ 76; Exs. 2, 3), without authorization (Compl. ¶¶ 27, 29), and in violation of its copyright (*id.* at ¶¶ 30, 52, 53), causing CoStar harm in Maryland (*id.* at ¶ 56.) It can hardly be said that given Lawson's and Gressett's continuous and purposeful use of CoStar's services, active participation in initiating contact with

Costar, holding themselves to be valid users of Alliance's account under the written agreement, and assent to the implied contract authorizing a federal court in Maryland to assert jurisdiction over the Defendants, they lacked the knowledge that they could be subject to suit in Maryland. The Court has personal jurisdiction over Lawson and Gressett due to their transacting business and persistent course of conduct in Maryland. Therefore, Defendants' Motions to Dismiss for lack of Personal Jurisdiction are denied.

> B. *Improper Venue*

> 1. Standard of Review for Rule 12(b)(3)

The Fourth Circuit Court of Appeals has held that Rule 12(b)(3) is the proper rule for a motion to dismiss for improper venue concerning a forum selection clause. *Sucampho Pharms., Inc. v. Astellas Pharma. Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). Under Rule 12(b)(3), a court is free to look at matters outside of the pleadings, however, the court still must draw all reasonable inferences in the light most favorable to the plaintiff. *See Silo Point II L.L.C. v. Suffolk Const. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008). Given that this is a diversity action, Maryland law must be applied in considering the validity of a forum selection clause. *Id.* Maryland state law follows federal law in this regard. *Id.* at 810. A forum selection clause is prima facie valid, and may only be set aside upon a showing of unreasonableness. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10.


> 2. Transfer of Venue

Gressett argues that he will be deprived of his day in court because he lacks the expense to litigate a case in Maryland. (Paper 45.) Lawson and Gressett argue against the enforcement of the forum selection clause, and that venue is proper, in actions concerning copyright infringement, where

a court may properly assert personal jurisdiction against the defendant. (Paper 30.) Lawson and Gressett seek to transfer the case to the Southern District of Florida under 28 U.S.C. § 1404(a). CoStar argues, and for the reasons previously stated as well as those expressed below the Court agrees, that the forum selection clause in this case is valid and the provision for exclusive jurisdiction in Maryland state or federal court should be upheld and transfer is unwarranted.

28 U.S.C. § 1404(a) authorizes a transfer of venue by a district court in a civil action for the convenience of parties and witnesses in the interest of justice. 28 U.S.C. § 1404(a). Courts have stated that a defendant that has assented to a valid contract cannot preclude enforcement of a valid mandatory forum selection clause by claiming that it would be inconvenient to travel to a different state. *See Tech USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 859 (D. Md. 2009). The court further declined to transfer the case to the Northern District of Texas, where the defendants argued that witnesses were located, because the plaintiffs had also stated that witnesses were located in Maryland, the contractual forum had been designated as Maryland, and transferring the case would only shift the balance of the inconvenience. *Id.* at 860-861.

Initially, Gressett argued that venue was proper in Texas, as a small business owner and Texas resident. (Paper 32.) Lawson motioned for a transfer of venue but failed to designate an appropriate forum. (Paper 30.) However, at the hearing both Lawson, a Florida resident, and Gressett, a Texas resident, informed the Court that both Defendants, due to a compromise between their different law firms, agreed that venue was proper in the Southern District of Florida because counsel for Lawson was based in Florida. The Court fails to see how venue is more appropriate in Florida, by stipulation of both a Texas resident and a Florida resident, as opposed to Maryland, the residence of the Plaintiff, CoStar. The litigation concerns several Defendants, all from different states, making Maryland as

convenient a forum as any other. Also, given the Court's holding, that it has personal jurisdiction over Lawson and Gressett, venue is therefore proper in Maryland. The Court is unpersuaded by Gressett's financial hardship argument and declines to transfer this case to the U.S. District Court for the Southern District of Florida.

