UNITED STATES DISTRICT COURT OF MARYLAND

2

--------------------------x
3 COSTAR REALTY INFORMATION, :
INC, et als,              :
4             Plaintiffs    :
                           :
5                          :
vs                        :Civil Action:  AW-08-0663
6                          :
                           :
7 MARK FIELD, et als,       :
              Defendants.  :
8 --------------------------x

9
                         Friday, February 27, 2009
10                        Greenbelt, Maryland

11      The above-entitled action came on for a
Rearraignment Hearing Proceeding before the HONORABLE
12 ALEXANDER WILLIAMS, Jr., United States District Judge,
in courtroom 4B, commencing at 11:30 a.m.

13


14


15


16      APPEARANCES:

17      On behalf of the Plaintiffs:

18      WILLIAM SAUERS, Esquire
        SANYA SARICH, Esquire
19


20      On behalf of the Defendant by Telephone:

21      MARY OLGA LOVETT, Esquire

22      SIMEON BRIER, Esquire

23


24

25 Tracy Rae Dunlap, RPR, CRR           (301) 344-3912
   Official Court Reporter

I N D E X

                                              Page

Reporter's Certificate                         51

```
 1        THE CLERK:  This case now pending before the
 2   court is AW-08-0663; CoStar Realty Information, Inc
 3   versus Mark Field, et al.  The matter now comes before
 4   the court for motions hearing.
 5        THE COURT:  First, those for plaintiffs.
 6        MR. SAUERS:  William Sauers and Sanya Sarich from
 7   Crowell and Moring.
 8        THE COURT:  All right.  Now let's get the
 9   identification of those on the line.
10        MS. LOVETT:  Good morning, Your Honor.  This is
11   Mary Olga Lovett with Greenberg Traurig, and I'm here on
12   behalf of Russ Gressett.
13        THE COURT:  And you're calling from where?
14        MS. LOVETT:  I'm calling from Texas, Your Honor,
15   Marshall, Texas.
16        THE COURT:  All right.  Thank you.
17        MS. LOVETT:  Thank you, Judge.
18        MR. BRIER:  Good morning, Your Honor.  Simeon
19   Brier on behalf of the defendant Lawson Valuation Group,
20   Incorporated, and I am calling from West Palm Beach,
21   Florida.  I appreciate you allowing us to attend by
22   phone.
23        MS. LOVETT:  Indeed, Judge.  Thank you.
24        THE COURT:  No problem.  I've had a chance to
25   look at the two motions by the defendants, and I want to
```

give both sides the opportunity to articulate their

positions a little more.  And let's see.  Who wants to

go first?

MS. LOVETT:  I will defer to Mr. Brier.

MR. BRIER:  That's fine, Your Honor.

THE COURT:  All right.  Mr. Brier.  I may have

some questions as you go, but we will listen to you and

then we will have the plaintiffs respond, and you can

get back with a reply -- both of you can reply.  All

right.  Yes.

MR. BRIER:  Sure, Your Honor.  Your Honor,

without forcing the court to listen to a regurgitation

of the pleadings in the matter.  Obviously, my client is

a Florida corporation, a closely held Florida

corporation operating in Palm Beach County, Florida that

performs real property valuations and appraisals.

Pursuant to a declaration that was filed with the court

on behalf of Douglas Lawson, who is one of the

principals of the company, Lawson Valuation has never

done any business in the state of Maryland.  They do not

have any operations or subsidiaries in Maryland.  They

have never owned or rented any real property or

conducted business in Maryland, or made any sales, or

engaged in business in Maryland.  The issues that have

been raised and framed by the Motion to Dismiss, the

supporting memorandum of law, as well as our reply to
the plaintiff's response in opposition to same, I think
are surrounding essentially three issues.

One is the personal jurisdiction issue, the
second is the venue issue, and then the third is the
merits of the claims that have been raised against my
client and the merits of the Motion to Dismiss.

With regard to the personal jurisdiction issue.
Your Honor, it is Lawson's position that plaintiff's
complaint or amended complaint fails to set forth the
basis for asserting personal jurisdiction.

THE COURT:  Let's go right into the specifics.
I'm going to ask the plaintiffs this.  I don't know if
they're asserting general jurisdiction or not, but I
suspect they're asserting specific jurisdiction.  And
essentially, as I read the pleadings, that's a term of
use and a forum selection clause that they would argue
makes you amenable to process here.  And you couple that
with some pirating acts, I guess that's the way to deal
with it, some unauthorized access and use, that that
together with a couple of other facts they're suggesting
brings you within the reach of Maryland.  Do you want to
respond to that.

MR. BRIER:  Sure.  You're deferring to me, Your
Honor, on that?

THE COURT:  Yeah.  Well, both of you or either.
It doesn't matter.
          MR. BRIER:  Yes, Your Honor.  With regards to
that, I mean there are two issues.  Number one, the
plaintiff's allegations are somewhat inconsistent with
regards to the pirating, because what the plaintiff
alleges is that Alliance, another plaintiff in the
matter, was given authorization to a contract that
Alliance paid to CoStar, and then Alliance possibly
improperly went ahead and essentially sublet or gave or
others access and charged a fee for it.
          And certainly to the extent that those
allegations are out there by the plaintiff, that would
certainly negate any intentional wrongdoing on behalf of
my client, Your Honor.  That my client paid a third
party for what they believed was lawful authorization,
assuming the allegations in the complaint are true, and
then that company misrepresented that according to the
allegations in the complaint.  So there was certainly
nothing intentional done with regard to any intentional
tort in Maryland.
          With regard to the Web site issue.  And I think
Mr. Gressett's motion raises these issues clearly as
well as ours.  The simple argument that CoStar is trying
to make this somehow acknowledging a very cumbersome and

likely one that is very much subject to oversight, some
Terms of Use on the web site does not alone establish
personal jurisdiction over Mr.- -- over Lawson Valuation
Group, nor do I think it establishes over one of the
other defendants, as well.

But I would like to hear whether or not their
assertion, the plaintiff's assertion is that there is
general jurisdiction or general minimum context with the
foreign state, or whether there is specific jurisdiction
because that would obviously frame some of my response.

MS. LOVETT:  Your Honor, just so I avoid
duplicating for the court.  With the court's permission,
may I also respond?

THE COURT:  Yes, please.