C. *Defendants' Motions to Dismiss the Copyright Infringement, CFAA, and Civil RICO claims*[7]

1. Standard of Review for Rule 12(b)(6)

To overcome a motion to dismiss, a plaintiff must state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *see also Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001). Nor is the Court "bound to accept conclusory allegations regarding the legal effect of the facts alleged."

---

[7]The Court notes that only Lawson moved to dismiss the entire First Amended Complaint pursuant to FED. R. CIV. P. 12(e), Motion for a More Definite Statement, and FED. R. CIV. P. 10(b), for improper commingling of claims into one count. Lawson points to the fact that CoStar incorporated by reference all of the preceding paragraphs in every count in the complaint. (Paper 30, 46.) Lawson alleges CoStar failed to separate the paragraphs that were relevant to the individual claim. (*Id.*) The Court denies both motions for two reasons. First, the complaint is separated into different counts and numbered paragraphs. Second, although CoStar does incorporate by reference each preceding paragraph within each count, it can hardly be said that the complaint was so confusing as to fail to state a claim, or recognize the elements of a cause of action within each Count.

*United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

1.    Copyright Infringement

Lawson and Gressett move to dismiss this complaint based on an alleged failure by CoStar to meet a heightened pleading requirement. (Papers 30, 32.) Specifically, Defendants assert that CoStar failed to allege the specific infringing acts of Lawson and Gressett (separately), or when the infringing acts occurred. (*Id.*) CoStar alleges that it owns copyrights to sixty-seven of the disputed photographs and has attached a list of the photographs and the copyright registration numbers to the complaint. (Compl. ¶¶ 51-53; Ex. A.)

The Court must determine whether CoStar has stated a valid claim for copyright infringement. In order to state a prima facie case for copyright infringement, a plaintiff must allege "'(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.'" *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). There is no heightened pleading standard for copyright infringement, and CoStar need only state that it had a valid copyright and the defendant infringed upon an original work**.** *See Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 789-90 (E.D. Va. 1998). CoStar alleges that Lawson and Gressett infringed sixty-seven of its photographs, and has attached a copy of the registration numbers for each photograph. Therefore, CoStar has stated a valid claim for copyright infringement and Defendants' Motions to Dismiss are denied.

2. <u>The Computer Fraud and Abuse Act</u>

Lawson and Gressett argue that CoStar does not state which provision of the statute the plaintiff is relying. (Papers 30, 32, 45, 46.) Lawson and Gressett also argue that CoStar does not state a loss as defined by the statute. (Papers 45, 46) They urge that loss should be interpreted as a loss of interruption of service as it states in the statute pursuant to the 2001 Amendment of the CFAA. (Papers 45, 46.) Lawson and Gressett further argue that CoStar did not suffer an interruption of service based on its copyright infringement because CoStar still maintained the use of the database, with no loss in the interruption of its service. (Papers 45, 46.) CoStar argues that Lawson and Gressett have caused it damages due to its loss of revenue from the failure to recover license fees. (Compl. ¶ 39.) CoStar further argues that the term loss is not limited to an interruption in service. The Court agrees with CoStar in that it has adequately described its losses within the meaning of the statute.

To recover in a civil action under the CFAA, a defendant must commit an offense under subsection (a)(5)(B) of the statute. 18 U.S.C. § 1030(c)(4)(A)(I) (2009). "A violation of 18 U.S.C. § 1030(a)(5) occurs whenever a person 'intentionally accesses a protected computer without authorization, and as a result of such conduct, [recklessly] causes damage.'" 18 U.S.C. § 1030(a)(5)(B); *Physicians Interactive v. Lathian Sys., Inc.*, No. 03-1193, 2003 WL 23018270, at *6 (E.D. Va. Dec. 5, 2003). In order for a plaintiff to bring a civil suit against a defendant pursuant to § 1030(a)(5)(B), the defendant's conduct must satisfy one of the statute's enumerated provisions, in this case the Plaintiff urges that the Defendants caused "(I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(I) (2009); *Ford v. Torres*, No. 1:08cv1153, 2009 WL 537563, at *8 (E.D. Va. March 3, 2009). According to §

1030(e)(11), loss under the CFAA "means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (2009).