MS. LOVETT:  Our position on each of these
issues, it really runs in tandem.  The intentional tort.
Just for background, as Mr. Brier said, our clients both
were part of a group that essentially received what we
called a sub-life, a license through this Alliance
Group, which is a co-defendant.  Whether or not that was
a rightful or wrongful license truly isn't at issue for
purposes of this hearing, but we can  represent for
context to the court that in the case of my client, he
certainly paid for this access, paid to the Alliance
Group for the access for the license which the

plaintiffs admit was a rightful license.  So, again, the
issue of directing an intentional tort at the forum at
Maryland is inapplicable here.

With respect to the Terms of Use.  I think this
goes back as far as Burger King before Terms of Use were
actually anything contemplated by our system.  But it
requires the court to make an individual and pragmatic
inquiry of the adherence to these types of cumbersome
Terms of Use.  Mr. Gressett and Long Valuation Group,
both believing they were operating under a completely
valid license did put Terms of Use, which may have had a
forum selection clause.  But we know from the Supreme
Court that that's simply not enough.  Even when you have
a forum selection clause in a written contract, the
court still should make that individual pragmatic
inquiry.  So then the question becomes, I think for both
of our defendants, what reasonable expectation did
either of them have of being hailed into court in
Maryland.

Clearly, sitting in Texas, we know from the case
law that we cited in our brief the mere fact that the
Internet gives you the world does not make the world an
appropriate forum for litigation and for dispute.  So I
think that the language from Burger King becomes even
more important, because we're talking about asking the

court to make that inquiry based on what the reasonable
expectations were of the defendants.

These are not people who directed purposeful
torts, intentional torts at the forum. Nor are they
individuals or companies who, by clicking on and
accepting Terms of Use to enter a web site that they
thought they had every right to be on should be subject
to a forum selection clause.

THE COURT: All right. Anything else?
Plaintiffs will get a chance to respond to that.
Anything else on that issue?

MR. BRIER: I think that's it, Your Honor, other
than what is summarized in the pleadings.

THE COURT: All right. Okay. What is your next
point you want to raise?

MR. BRIER: With regard to the next point, Your
Honor, is the venue provision. I think it dovetails
with the personal jurisdiction. Your Honor, clearly --
and I will allow counsel for Mr. Gressett to speak on
his behalf, but clearly our clients are in similar
positions. My clients are a small, closely held
property valuation company in south Florida. Clearly,
pursuant to the declaration, they had never done
business in Maryland; would be extremely prejudiced if
it was forced to go to Maryland when all of its files,

all of its documents regarding the alleged actions,
including its relationship if any with Alliance, which
is a California corporation -- there would be
substantial prejudice to my client as a result of that,
Your Honor.

      THE COURT:  Your client is where now again?

      MR. BRIER:  My client is in Palm Beach County,
Florida, Your Honor.

      THE COURT:  Florida?  All right.  And where do
you believe the case should be transferred to?

      MR. BRIER:  Interestingly, Your Honor, there is
an issue of what the appropriate venue is, and I'll
allow Mr. Gressett's counsel to speak on that behalf.
But I think there is some agreement deferring to the
court that perhaps the venue should be properly in Palm
Beach County, Florida.  There is an issue with regard to
that as to when one defendant claiming they are a Texas
residence at the present time, the other claiming they
are a Florida resident, and therefore both claiming this
venue in Maryland under either scenario would be
improper.  So we need to figure out an appropriate
venue.

      Clearly, there is no argument that CoStar, which
is a large corporation with over 800 employees, has the
power, the wherewithal and financial ability to litigate

this matter in any venue in the United States.  That is
not the case with regarded to the defendant Lawson
Valuation Group, and I don't believe it's the same with
regard to the defendant, Mr. Gressett.

MS. LOVETT:  Your Honor, I would add that Mr.
Gressett is quite simply an individual.  He is not into
the real estate appraisal business.  He is not in the
brokerage business.  He is an individual.  And one of
the things that I had discussed with Mr. Brier prior to
today's hearing as a possible means of giving the court
an agreed basis for jurisdiction or venue is that -- for
venue, rather, is that because my firm has resources
that would allow it to be less burdensome for Mr.
Gressett, as a sole business owner, to litigate the case
in the Southern District of Florida, that that would be
something that we could agree to if the court in fact
agreed to transfer the venue.

THE COURT:  Where is he a resident?

MS. LOVETT:  He is a resident in the southern
district of Texas, Your Honor, in Houston.

THE COURT:  Why would he not have a problem with
Florida but he has a problem with Maryland?  Why is
that?

MS. LOVETT:  Your Honor, that was a compromise
that we offered, because we recognize the court's

concern.  The key reason, frankly, Your Honor, is that
our firm, as his counsel, and we are based in the
southern district of Florida.  It would make it perhaps
easier for him to have counsel who were present there
and lessen his expenses.

We know that he will still have the expenses of
traveling to the district for purposes of litigation,
but the issue still becomes, I think -- we know we're
standing before the court, Lawson and Mr. Gressett,
asking for a transfer to two different venues, and that
was simply an attempt to accommodate this concern.

It would still be incredibly burdensome on him to
go to Florida, but we think because he and Mr. Lawson
have in common a number of contacts with Alliance, that
the discovery burden would certainly be lessened and we
could share this burden among these two defendants.

THE COURT:  Okay.  All right.  I'll just tell you
it's cheaper to come to Maryland, you know, than it is
to come to Florida, but we'll see.

All right.  Let's see.  What about your RICO?
The RICO claim.  Do you want that dismissed?

MR. BRIER:  Correct, Your Honor.  We failed to --
we argue that the plaintiff's amended complaint fails to
meet the pleading requirements for copyright
infringement.  Plaintiff's claim attempts to assert a

criminal copyright infringement as the predicate act for
the RICO claim.  We also feel that the underlying
copyright infringement action is sufficient, and we
state the basis for it.

THE COURT:  What's not sufficient about it?  You
aren't challenging that the plaintiffs had a valid
copyright are you?  And then there's an allegation that
there was some unauthorized copying of that work.  Is
that in dispute here?

MR. BRIER:  Well, twofold, Your Honor.  Number
one is the intentionality of it, but Number two is that
the fourth element of that, of a copyright infringement
action, is specifying the specific acts and during what
time frame the defendants have infringed the copyright.
And clearly there is a lack of that specificity within
the allegations in the complaint.  The allegations in
the complaint, number one, bundle the defendants
somewhat together but number two also fail to specify
what specific copyrights were infringed by Lawson, my
client, or the other specific defendants when the
infringement occurred.  And it fails to provide any
further specificity.