Given that Rule 12(b)(6) is a disfavored motion, *see Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991), and accepting the allegations of the complaint as true and in the light most favorable to the plaintiff, *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), CoStar has stated a claim under the CFAA. In *Frees, Inc. v. McMillian*, the court noted the circuit split involving the interpretation of loss and the fact that the 2001 Amendments changed the definition of loss to the current version. No. 05-1979, 2007 WL 2264457, *at 4 (W.D. La. Aug. 6, 2007). The court noted that in order to claim under the CFAA one must establish the jurisdictional threshold for loss, by alleging facts that constitute loss. *See id. at *2-3.* Thus, in *Therapeutic Research Faculty v. NBTY, Inc.*, the court held that the plaintiffs had adequately alleged loss under the CFAA where the plaintiff alleged that loss entailed the unauthorized use of a user name and passcode in violation of a software license agreement. 488 F. Supp. 2d 991, 996-97 (E.D. Cal. 2007)**.**

The Court finds merit in CoStar's argument. CoStar alleges Lawson's and Gressett's "unauthorized access of a protected computer has caused damage to CoStar that has amounted in an aggregate loss of over $5,000 during a one-year period." (Compl. ¶ 70.) In addition, CoStar alleges loss of revenue from its license fees due to Lawson and Gressett's unauthorized use of CoStar's database. (*Id.* at ¶ 39.) The Court is satisfied that CoStar has adequately pled the jurisdictional

amount for loss required under the statute. Accordingly, the Court denies Lawson's and Gressett's Motions to Dismiss.

3.    <u>Civil RICO</u>

Lawson and Gressett argue as follows: 1) heightened pleading standard for copyright infringement,[8] 2) CoStar's alleged predicate acts, that of criminal copyright infringement, only states legal conclusions which the court is not bound to accept; 3) CoStar does not state which Defendant committed particular acts of infringement; 4) the complaint does not allege a distribution of copyrights within a 180 day period; 5) the complaint does not state that Lawson distributed property to the public; 6) there is no time frame stated for which defendant committed a particular act; 7) CoStar has not alleged sufficient facts to show there was an enterprise, CoStar only stated a legal conclusion. (Papers 30, 32.) CoStar argues that it has stated a valid claim for Civil RICO. CoStar alleges that Lawson's and Gressett's two predicate acts under Civil RICO are criminal copyright infringement.[9] (Compl. ¶ 74.) CoStar maintains that the enterprise constitutes Alliance, Lawson, and Gressett committing criminal copyright infringement. (*Id.* at ¶ 75.) Additionally, CoStar alleges that Gressett (not Lawson) sold the passcode and user ID information to other individuals named in the complaint, (*see id.* at ¶ 28), and that Alliance shared the passcode and user ID with others. (*Id.* at ¶ 29).

In order to state a claim under RICO a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)

---

[8]This argument fails, as discussed above where the Court held that there is no heightened pleading requirement for copyright infringement. Also, given that Lawson and Gressett third and sixth arguments are based on *Paragon*, they too, are invalid. *See* Jetform, 11 F. Supp. 2d at 789-90.

[9]18 U.S.C. § 1961(1)(B) (2009). While 18 U.S.C. § 2319 made criminal copyright infringement a predicate act under RICO, the specific provision defining criminal copyright infringement is 17 U.S.C. § 506(a).

(footnote omitted). 18 U.S.C. § 1962©, a provision of the Civil RICO statute, states in pertinent part, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962© (2009). Additionally, plaintiffs must allege that defendants committed at least two predicate acts through a pattern of racketeering activity. *See Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998).