So, certainly, we would argue that the claim for
copyright infringement is deficient on that standpoint.
And as a result of the fact that, number one, there are

allegations seem to contend that this is clearly not a

criminal copyright infringement because there was no

intent by Lawson or Mr. Gressett in that the plaintiffs

simultaneously allege that these parties paid a third

party for what they believe may have been  lawful use of

the web site but ultimately was not.  So there is no

intentional criminal copyright infringement, which is a

requirement, I believe, for the civil RICO claim as a

predicate.

THE COURT:  Well, let me just answer that.  And

obviously, going to get the plaintiffs to respond, but

some of these things in terms of specificity you -- we

have to wait until discovery and just see the times,

places and events.  I think overall, I think we know

what we're talking about.  And when we look at Rule 8

of the Civil Rules of Procedure, I think there is a

concise and decent allegation made here that gives you

that's some indication what's being claimed here.  So

I'm not sure I buy that it's that deficient, but we have

to see what the plaintiff says there.

MR. BRIER:  Aside from the specificity Your Honor

is this argument that the copyright infringement needs

to be the key element to form the underlying predicate

act for the civil RICO claim.  And there is no

allegations that what either Lawson or Gressett engaged

in was a copyright infringement. In fact, the
allegations are exactly to the contrary.

The allegations of the complaint, taken as true,
are that Lawson and Mr. Gressett went forward under the
premise that Alliance had sold to them lawful use under
sub-license to the CoStar, paid Alliance for that, and
then entered into that site and engaged in activity.
Clearly, that is not a criminal infringement.

There are no allegations in the complaint that
the defendants have committed a criminal copyright
infringement in that regard, and we believe as a result
Count Eight fails as a matter. There is no ability to
maintain a civil RICO action on a copyright infringement
claim that needs to be a criminal copyright infringement
claim.

THE COURT: All right. Again, I at no time read
the complaint so narrow to suggest that the use was
lawful. I think implicit in the complaint is that the
use, even the sale, was unauthorized and unlawful, but I
want plaintiff to tell us a little bit about that.

You mentioned earlier that Mr. Lawson and Mr.
Gressett was part of a group. What kind of group are
you talking about?

MR. BRIER: It is not Mr. Lawson -- Your Honor,
it is Lawson Valuation Group, which is the company. I

referred to it as "Lawson," but it's the company. That was, I believe, counsel for Gressett that mentioned that.

THE COURT: All right. Yes. What group? I'm not sure I understand.

MS. LOVETT: Yes, sir. It's confusing to call it an alliance, although that's the proper term because we have a defendant named Alliance, but there was a group, a network of these individual appraisers and brokers who worked together and who main maintained a joint, common web site, all of whom cooperated in various aspects of their professional business, referred business to one another over geographic area, and it was a part of their membership in that group that Lawson and Mr. Gressett were acquainted with Mr. Field, who was the principle of Alliance who brought them the idea of purchasing the sub-license to use CoStar's services.

As would be more fully developed going forward in the case, and as Mr. Brier has said, those services were paid for. Indeed, the fees -- when there were increases in the fees from CoStar, those increases were passed along. And in fact my client, behaving as an innocent party one would think would, frequently  called -- and this is alleged in the complaint and in the response to our motions by the plaintiff -- frequently

called to ask for customer service guidance  to deal
with issues for losing his electronic key tag and things
of that nature.  That's certainly not the actions of
somebody who believes he's committing a criminal act, to
call the person against whom he might be committing it.

        The group we're talking about is an affiliation
of these brokers, all of whom -- I believe all of the
defendants in this action I think were a member of that.
As I said, they maintained a common web site, a common
working relationship.  It wouldn't be fair to call it
employees of one another, but certainly they worked
together and obtained these sub-licenses via that
relationship.

        THE COURT:  Okay.  Anything else you want to say
before we give plaintiff an opportunity to respond?

        MR. BRIER:  Yes, Your Honor.  I believe the last
issue surrounds the allegations in the amended
complaint, which is Count Seven, which is violation of
the Computer Fraud and Abuse Act under 18 U.S.C. Section
1030.

        Pursuant to our Motion to Dismiss, Your Honor, we
believe that the plaintiff has failed to allege the
necessary elements to support that claim.  And in fact,
the case that we've cited in both our Motion to Dismiss
and in our reply memorandum suggests that they cannot

allege it, because what they're alleging here is copyright infringement.  They're not alleging that we hacked into their computer system and caused an interruption of service of their computer system or their database.

That, coupled with the fact that their vice president detailed whether or not they've sustained any loss as a result of that suspension of service or any damages as result of that which is a requirement under 18 U.S.C. Subsection 1030 renders the claim deficient and subject to dismissal.

THE COURT:  What damages can they get?  Is this loss of service?

MR. BRIER:  It's losses enumerated by the statute.  Number one, they just claim that they have a loss.  In one of the provisions of the complaint they claim that they have suffered a loss in excess of $5,000, but they don't state the basis for that.  In addition to that, pursuant to the amendment of the statute after -- in 2001, the damages are not recoverable unless they're related to interruption of service.

And clearly, based upon the case law that we've cited in the reply memorandum, because the defendants or the plaintiffs, rather, response to the -- in opposition

to the Motion to Dismiss we believe relies on the
pre-amendment statute, not on the post-2001 amendment
statute and the case law interpreting same. And the
interruption of service is the key issue. There is no
allegation in the complaint, nor do we believe it's the
plaintiff's intent to raise such an allegation that
their service or the database or their web site service
was interrupted. Their only allegation is damages
resulting from the copyright infringement, which can
clearly be recoverable under that claim.

THE COURT: Well, we'll simply ask plaintiff what
damages are they requesting, and we'll get an idea
whether we need to have that claim dismissed with leave
to amend and give us more specificity. We'll ask them.

What else?

MR. BRIER: I believe -- I don't believe I'm
missing anything else, but let me take a quick lock Your
Honor.

MS. LOVETT: Your Honor, while Mr. Brier does
that. With the court's permission, I would adopt the
arguments related to the CFA action. Specifically, we
argue in our pleadings -- I know the court has these --
that the 2001 amendments to that act very specifically
and narrowly define loss. And it must be related to
interruption of service, which has not been pled, has

not been pled nor, as Mr. Brier points out, occasioned
by any such loss been pled.  It's simply predicated on
copyright infringement, which is not the gambit of that
act, given the 2001 amendment.