While it is true that criminal copyright infringement may serve as Plaintiff's two predicate acts for Civil RICO, *see* 18 U.S.C. § 1961(1)(B), and the plain language of §§ 1961 and 2319 "appear to be unambiguous on their face, the legislative history of the Anticounterfeiting Act and § 2319 reveals that Congress's true intent in enacting the statutes was simply to increase the available penalties for counterfeiting and piracy." *Stewart v. Wachowski*, No. 03-2873, 2005 WL 6184235, at *5 (C.D. Cal. June 14, 2005). The court in *Stewart*, upon analyzing the legislative history of § 2319, determined that "Congress did not intend to criminalize *all* intentional copyright infringement or subject *all* multiple acts of intentional infringement to RICO liability." *Id.* (emphasis in original). Moreover, the court noted "[t]he legislative history of the Anticounterfeiting Act reveals that Congress's intent in expanding the list of RICO predicate offenses was to supplement existing sanctions against *counterfeiting and piracy organizations*." *Id.* (emphasis added). Under Civil RICO, the RICO association or enterprise must be distinct from the RICO defendant. *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161-62 (2001). Courts have recognized that "liability 'depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs.'" *Prunte v. Universal Music Group*, 484 F. Supp. 2d

32 (D.D.C. 2007) (citing *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993)). To adequately plead

an enterprise, CoStar must allege (1) "an ongoing organization with a decision-making framework

or mechanism for controlling the group," (2) "that various associates function as a continuing unit,"

and (3) "that the enterprise exists separate and apart from the pattern of racketeering activity." *U.S.*

*v. Smith*, 413 F.3d 1253, 1266-1267 (10th Cir. 2005). A RICO enterprise is "a group of persons

associated together for a common purpose of engaging in a course of conduct" and requires evidence

"of an ongoing organization, formal or informal, and by evidence that the various associates function

as a continuing unit." *Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998)

([citations omitted to U.S. Supreme Court case])". *Internet Archive v. Shell*, 505 F. Supp. 2d 755,

769.

CoStar seeks to establish an enterprise through Gressett's selling the passcode to others, and

impute his conduct onto Alliance and Lawson as a group. This may show that Gressett acted in an

organization separate and distinct from his normal business, and perhaps Alliance, but not that all the

Defendants, through their "consistent interactions and dealings with each other, and because their

relationship is in part based on the willful and criminal copyright infringement of CoStar's

copyrights," (*id.* at ¶ 75), constituted an enterprise within the meaning of § 1862(c). CoStar fails to

allege the characteristics of an enterprise, namely its organizational framework, let alone the fact that

all the Defendants committed criminal copyright infringement. Indeed, Alliance's involvement, in

sublicensing its passcode and user ID in violation of its license agreement, may be copyright

infringement, however, not all forms of copyright infringement rise to the level of *criminal* copyright

infringement, nor was it meant to. In fact, given that CoStar does not allege sufficient facts to show

that Defendants' actions were criminal infringement to further actions of a counterfeiting or piracy

organization, which appears to be the units criminal copyright infringement, as a predicate act, is designed to reach, to the extent that CoStar seeks to establish that Defendants were indeed an enterprise or association to further the acts of criminal infringement, CoStar's claim must fail. To the extent discovery develops additional facts, the Court will consider a motion to amend the First Amended Complaint. Accordingly, the Court grants Lawson's and Gressett's Motion to Dismiss Count Eight, the Civil RICO claim.

IV. **CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Motions to Dismiss for Improper Venue, Motions to Transfer, Motions to Dismiss Count Five for Direct Copyright Infringement, and Count Seven for a violation of the CFAA. The Court will grant Defendants' Motions to Dismiss the Count Eight for Civil RICO. A separate Order will follow.

    March 31, 2009                                    /s/
        Date                              Alexander Williams, Jr.
                                          United States District Judge