THE COURT:  What does the language in that
amended act say?  I don't know if I have it.  Do you
have the language as to what, under 1030(E)(11), what
is the nature of the losses?

MS. LOVETT:  I do, Your Honor.  Actually, I'm
looking at 1030(E)(11).  It's also on Page 16 of our
Motion to Dismiss.

THE COURT:  Read it for me.

MS. LOVETT:  Yes.  Loss is now defined as any
reasonable cost to any victim, including the cost of
responding to any offense, conducting a damage
assessment, and restoring the data, program, system, or
information to its condition prior to the offense, and
any revenue lost, cost, incurred, or other consequential
damages incurred because of interruption of service.

THE COURT:  Well, that's pretty broad.  Do we
have any cases that have construed that in and around
the country?

MS. LOVETT:  We do, Your Honor.  I know that we
in our brief cited the Cohen case from the Seventh
District of Florida, where the court held that since the

2001 amendment so narrowly defined the term "loss", that
any loss must be related to interruption of service.
Indeed, I agree it's a broad paragraph.  But if you look
at the language here, "damage assessment," "restoring
the program system or information to its condition,"
that is very clearly speaking to damage to the system or
to their system because of an interruption of service
that you might see in computer hacking.  It's not in any
way related to copyright infringement, and there has
certainly been no allegations that our clients caused
such an interruption, or any damage or loss of
information that would need to be restored to its prior
condition.

        THE COURT:  Is there a split in the circuits
involving interpretation of this loss, or is that pretty
routine as what you said?  I know you've quoted a case,
but I skimmed over that McMillion, Western District of
Louisiana, 2007.  They seem to suggest that there is a
split.  Would you agree?

        MR. BRIER:  We agree, Your Honor, with regards to
there are a number of cases that support the plaintiff's
contention but they're all prior to the 2001 amendment.
I have seen the Louisiana case which seems to suggest
that this is a split, but all of the cases that I have
seen Your Honor and that we've cited clearly specify the

rationale behind supporting the position that unless
there is an interruption of service, there is no loss
because this -- this legislation was aimed at preventing
computer hacking.

And the 2008 case, the Cohen v Gulfstream
Training Academy case, which is a Southern District of
Florida case, as well as a number of others in the
Northern District of Louisiana, New Jersey, and
Illinois, rather.  They all stand for the same
proposition, which is pursuant to the specific language,
you have to have a damage to the system, an assessment
of what this damage is, a repair to the system, and then
losses as a result of that.  And so in this case, there
is none of that.

I think the Cohen versus Gulfstream Training
Academy case in the Southern District of Florida is
directly on point, because in that case the plaintiff
was trying to obtain damages for someone going on to
their system and copying customer information.  And the
court said in that case, in granting summary judgment,
that that kind of damage is not compensable under the
act, because it is not the copying of the customer
information that the act was intended to protect.  It is
the damage to the database system or the system and the
assessment of those, and losses stemming from that that

the act was intended to provide a civil remedy for.

Likewise in this case Your Honor, they're not alleging that my client's access to the web site or copying of information, assuming all of that is true, was damaging to their system. They're alleging that they had damage as a result of the copyright infringement, and so that is not what the Computer Fraud and Abuse Act was aimed at preventing. That is what their copyright infringement claim is that the damage is appropriate under that. So I have not seen, and the plaintiffs in their response memorandum, which was a composite response memorandum, I don't believe adopted any Fourth District cases. But certainly I don't see any strong argument to the contrary with regard to the post-2001 amendment cases.

THE COURT: All right. Apparently, the Fourth Circuit really has not directly addressed this yet, so it's out there. All right. Let's let Mr. Sauers or Ms. Sarich -- who is going to speak?

MR. BRIER: Your Honor, if I may. And I hate to interrupt. There was one additional issue that I saw in our pleadings that we haven't addressed.

THE COURT: Go ahead.

MR. BRIER: With regard to our complaint, we raised in our Motion to Dismiss that there is an

improper co-mingling of various causes of action into a
single count.  First and foremost, the complaint, we
believe, is defective because they re-allege each and
every prior paragraph in each count, and they've alleged
both allegations which support a legal remedy, as well
as an equitable remedy in each count.

They also include prayers for injunctive relief
in almost every count of the complaint, some of which
are clearly not entitled to injunctive relief as an
appropriate remedy.  Even in their breach of contract
claims, which are clearly a legal claim and not an
equitable claim, they seek equitable relief from the
court in addition to monetary damages.  And as a result
of that, we believe that the complaint and those
specific counts violate Federal Rule 10(B) and should be
dismissed, or the plaintiff should have to amend the
pleadings to correct those deficiencies.

THE COURT:  All right.  Well, my initial reaction
there is that those are technical violations, but at
some point we'll know what relief, if any, is
appropriate.  Where you can get legal relief, you will
get that.  Where you're not entitled to injunctive
relief or equitable relief, you won't get it.  But I'm
not going to make them redo a complaint because of that
and those technical arguments.  We're going to get

right to the heart of these issues here.  Anyway, we'll speak to that in my opinion that I will give after I've heard both sides and take this case under advisement.

MS. LOVETT:  All right.

THE COURT:  Mr. Sauers.

MR. SAUERS:  William Sauers.

THE COURT:  Yes.

MR. SAUERS:  I will address several of the issues raised by the defendants.  I'll start with the personal jurisdiction issue because that's where they started as well.  The defendant's Motion to Dismiss for lack of personal jurisdiction should be denied for two reasons. There is a valid forum selection clause in this case. And secondly, and we also have established specific jurisdiction over the defendants.

THE COURT:  You acknowledge no general.

MR. SAUERS:  We're not alleging that.

THE COURT:  All right.  So, it's specific.  All right.

MR. SAUERS:  With respect to the forum selection clause.  The defendants consented to a Maryland forum selection clause.  And forum selection clauses are a common means of addressing jurisdictional issues when you have parties that are in different jurisdictions. It's common practice.

In this case, the defendants had to use a password and a log-in to come into the CoStar data base. When they did that, they had to accept Terms of Use. The Terms of Use included a Maryland jurisdictional clause.  They don't dispute that any of this exists. They don't dispute that any of this happened.

I would note in their initial briefing they said we hadn't proved they ever accessed the databases, and then of course we provided them with the log-ins of their hundreds and hundreds of specific instances of log-ins to CoStar's databases, and they said nothing further about that in their reply.  And in fact --

THE COURT:  How do you know which is which or who did what?  Were you able to distinguish?  Did you do that?

MR. SAUERS:  Each of these defendants improperly obtained a user name and a password specific to them. When they log into CoStar's databases in Maryland, it creates a record, and CoStar keeps track of that.  And if you look at the exhibit to our motion, you will see that there is a spreadsheet listing the hundreds of times that each of them logged into the CoStar database, and you will see the user name is listed in the table. You can see specifically which person was logging into the database.

1    THE COURT:  All right.  Thank you.  Go ahead.

2    MR. SAUERS:  So, based on this, there is a forum

3  selection clause.  They logged into the database.  They

4  accepted the Terms of Use.  That should be enough to

5  establish personal jurisdiction in this case.  But

6  CoStar also has specific jurisdiction over these

7  defendants.  All of their activities were directed at

8  the forum here in Maryland.

9    As you know, there are two different ways to

10 establish specific jurisdiction.  You can go through the

11 Maryland long arm statute, and there are several

12 enumerated factors there to consider.

13   THE COURT:  Which ones are applicable?  Two and

14 three, or what?  Or A and B, or what?

15   MR. SAUERS:  Transaction of business in the

16 state, and they have caused tortious injury in the

17 state.  So those two factors enumerated in the statute

18 --

19   THE COURT:  Explain the tortious injury.  Go into

20 that one a little more.

21   MR. SAUERS:  Sure.  Sure.  As I mentioned

22 earlier, the defendants agreed to a Terms of Use

23 creating the contract in Maryland because they had to do

24 it through the service in Maryland.  They logged into

25 the database located in Maryland hundreds of times.

Each one of those instances when they viewed the database was a copyright infringement. Each one of those specific hundreds of instances are a separate tortious activity directed at Maryland. CoStar is in Maryland. Their servers are in Maryland. The information is Maryland. The entire purpose of their activities was to use -- improperly use passwords to get into CoStar's database to get the information located in Maryland. Everything about this was directed towards Maryland.

Many of the cases cited by the defendants had some sort of situation where the facts that were relied upon weren't tied to the tortious activity or the claims of the case. Here, both the forum selection clause and all of the activities are directed towards the claims being brought by CoStar against these defendants.

MR. SAUERS: This was not a situation where there was some sort of incidental use of CoStar's database. This isn't a freely accessible database. This isn't a web site that's available to everybody. You have to have a password. You have to have a log-in. You have to do that each time you want to get into the database. And as a result, there is specific jurisdiction -- they had to make a decision to come to CoStar's web site and take these steps to access the database.

```
 1        I would also note that with respect to the forum
 2   selection clause, we noted in our briefing that there
 3   was another CoStar case in fact where a forum selection
 4   clause was held to be enforceable.
 5        THE COURT:  Is that Judge Messitte's case?
 6        MR. SAUERS:  That's correct, Your Honor.
 7        THE COURT:  Did he orally do that?
 8        MR. SAUERS:  He did.
 9        THE COURT:  He normally doesn't write anything.
10        MR. SAUERS:  We included the transcript.  Yeah,
11   it was from the bench.  It was from the bench.
12        THE COURT:  I don't mean that in any negative
13   light, but his preference is to make oral opinions.
14   Okay.
15        MR. SAUERS:  And so in sum, between the forum
16   selection clause and the specific activities of the
17   defendants directed at Maryland, we have -- CoStar has
18   established personal jurisdiction.
19        THE COURT:  Okay.  Now, you mentioned that all
20   their activities were selected at the forum, and then
21   you gave me the citation to the exhibit of the hundreds
22   of efforts made to infringe.  But let me ask a more
23   specific question again.  This user license agreement
24   that Alliance had.  Again, when the people were
25   infringing or coming in -- was Gressett and Lawson
```

identified, or did they come under the password of
Alliance in general?  Or are you able to distinguish
between, was it Gressett and Lawson from Alliance, or
different -- or did they represent that they were
employees of Alliance?  What was it?

MR. SAUERS:  Yeah.  That's correct, Your Honor.
Both Gressett and Lawson represented that they were --
had authorized licenses from Alliance.  The log-ins that
they had were specific to them, so we could see the
specific instances of log-ins by Gressett, the specific
instances of log-ins by Lawson.

CoStar was fraudulently led to believe that these
people were authorized.  They were not.  And so when we
became aware of this, we still have the record, and we
were able to use that as part of our --

THE COURT:  You've identified individually Lawson
and Gressett.

MR. SAUERS:  That's correct.

THE COURT:  All right.

MR. SAUERS:  I will next turn to the several
claims -- several issues that fall under Rule 8, the
notice pleading their motions to dismiss the Section
1030 Act, the copyright claims, and the civil RICO
action.

THE COURT:  All right.

MR. SAUERS:  As you noted earlier, we're at the
notice pleading standard now.  CoStar's required to make
a short, plain, concise statement of the facts and
that's what we've done, and that meets all of the
elements.  That's what CoStar has done for each of these
elements.

With respect to the 1030 Act.  All you need to do
is read the statute.  It's clear.  This is a violation
of Section A-4 of the statute which makes it unlawful to
knowingly and with intent access a protected computer
without authorization and by means of such conduct
obtain anything of value, and that's what's happened
here.

We also need to show that there was a loss.  And
the term "loss", as was read earlier, read, the term
loss means any reasonable cost to any victim.  We would
-- You can stop there.  That's what happened.  We had a
reasonable loss at a reasonable cost.  The wording
following that is including, and then there is a laundry
list of different things.

One of the things in that list is an interruption
of service.  The fact that one of those items appears in
a laundry list of things of possible types of loss after
the word "including" does not read through to the entire
statute.  The defendants have cited two cases that

support their position.  We would respectfully assert that those cases are not correct.  There are other cases post=2001 amendment that have allowed cases to go forward on precisely the types of action we have here, improper use of passwords to access computer databases.

As you noted, the Freeh decision, although unprecidential, recognized that there are these different interpretations of the statute.  And after going through an exhaustive analysis of the situation, as you noted, determined that an interruption of service was not required.  And so a clear reading of the statute simply shows that this was a violation by the defendants and that CoStar has suffered a loss.

THE COURT:  Well, in Paragraph 7 I looked at that.  Your Paragraph 7 just tracks the phrase, during any one year period aggregating at least $5,000 in value.  Just tell us, or tell me what damages -- just categories of damages are you asking for.  And it may be, again, more than an interruption of service.  But what do you believe that you're entitled to?  We can argue legally what would happen, but what do you believe are your damages at this point?

MR. SAUERS:  There are a variety of different damages CoStar has suffered.  There are the damages from these folks not signing up to get our service.

```
 1          THE COURT:  Loss of revenue from fee licenses?

 2          MR. SAUERS:  Sure, Your Honor.  There are damages

 3   for the infringement of our copyrights, which are

 4   statutory.  And I'll mention this and try not to mention

 5   it again later.  The defendants have taken time to

 6   discuss the fact that this was some sort of -- they

 7   lacked an intent to do what they did.  And also,

 8   copyright is strict liability.  They made improper,

 9   unauthorized use.  Their positions are on all of what

10   they thought they were doing.  Those are issues that

11   they can try to allege as counsel for Gressett noted

12   during the discovery process and during the trial.  At

13   this stage in the proceedings, we made a proper

14   allegation.  So, those are two of the areas that we have

15   damages, and there may be others.  But those are the two

16   primary ones.

17          Turning to the copyright claims.  As Your Honor

18   noted, in order to plead a copyright claim, you have to

19   allege ownership of a copyright, registration of a

20   copyright, and infringement by the defendant.  That's

21   what we've done.  CoStar has alleged  ownership,

22   registration of the copyrights, and even included an

23   exhibit with registration numbers to the amended

24   complaint.

25          Further, Paragraph 30 of the amended complaint
```

states that the defendants made unauthorized copies and displays of CoStar's copyrighted works.  Paragraph 5 of our amended complaint includes additional allegations of copyright infringement.  So, it's clear that we met this test.  The defendants did not mention this case, but their premise for their motion to dismiss the copyright claims is based on a case out of the Eastern District of Virginia, Paragon v Hicks, from 1994.  And that decision, for one reason or another, created a different standard of pleading for copyright claims.

But that case was later, by the same Eastern District of Virginia, was later found to not be good law, and they adopted the test that I just explained, the three prong test.  So, it's clear that CoStar has alleged -- under Rule 8 has alleged a proper copyright claim.

     THE COURT:  All right.  Tell me about this RICO, why you need RICO here and what did you allege that's sufficient here to a RICO claim.  Again, we've had these cases across the years.  But these things are exceptional cases when you bring them in.  And it's usually when you're not able to get an entity as such, but you need help with this type of, again, threat, substantial threat.  So, where is the enterprise here?  What's the enterprise?

     MR. SAUERS:  As noted in our complaint --

THE COURT:  Just tell me about it.  Tell me about

this business, this enterprise.  I want to know about

it.

      MR. SAUERS:  It's CoStar's position that the

defendants in this case worked together to defraud

CoStar.  It was their business plan, we think, in

essence Your Honor to get passwords and resell

passwords.

      THE COURT:  You say it was their business?  What

do you base that on?  That this is their business?

      MR. SAUERS:  Well, the fact that they made these

unauthorized transfers of licenses.  The fact that Mr.

Gressett resold the licenses he improperly got from

Alliance.  He resold that to another party.  And we have

evidence, and we have brought all of these defendants

into this case, that Mr. Gressett sold his licenses on a

regular basis.

      Alliance was part of that.  They were fully aware

of what was going on.  And throughout the course of

discovery and the case, CoStar will present evidence on

all of these issues.  But this goes to the core of

CoStar's business, and that's why this is so important.

That's why this is exceptional.  CoStar provides

information, and they do it for a fee.  And we have this

group of defendants who are intentionally circumventing

the system.  They're password sharing.  They're not

paying the fees that they're supposed to pay.  This goes

to the core of what CoStar does, and CoStar cannot allow

this sort of activity to continue.  And they were

working in concert.

THE COURT:  Well, again, what I heard from the

other side is that these are a group of brokers and

appraisers that are coming together for common neutral

purposes, and I'm not sure that this is a separate

enterprise that meets the test of RICO.  You may develop

that in discovery, but I'm not sure you're explaining it

to me at this point suggests that we have RICO issues

here.

MR. SAUERS:  Your Honor, I can't imagine that it

would be the defendant's position that they -- that this

group, that they have alleged that it's this loose

association of various entities was put together for the

sole purpose of defrauding CoStar.  So I would believe

that this -- that their enterprise and their acting

together was a separate enterprise.  It was not whatever

this other group that they've alleged that they have.

This is in fact a separate enterprise giving rise to the

claims this was something else that they were doing.

They were defrauding CoStar.

It is a separate set of actions that they were

undertaking and a separate enterprise that they had

separate and apart from whatever this is.  If the

defendants plan to allege or try to show that is in fact

not the case, they can do so during the course of

discovery.  But at this stage in the proceedings, for

Rule 8 purposes, we've -- CoStar has alleged a

sufficient claim.  The defendant's position goes to

discovery and the merits of the case.

            THE COURT:  Well, you know, it goes the other way

also.  We could see what's developed in discovery and

then if you think you have something, we can let you

come back and reclaim it, but I'm not sure that you have

set forth anything specific to me that suggests we've

got a RICO thing going.  You've got some claims in here.

You've got copyright infringement, and you've  got the

computer fraud and abuse, and you have a fraud claim

there.

            So, you've got some individual claims.  If you

can establish those things, they would provide relief.

I just want to know why you need any RICO or whether

you've set forth enough here on the RICO.  That's just

my initial reaction.  I'm going to look at it, but I

don't know.  I do not usually let these things go just

on a preponderance and just some suggestions that

they're of a RICO thing going on.  I don't know about

that.

        MR. SAUERS:  Your Honor?

        THE COURT:  The Fourth Circuit is pretty tough on
this even in the pleadings.  They're tough on we
district judges in terms of allowing things to go to
discovery where you're just making a general, broad
allegation that "these acts constitute an enterprise
separate and apart from the acts."  And I'm not sure
I've heard it here this morning.

        All right.  Go ahead.  I cut you off.  If you've
got something else to respond to, you can.

        MR. SAUERS  No.  No, thank you Your Honor.  It's
CoStar's position that we have alleged an enterprise.
We're now hearing, I believe for the first  time, that
there is this other group that was out there that
somehow negates the enterprise that we -- that we set
forth in our pleadings.  If they have evidence of that,
that's something that can come forth during the course
of discovery.  As a matter of the Rule 8 pleading,
CoStar has alleged all of the elements, and the
defendant's position is something that comes after.

        THE COURT:  All right.

        MR. BRIER:  Your Honor.

        THE COURT:  Well, no.  We have to make sure the
defense -- the plaintiff is finished, and then I will

give you a chance to respond back.

      MR. BRIER:  Absolutely, Your Honor.

      THE COURT:  Let them finish.

      MR. SAUERS  I think the last issue that we have -- well, there are two issues, I apologize.  We have the motion to transfer for venue as the next issue.  There is no reason to transfer in this case.  This case has four defendants.  Two of the defendants are in California.  One of those California defendants has already filed an answer.  Two of the defendants are in Florida.  One of the Florida defendants has already filed an answer.  You have Mr. Gressett in Texas.  And Lawson Valuation Group is in Florida.

      There was a forum selection clause for each of these parties, as a preliminary matter.  Second, all of the -- if this was a transfer of venue, and I understand that the defendants have perhaps come to some sort of agreement that Florida is somehow not a problem for Mr. Gressett but Maryland is a problem for Mr. Gressett.  But putting that aside.  We would still have other defendants here, and you would have multiple jurisdictions hearing the same case on the same claims and the same facts.  And that would subject the defendants and CoStar to potentially multiple depositions on the same issues in different

jurisdictions.

This is precisely why the court in the Coke v AOL decision said that in these sorts of cases having a forum selection clause is a good thing because it provided the parties with predictability regarding where disputes are going to be heard. I don't think I need to say too much more about this. Maryland is just -- there is no better forum for any of the other defendants, because any other forum is going to harm any of the other -- they're all going to complain that wherever we are they shouldn't be there, that they should all be somewhere else. But they've all agreed to a forum selection clause, Your Honor, and that forum selection clause dictates Maryland.

The last point that I will mention is the co-mingling argument, and I won't spend too much time on that. As Your Honor correctly noted, the particulars of our damage claims and those sorts of things had come out during the course of discovery. We disagree with the case law even that was cited by the defendants in their briefing. The case at issue is a Pennsylvania case. I believe it is several counts were -- several claims were mixed together in one count, and so it was -- it was not possible for the defendant to understand that there were multiple counts in this.

It's clear in our complaint where the different counts are. As you noted, and CoStar agrees, this is a technical argument to attempt to avoid this case. And it's clear counsel for the defendant was able to tell this court exactly which claims and which causes of action and which types of remedies were available through each and every one of those counts. So the harm that they're alleging would seem to be unfounded. That's all I have, Your Honor.

THE COURT: All right. Thank you. All right. We'll give the defense counsel any opportunity to reply to anything that you heard that you wish to --

MR. BRIER: Yes, Your Honor. Simeon Brier on behalf of Lawson Valuation. First and foremost, and I'll go somewhat out of order, but I think addressing Your Honor's greatest area of concern is the civil RICO claim first.

With regards to the civil RICO claim, the very allegations of the plaintiff's complaint as addressed to my client, Lawson valuation negate this notion that my client was endeavoring in some criminal enterprise to defraud Lawson of its proper rights. The plaintiff's complaint states that my client paid Alliance money for access to the web site through Alliance's passwords. And so the notion that my client is somehow guilty of a

criminal conspiracy to harm CoStar, along with Alliance,
is negated by the very fact that we paid for what we
believed was authorized access.

The plaintiffs complaint also paints with a very
broad brush the allegation against Lawson and Gressett,
as did Mr. Sauers just a moment ago when he said this
Mr. Gressett is alleged to have resold passwords from
Alliance to other third parties. There is no such
allegation against Lawson Valuation Group. In fact,
Lawson Valuation Group isn't even a party to the claim
that addresses that issue in the complaint.

You know, there is -- which I believe is, I want
to say count -- let me pull that real quick. Count
Five. But there is no allegation -- Count Three, sorry,
which is there is an alleged fraud by Alliance and
Gressett. There is no allegation in the complaint that
my client ever resold any passwords or access to the
CoStar system to any third party. So, there is no
criminal enterprise. There is no conspiracy or
otherwise that my client took a part in.

With regards to the Computer Fraud and Abuse Act
claim, Your Honor. This is also a broad brush problem.
In the count within the complaint, which is Count Seven,
the plaintiff seeks to bring a cause of action against
Lawson, Gressett, defendant G. A. Teel, Pathfinder, and

a number of John Does under the Computer Fraud and Abuse Act, and paints with a very broad brush that the aggregate conduct of these defendants resulted in a loss of $5,000 over a one year period of time.

First and foremost, assuming that their contention is that the case law should support the notion that this is not a requirement for suspension of their system or down time or interruption of service and that they can seek damages if there is any loss regarding anything.  Assuming that that is incorrect, they have to allege under the act that my clients, Lawson Valuation, caused them $5,000 worth of damages over a one year period.  They have not done that.

In fact, their contention in the complaint is the opposite.  Their contention is that all of these defendants, including unknown John Does in the aggregate caused them damages of $5,000.  As a result of that allegation Your Honor, there is no support for their contention that my client violated the act because my client on his own would have to have caused them damages of $5,000 over a one year period or in excess of that amount, and the allegations aren't there.  And so with regard to the Computer Fraud and Abuse Act claim, there aren't sufficient allegations of loss against Lawson Valuation to support that claim.

1    I think I have already stated our position on the

2 personal jurisdiction.  I do not believe that

3 plaintiffs' reliance on the acceptance of the terms of

4 service is sufficient to compel.  As we know with

5 Internet usage, and as counsel for Mr. Gressett stated

6 earlier, to compel a party who uses an Internet site to

7 be hailed into any jurisdiction within the United

8 States.  There clearly has to be a presence in the

9 United States, action occurring in a specific venue,

10 rather, action occurring in specific venue to satisfy

11 the personal jurisdiction notion.  I will defer to Mr.

12 Gressett's counsel to state their position as well.

13        THE COURT:  All right.

14        MS. LOVETT:  Briefly, your Honor, and not to be

15 repetitive but to address Your Honor's I think well

16 founded concerns on RICO.  Again, Your Honor pointed out

17 the list of over a number of years by which CoStar was

18 able to determine not only that our individual

19 defendants were accessing the web site but the specific

20 location from which they were accessing it.

21        If you look at the exhibit which is appended to

22 the response of the plaintiffs, you will see that you --

23 there is not only an IP address which gives the location

24 of the Internet address for each person accessing the

25 system, and it identifies Mr. Gressett by name and the

Lawson Group by name.  But also there are the E-mail
addresses from which these contacts are coming.  So
there was never any -- again, our position will be
throughout this case that Mr. Gressett took a valid
license for which he paid.  And that license as
presented to him by Alliance was unrestricted.  Didn't
tell him that he couldn't sub-license them.  Didn't tell
him that he couldn't share with anyone else.  Didn't
tell him that his employees couldn't use it.
His position is that was a valid license that he took.
So we believe the allegation that he was trying to sell
or had some business plan to resell these passwords is
completely unfounded.

        However, if Your Honor looks at the evidence that
CoStar had available to it the entire time you will see
that this large document gives us the fact that Mr.
Gressett is openly accessing, as one would not expect a
criminal defrauder to do, the system.  And furthermore,
that he made specific phone calls regarding customer
service issues, again, not attempting to mask his
identity.  While that's more of an entry in nature
certainly, I think it cuts against  the notion that
there was a separate business enterprise.

        It's the plaintiff's duty to investigate this
prior to filing suit.  They may say this is the first

time they heard there was another group.  These groups
had a web site on the Internet where they were
specifically listed as affiliates to one another where
they referred one another business.  Certainly, had we
known these allegations were out there against our
clients before we filed suit, we might have enlightened
them on this point.

   With respect to the CFA actions.  Again, as Mr.
Brier points out, there is no specific allegations as to
Mr. Gressett as to how he caused the specific loss.  And
again, we contend that loss is defined as interruption
of service by damage to CoStar's system totalling $5,000
over one year.  We think it fails to meet the pleading
there.  The 2001 amendment we think clarifies the
specific legislative intent behind that statute, which
was to address the computer hacking, not unauthorized
access.

   We will stand on our other points for the other
arguments.

   THE COURT:  All right.  Is there anything burning
the plaintiff wishes to respond to?

   MR. SAUERS:  If I could just make one comment,
Your Honor.

   THE COURT:  Yes.

   MR. SAUERS:  Almost everything that the

defendants just raised in their rebuttal goes to the
merits.  All of the -- it was intentional, or what we
allege.  We allege that they improperly gained access.
They had an improper license from the get-go, and they
held out to CoStar that they were properly authorized.
They are now throwing up all sorts of, well, we meant
this, and we did this.  Everything that they've
discussed goes to the merits.

     At this stage in it, they're putting the cart
ahead of their horse.  I mean, we are at the pleading
stage.  We have established personal jurisdiction, and
we've put our pleadings forward, and we've met the Rule
8 requirements.  The rest of what the defendants are
discussing goes to the case.  Thank you, Your Honor.

     THE COURT:  All right.  I will take this under
advisement and get something out to you.  Just so you
won't be totally surprised, you will at least know my
leanings.  I do, at least preliminarily I feel that this
is a personal jurisdiction here and Maryland has it more
so than certainly Florida and Texas.

     I'll tell you, if you've transferred anywhere,
all jurisdictions will be subject to the same attack
that this court lacked personal jurisdiction over some
party.  And I don't go for this compromise, personally,
of defendants reaching an agreement that maybe Florida

but not Maryland.  I'm not sure I'm going with that.

I also have grave reservations whether there has sufficient pleading of a RICO claim.  I don't know about that.  I'm going to go study that and look at it and look at the cases again.  But I have some serious reservations about whether there is any RICO claim properly asserted.

A lot of the other technical objections about the complaint and the fact that the damages are not alleged or with specificity as to the individual defendants. Again, I read the complaint in a broad sense and I believe that there has been sufficient allegations set forth with reference to $5,000 or more as to each.  And then you tie that in with the exhibits and the addendum and what has been stated here.  So, I don't necessarily buy that.

The computer claim, fraud case abuse claim. Again, it's unclear as to what the Fourth Circuit would do with reference to damages now.  But again, if we look at the complaint in a broad sense, and plaintiff has already represented here today what they are seeking.  I asked them and they told me what at least two categories of damages they are seeking.  We know that a lot of this will be fleshed out in discovery, and both sides at this point seem to have different views as to what this case

is about.  But all of that will be developed at some

point after discovery when you bring it become to me for

a motion for summary judgment to further narrow the

claim.

I'm overall satisfied that the plaintiff has set

forth cognizable claims, with the exception, I think, of

the RICO.  I'll write something similar to what we have

just said, but that's my initial view of the case right

now.

And I'm not going to transfer this case.  There

is no way.  I believe that the cases -- I've had a

number of cases over 14 years on this personal

jurisdiction, and it's getting far more complex now with

the Internet as to what's done and what's not done.  If

you've looked at some of the cases that I have

published, you will see that when I feel there is no

jurisdiction, I let it go.

I just dismissed a case with over a hundred

foreign companies.  Interesting case, but this is a

little different here.  We do have forum selection pop-

up that comes up, and Judge Messitte has already

suggested in his oral opinion that that makes a lot of

sense.  And if it doesn't make sense, then wherever

there is an alleged pirating or invasion of one's

copyrights then you have to run to each state and try to

```
 1  get them, as opposed to what folks agreed upon at least
 2  implicitly when they made access.
 3          So, I'm just giving you my impressions.  I've
 4  looked at the pleadings and I've studied a little bit.
 5  That's just my initial reaction to the case, but I'm
 6  pretty sure that I'm going to keep the case here and
 7  we're probably going to deny the Motion to Dismiss for a
 8  lack of personal jurisdiction.
 9          And at this point, as I said, I think I'm going
10  to get rid of the RICO claim at this point.  But if the
11  circumstances suggest that there is a bases for this
12  enterprise out there, we will be pretty liberal with
13  pleading and allow claims to be reasserted.  So, I at no
14  time want to surprise you all as to where I'm going.  I
15  just wanted to tell you that.  Thank you.  Have good
16  day.
17              (Off the record at 12:36 p.m.)
18
19
20
21
22
23
24
25
```

1

2                        **CERTIFICATE**

3        I, Tracy Rae Dunlap, RPR, CRR, an Official Court
   Reporter for the United States District Court of
4  Maryland, do hereby certify that I reported, by machine
   shorthand, the proceedings had in the case of COSTAR
5  REALTY INFORMATION, INC et als versus MARK FIELD, et
   als, Civil Action Number AW-08-0663 on February 27,
6  2009.

7        In witness whereof, I have hereto subscribed my
   name, this 22nd day of March 2009.

8

9                   _____/S/_____
                    TRACY RAE DUNLAP, RPR, CRR
10                   OFFICIAL COURT REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25