## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

COSTAR REALTY INFORMATION, INC.
and COSTAR GROUP, INC.,

     Plaintiffs,

v.

MARK FIELD D/B/A ALLIANCE
VALUATION GROUP, *et al.*

     Defendants.

Civil Action No. 8:08-CV-663-AW

### PLAINTIFFS' OPPOSITION TO DEFENDANT PATHFINDER'S
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc. (collectively, "CoStar"), through their counsel, hereby oppose the motion of Defendant Pathfinder Mortgage Co. ("Pathfinder") for Summary Judgment.

### INTRODUCTION AND SUMMARY

After conducting no discovery of its own at all in this case, and after having failed to engage in any real effort to comply with CoStar's discovery requests, defendant Pathfinder filed a pro-forma, seven-page Motion for Summary Judgment simply contending that CoStar has failed to support its claims in this case. While it is Pathfinder's right to file a summary judgment after making no effort to inform itself of the facts in CoStar's possession, the inherent inadvisability of such a motion seems obvious.

Dockets.Justia.com

Pathfinder's only defense in this action is that it "has met its burden of establishing that it did not engage in unauthorized access of the CoStar database." Pathfinder Motion at 7. However, Pathfinder gets its own evidence wrong. The submitted declaration from Sam Wu – a board member who was not actually running Pathfinder – states only that "*Pathfinder cannot determine* whether any of its former employees accessed the CoStar database without authorization." Pathfinder Motion at Ex. 3, ¶ 10. As such, Pathfinder's testimony is that it *doesn't know* whether it illicitly accessed CoStar, not that *it did not* engage in unauthorized access.

Pathfinder's only other declaration comes from co-defendant Mark Field. Field, however, does not help Pathfinder disprove illicit access to CoStar. Instead, Field only states that "from time to time" he accessed CoStar's database from Pathfinder's computers. *See* Pathfinder Motion (D.E. 75-2) at Ex. 1, ¶ 10. Notably, he does *not* declare that Pathfinder never accessed CoStar's database on its own. Moreover, since Field has completely failed to respond to CoStar's discovery requests in this case, and has failed to appear for a properly noticed deposition, his declaration should be stricken in its entirety unless and until he responds to CoStar's discovery and subjects himself to examination by CoStar's counsel. Indeed, CoStar has a pending Motion for Order to Show Cause against Field (D.E. 73) suggesting that, based on Field's failure to comply with discovery, default judgment should be entered against him.

Had Pathfinder actually engaged in any discovery, it would have learned that CoStar has substantial facts in its possession to support its claims against Pathfinder. CoStar has records indicating that Pathfinder's computers access CoStar's products using user names and passwords associated with co-defendant Mark Field of Alliance Valuation Group ("Alliance") 60 times over a 26 month period from December 2005 through January 2008.

Not coincidentally, the beginning of this period *perfectly coincides* with CoStar's termination of a user account assigned to Brad Christensen under Alliance's contract with CoStar.  Brad Christensen, it turns out, is Pathfinder's President and "manager" of the Pathfinder operations.   The deactivated Christensen account had been used from the *exact same* IP addresses that began appearing on Mark Field's account after Christensen's termination.  Putting it simply, Brad Christensen had illicit access to CoStar as a result of his and Alliance's fraudulent representation that Christensen worked for Alliance until December 2005.   When CoStar learned that Christensen no longer worked for Alliance and terminated his access, he simply began accessing CoStar using Mark Field's account.   These facts are consistent only with the conclusion that Christensen, on behalf of Pathfinder, was illicitly accessing CoStar's products.

But CoStar's evidence is much more revealing than a number of logins from Pathfinder's computers.  CoStar has evidence showing that Pathfinder was accessing Alliance accounts *at the same time* that Alliance was accessing those counts themselves from the Alliance user's principle IP addresses.   The only explanation is that Pathfinder was independently and illicitly accessing CoStar's products.

Once CoStar's substantial evidence of Pathfinder's illicit use of CoStar's products is recognized, the case for Pathfinder's liability for breach of contract, copyright infringement, and violation of 18 U.S.C. § 1030 follow: (1) Pathfinder's access breached CoStar's Terms of Use, which limit access to CoStar's website to licensed users only; (2) When it accessed CoStar's products, Pathfinder made reproductions of CoStar's copyrighted photographs, thus engaging in copyright infringement; and (3) Because CoStar's computers are engaged in interstate commerce, Pathfinder's unauthorized access

of those computers to avoid paying more than $5,000 in license fees constituted a violation of 18 U.S.C. § 1030.

Finally, Pathfinder's motion should be denied because Pathfinder has largely disregarded its discovery obligations in this case, denying CoStar the ability to conduct meaningful discovery. Pathfinder's failures in this regard are the subject of CoStar's pending Motion to Compel.  Furthermore, Pathfinder's motion should be denied because it relies upon the declaration of co-defendant Mark Field, who has not complied with a single discovery request from CoStar in this case and failed to appear for a properly noticed deposition.  Field's conduct is the subject of CoStar's pending Motion for an Order to Show Cause seeking a default judgment against Field.  It would be a miscarriage of justice for Pathfinder (represented by Field's former counsel) to prevail on a summary judgment based on the testimony of a co-defendant that has refused to participate in this case and has dodged CoStar's legitimate discovery requests.

## STATEMENT OF UNDISPUTED FACTS

## I.      COSTAR BACKGROUND

CoStar is the leading provider of commercial real estate information in the United States and the United Kingdom, with approximately 900 researchers collecting and maintaining data on over 3,000,000 properties and over 1,000,000 active commercial listings.  *See* Declaration of Steven J. Williams ("Williams Decl.") at ¶ 3.  CoStar's field researchers are trained in photography and have taken millions of professional-quality photographs of commercial real estate and buildings.  *See id.* at ¶ 4.

As a part of its regular business practice, CoStar registers its copyrights in the photographs taken by its field researchers with the U.S. Copyright Office.  *See id.* at ¶ 5.  CoStar has applied for copyright registrations for approximately two and a half million photographs pursuant to the Copyright Office's

regulations allowing for collective registration of photographic works.  *See id*.  Among these copyright registrations, CoStar has obtained registrations VA 1-386-381 and VA 1-375-676.  *See id*. at ¶ 6; *see* Exhibits ("Ex.") 1 and 2.  Each of its registrations is based on registration applications that contain detailed lists of each of the commercial real estate photographs included in such applications.  *See id*. (corresponding registration applications).

CoStar's commercial real estate information and photographs are made available to the commercial real estate community as a series of database products covering, individually and collectively, all of the U.S. markets.  *See id*. at ¶ 7.  CoStar's customers pay a license fee, typically computed on the basis of the number of commercial real estate professionals associated with the customer, for access to CoStar's products.  *See id*. at ¶ 8.  CoStar's license then allows them to, among other things, make limited reproductions of the photographs contained on those databases and make limited use of the compilation of information maintained in the database.  *See id*.

CoStar's products are offered over an interface that resides on CoStar's website, www.costar.com.  *See* Declaration of Robert Lardizabal ("Lardizabal Decl.") at ¶ 2.  Authorized users of CoStar's products are required to enter a user name and password to access those products, with each user required to either download a certificate restricting use of CoStar to a single computer or to enter a random number generated by a secure access device.  *See id*.  In the same portion of the website in which a user would input his or her user name and password, the words "Login/Use Subject to <u>Terms</u>" appear.  *See* Williams Decl. at ¶ 10.  The word "Terms" is hyperlinked to a page containing CoStar's website Terms of Use.  *See id*.

CoStar's database servers maintain detailed records of each user's access to CoStar's products.  *See* Lardizabal Declaration at ¶ 3.  As a part of these records, CoStar logs the Internet address (IP

address) of the user, the time and date of the user's access, the database the user accessed, as well as the number of pages the user visits and the identity of the property records retrieved from CoStar's database – designated by CoStar's property identification number.  *See id*.

When CoStar users call up property records from CoStar's database, their computers create electronic copies of those records on their computers, including electronic files containing the photographs associated with the property records.  *See id*. at ¶ 5.  In addition, when CoStar users "save" the results of electronic search reports to CoStar's system, CoStar maintains copies of those search reports.  *See id*. at ¶ 4.

## II.  UNDISPUTED FACTS CONCERNING PATHFINDER'S LIABILITY

Pathfinder "is in the mortgage business providing various services to its real estate customers." *See* Ex. 3 to Pathfinder's Motion for Summary Judgment at ¶ 4 (D.E. 75-4) (Declaration of Sam Wu). Pathfinder is jointly owned by an investment company, FULCRA, and Brad Christensen.  *See* Ex. 3, Deposition of Sam Wu ("Wu Dep. Tr.") at 7-9.  FULCRA owns 54% of Pathfinder, while Christensen owns 46%.  *See id*. at 8, 26.  Brad Christensen was the President of Pathfinder.  *See id*. at 33.  Prior to leaving Pathfinder, he also served as a member of Pathfinder's board of directors.  *See id*. at 62.  As Pathfinder's President, Christensen was the "manager" of Pathfinder.  *See id*.

CoStar sales personnel contacted Pathfinder several times in an effort to sell CoStar's products and services to Pathfinder.  *See* Williams Decl. ¶¶ 12-13.  Specifically, those contacts included communications with Mr. Christensen, who expressed interest in the service.  *See id*.  However, Pathfinder balked at the price.  *See id*. at ¶ 13.

CoStar's database records showed, however, that Pathfinder was already getting access to CoStar.  Mr. Christensen previously was identified by a company calling itself Alliance Valuation

Group ("Alliance") as an employee of Alliance and designated as early as October, 2002 as an "Authorized User" of CoStar's products under a license agreement between Alliance and CoStar. *See id.* at ¶ 14. When CoStar entered into a new license agreement with Alliance on or about November 18, 2004, *see* Pathfinder Motion for Summary Judgment Ex. 2, Christensen was specified as an Authorized User again, *see* Williams Decl. Ex. D. Among the other named users on the Alliance account were Mark Field (a co-defendant in this case) and Barbara Quannie. *See id.*

Beginning in February 2004, the Christensen account began to be accessed through two specific IP addresses: 64.60.14.210 and 64.60.231.251. *See* Williams Decl. at ¶ 17, Ex. F. The Christensen account was eventually terminated on December 12, 2005, when CoStar was told that Christensen was no longer affiliated with Alliance. *See* Williams Decl. at ¶ 15, Ex. E. During the period from February 2004 through December 12, 2005, no other Alliance account was accessed using the IP addresses used to access the Christensen account. *See* Williams Decl. at ¶ 18.

Having his own account terminated apparently did not stop Christensen from accessing CoStar. Beginning on December 19, 2005, the same two IP addresses, 64.60.14.210 and 64.60.231.251 began to appear as having accessed CoStar through the Field and Quannie user accounts. *See* Williams Decl. at ¶ 19. From the period December 2005 through January 2008, approximately 60 logins to CoStar's products emanated from the Pathfinder IP addresses. *See id.* at ¶¶ 19-21.

Not surprisingly, as of early 2008, those IP addresses were assigned to Pathfinder, indicating that traffic associated with those IP addresses was emanating from Pathfinder's computers. *See* Declaration of Curtis Ricketts at ¶ 4.

At least two of the logins from the Pathfinder IP addresses overlapped with logins from the IP address more frequently associated with Mark Field's own use. At 3:24 p.m. on July 10, 2006, an effort

to access CoStar's product using Mark Field's user account from the 64.60.231.251 IP address was detected at the same time that account was being used from a separate IP address, indicating that someone at Pathfinder was attempting to access Field's account at the same time it was being accessed elsewhere. *See id.* at ¶ 22. A similar event occurred on March 7, 2007, when the same Pathfinder IP address attempted to access Field's account at the same time that account was being used from the principal IP address associated with Field's usage. *See id.* Similarly, on May 8, 2006, Barbara Quannie's CoStar account was accessed at 11:52 a.m. from one IP address, and then again at 11:53 a.m. from one of Pathfinder's IP addresses. *See id.* at ¶ 23.

A number of additional logins to Alliance accounts emanated from Pathfinder's IP address within 45 minutes of logins from IP addresses associated with Alliance. *See id.* at ¶ 24. This 45-minute figure is significant because, during one conversation between Steve Williams of CoStar and Brad Christensen concerning CoStar's belief that Pathfinder was illicitly using its product, Christensen stated that any such use was not occurring from Pathfinder's Orange County office (where he was located) and must have come from Pathfinder's Los Angeles office. *See id.* at ¶ 25. A publicly-available estimate places Pathfinder's Los Angeles office more than one hour by car from Field's office in San Clemente, CA – and up to two hours away in traffic. *See id.* at ¶¶ 25-26, Exs. I, J.

Among the scores of logins from Pathfinder's IP addresses, during one login session in January of 2008, the Pathfinder computer using Mark Field's CoStar account saved a report containing a number of individual commercial real estate properties. *See* Williams Decl. at ¶ 28. Among these properties, the report includes the property information and CoStar photograph associated with three different properties around the United States. *See id.* As such, the report indicates that Pathfinder's computers made copies of each of those photographs in preparing that report.

-8-

## OPERATIVE LEGAL STANDARD

The Court recently set forth the operative legal standard for summary judgment in *Nat'l Cas. Co. v. Lockheed Martin Corp.*, Docket No. AW-05-1992, 2009 U.S. Dist. LEXIS 82583, *10-*12 (D. Md. Sept. 9, 2009):

> Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). When parties file cross motions for summary judgment, the Court must view each motion in a light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

On the substantive law of copyright infringement, the standards are also well known. To make out a *prima facie* case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright and (2) defendants violated one of the exclusive rights of the copyright owner. *See*, *e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991).

To prevail in an action for breach of contract, a plaintiff must prove that: (1) the defendant owed the plaintiff a contractual obligation; and (2) that the defendant breached that obligation. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645 (2001).

**ARGUMENT**

I.     **PATHFINDER'S MOTION SHOULD BE DENIED BECAUSE COSTAR HAS
       ADDUCED SUFFICIENT EVIDENCE IN SUPPORT OF ITS CLAIMS**

Pathfinder's central contention in its motion is that "Pathfinder has met its burden of establishing that it did not engage in unauthorized access of the CoStar database," which it states underlies all of CoStar's claims.   *See* Pathfinder Motion for Summary Judgment (D.E. 75) at 7.   It supports this contention by arguing that any evidence CoStar may have of Pathfinder's use of CoStar's services stems from the fact that Mark Field used CoStar's services from Pathfinder's computers as a provider of services to Pathfinder pursuant to the terms of Field's contract with CoStar.   *See id.* at 2.   Contrary to Pathfinder's assertions, CoStar has adduced sufficient evidence to create a genuine issue of material fact as to Pathfinder's liability for copyright infringement, breach of contract and unlawful access to a protected computer under 18 U.S.C. § 1030.[1]   Indeed, CoStar's evidence tends to show not only that Pathfinder engaged in unlawful acts, but that the testimony of its declarant, Mark Field, is demonstrably a half-truth at best.

A.     **CoStar Has Sufficient Evidence of its Breach of Contract Claim**

CoStar has adduced sufficient evidence that Pathfinder breached a contract with CoStar, namely, the Terms of Use of CoStar's Website.   To prevail in an action for breach of contract, a plaintiff must prove that: (1) the defendant owed the plaintiff a contractual obligation; and (2) that the defendant breached that obligation. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645 (2001).

---

[1] Pathfinder's Motion makes reference to CoStar's claim for violations of the Civil RICO act.  However, the Court previously dismissed CoStar's Civil RICO act claim on the motion to dismiss filed by defendants Lawson and Gressett.

     **1.**     **Pathfinder Agreed to CoStar's Terms of Use by Using CoStar's Web- based Database Products**

CoStar has adduced evidence that Pathfinder, rather than Field, actually entered into an agreement with CoStar, namely, CoStar's website Terms of Use, by using CoStar's website.  As detailed in the declaration of Steven Williams, when Christensen first logged into his account with CoStar, he was required to accept CoStar's Terms of Use by clicking "I agree" to those terms.  *See* Williams Decl. at ¶ 9.  Furthermore, Christensen was required to re-confirm his acceptance of the Terms of Use *on a monthly basis* over the three years in which he had an active account.  *See id.* At least since 2004, when he was accessing CoStar using Pathfinder's computers, Christensen would have been accepting CoStar's Terms of Use in the course of his duties at Pathfinder.  That evidence, of course, was the same evidence put before the Court on co-Defendant Gressett's Motion to Dismiss, and the Court ruled that CoStar's Terms of Use were enforceable against Gressett.  *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d at 668-69.  CoStar's evidence on this point is undisputed and, accordingly, the Terms of Use form a contractual obligation between CoStar and Pathfinder (through the actions of its President, Brad Christensen).

Moreover, each user of CoStar's subscription, web-based products is presented with prominent language near the place where they input their user name and password indicating that use of CoStar's products is "Subject to Terms," which are then presented to the user through a hyperlink.  *See* Williams Decl. at ¶ 10.  As such, each user of CoStar's products is bound by CoStar's Term of Use.  *See*, *e.g., Hubbert v. Dell Corp*., 835 N.E. 2d 113, 121 (Ill. App. Ct. 2005) (enforcing online terms of use where users were given a prominent link to Terms of Use and where the statement "All Sales Subject to Dell's Terms and Conditions of Sale"); *PDC Labs., Inc. v. Hach Co.,* 2009 U.S. Dist. LEXIS 75378, *7-*8 (C.D. Ill. Aug. 24, 2009) (enforcing Terms of Use hyperlinked to web page in a prominent position).  As

discussed in depth below, persons using Pathfinder's Internet connection would have been presented with these prominent terms of use on scores of occasions, as CoStar's records show 60 logins from Pathfinder's IP addresses. *See* Williams Decl. at ¶¶ 10, 19-21. The enforceability of CoStar's Terms of Use against Pathfinder, a corporate user, is even stronger. *See generally,* Mark Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 472, 476-77 (2006).

CoStar has adduced considerable evidence that Pathfinder personnel (including Christensen) used CoStar's database products. CoStar's database records show that, beginning on December 19, 2005, a sizable amount of usage of Mark Field's CoStar user account emanated from IP addresses belonging to Pathfinder, indicating that computers using Pathfinder's Internet connections were using CoStar's subscription products. *See* Ricketts Decl. at ¶ 4; Williams Decl. at ¶ 19. A total of 60 logins occurred from Pathfinder's IP addresses. *See id.* at ¶¶ 19-21. CoStar's records show that, when Christensen had a CoStar account set up under Alliance's name, *he used the exact same IP addresses* to access his account until that account was terminated on December 12, 2005 – one week before the same IP addresses began accessing Field's account. *See id.* at ¶¶ 14, 17. Moreover, prior to the termination of Christensen's account, those IP addresses *never accessed any other Alliance account except for the Christensen account. See id.* at ¶ 18. This evidence alone supports an inference that Pathfinder, through Christensen, used CoStar's products and thus was subject to CoStar's Terms of Use.

Pathfinder's central defense to this contention is that Mark Field claims that he occasionally used his "legitimate" CoStar access from Pathfinder's offices. Notably, neither Pathfinder nor Field *actually deny* that Pathfinder personnel (including Christensen) used CoStar's database. Instead, Field only claims that he used his CoStar access from Pathfinder computers (*see* Pathfinder Motion for Summary Judgment, Affidavit of Mark Field at ¶¶ 10-11); he does not say that *no one else* at Pathfinder used his

access to CoStar's database.  Similarly, the affidavit of Sam Wu states only that Pathfinder "has been unable to identify any evidence within its control that allows it to determine whether any of its former employees accessed the CoStar database without authorization," *see* Pathfinder Motion for Summary Judgment, Affidavit of Sam Wu at ¶ 10.  In other words, in opposition to CoStar's evidence of access by Pathfinder, *Pathfinder has no information* disproving that its employees used CoStar's database. Accordingly, Pathfinder cannot assert that there is no material issue of fact concerning Pathfinder's unauthorized access to CoStar's database.

Pathfinder's evidentiary problems do not stop there.  If Pathfinder's contention were true, Mark Field would be in line for a Nobel Prize – he would have figured out a way to defeat the conventional laws of physics that prevent a person *from being in two different places at the same time*.  CoStar's records show that, on March 7, 2007, a computer logged in to CoStar's database from Mark Field's usual IP address *at the same time a computer was logged in from Pathfinder's IP address.  See id.* at ¶ 22.  On another occasion, September 21, 2006, Field's account was accessed from Pathfinder's IP address at the same time it was being accessed at another IP address.  *See id.* Moreover, on another handful of occasions, a computer logged in to CoStar's database from Pathfinder's IP address within 45 minutes of a computer logging into CoStar's database from Mark Field's office, despite the fact that Pathfinder's Los Angeles offices are more than a hour drive away (and more than two hours away in traffic) from Field's San Clemente, California office.  *See id.* at ¶¶ 24-26.[2]  Nor can Field explain why another user account assigned to Alliance Valuation, the Barbara Quannie account, was accessed at

---

[2] According to a statement from Pathfinder's CEO, Brad Christenson, to CoStar personnel, any usage of CoStar's services "must have been" from Pathfinder's LA offices.  *See* Williams Decl. at ¶ 25.  In any case, the overlapping usage on March 7, 2007, as well as usage from the Pathfinder IP addresses and Field's IP address within 13 minutes of each other, disproves any suggestion that Field could have made any hyper-fast shuttling between his office and Pathfinder's.

Pathfinder's IP address less than a minute after being accessed at another IP address in May 2006.  *See*

*id.* at ¶ 21.

Accordingly, not only has CoStar adduced sufficient evidence that Pathfinder has accessed

CoStar's database and thus accepted CoStar's online Terms of Use, it has raised substantial questions

about the veracity of Pathfinder's contentions on this issue in its summary judgment papers.

### 2.      Pathfinder Breached a Material Term of CoStar's Terms of Use

Having adduced sufficient evidence that Pathfinder agreed to CoStar's Terms of Use, it should

be undisputed that Pathfinder breached one or more provisions of the Terms of Use.  CoStar's Terms of

Use state, among other things, that:

> Only Authorized Users for a Passcode Protected Product may access such product and
> they may access it solely using the user name, password and, if applicable, key token
> (collectively, the "Passcodes") assigned to such user by CoStar. No Authorized User may
> share his Passcodes with any other person, nor may an Authorized User allow any other
> person to use or have access to his Passcodes. An Authorized User is defined as an
> individual (a) employed by a CoStar Client or an Independent Contractor (as defined
> below) of a CoStar Client at a site identified in the License Agreement, and (b) who is
> specified in the License Agreement as a user of a specific Passcode-Protected Product.

Williams Decl. at Ex. A.  The Terms of Use also state:

> Notwithstanding anything to the contrary herein, you shall not:
>
> (1) Access any portion of a Passcode-Protected Product unless you are an Authorized
> User for such Passcode-Protected Product using the Passcodes assigned to you by CoStar
> to access the components and services of the Passcode-Protected Product that your
> License Agreement authorizes you to access, subject to the terms contained therein and in
> these Terms of Use . . . .

*Id.*

Given these provisions, it is clear that evidence that Pathfinder used CoStar's database products

constitutes a breach of CoStar's Terms of Use.  Pathfinder never entered into a valid license agreement

to access the passcode-protected portions of CoStar's website, *see* Williams Decl. at ¶ 30, and therefore

had no Authorized Users that could legally access CoStar's database products. By obtaining such access as evidenced above, Pathfinder breached the provisions of the Terms of Use set forth above.

**B.** **CoStar Has Adduced Sufficient Evidence to Support Its Copyright Infringement Claim Against Pathfinder**

CoStar has ample evidence to support its copyright infringement claim against Pathfinder. CoStar has set forth evidence that it owns copyrights in particular photographs and that Pathfinder has infringed those copyrights by making unauthorized copies.

**1.** **CoStar Owns Copyrights in Specific Photographs**

CoStar's ownership of numerous copyrights is not the subject of any dispute. As a core part of its business, CoStar engages field researchers who are trained photographers to canvass metropolitan areas, including the Tampa area, to take high-quality photographs of commercial buildings. *See* Williams Decl. at ¶ 4. CoStar then collects all of the photographs taken by each photographer and registers the copyright in those works collectively pursuant to the Copyright Office's regulations concerning collective registration of photographic works. *See id.* at ¶ 5.

CoStar is submitting, along with this motion, two copyright registrations covering three different photographs. *See* Exs. 1 and 2. These registrations cover the following building photographs:

| Registration | Building Photo |
|---|---|
| VA 1-386-381 | 601-697 N. Euclid Street, Anaheim, CA 92801 |
|  | 8871-8947 Garden Grove Blvd., Garden Grove, CA |
| VA 1-375-676 | 6847-6931 Katella Ave., Cypress, CA 90630 |

Copies of the relevant photographs are attached hereto as Exhibit L to the Williams Declaration.

As indicated in the registrations, the photographs were first published within 90 days of the date the registrations were submitted. *See id*. Accordingly, these registrations constitute *prima facie* evidence that CoStar is the owner of the copyrighted works identified therein and that the copyrights are valid. *See* 17 U.S.C. § 410(c); *Service & Training, Inc. v. Data General Corp.,* 963 F.2d 680, 688 (4th Cir. 1992). No further proof from CoStar is required, and at no time has Pathfinder ever disputed CoStar's ownership of its copyrights.[3]

### 2.    CoStar's Copyrights Were Infringed By Pathfinder

CoStar's internal electronic records establish both Pathfinder's use of CoStar's products from Pathfinder's computers and its infringement of the identified CoStar copyrighted photographs. As detailed in the declaration of Robert Lardizabal, CoStar in the ordinary course of its business collects the details surrounding each use of its web-based products, including the time and date of the use, the IP address from which the use was emanating, the user account associated with the usage, and which property records were retrieved from CoStar's databases. *See* Lardizabal Decl. at ¶ 3. Additionally, when a user "saves" a report generated from CoStar's database, CoStar maintains a copy of that report. *See id.* at ¶ 4.

As detailed above CoStar's database records show that computers using Pathfinder's IP addresses accessed the property records associated with the photographs identified in Section I.A. above by creating a report that included such properties. *See* Williams Decl. at ¶¶ 27-28 and Ex. K.

---

[3] CoStar notes that its evidence of copyright ownership for the purposes of this motion is exemplary in nature rather than comprehensive. At any trial to establish the measure of Pathfinder's damages liability, CoStar would come forward with evidence of the additional copyrighted photographs and other works that Pathfinder has infringed during the course of the infringing activity described herein to sustain its burden to obtain such damages. CoStar does not wish to burden the Court with extensive and ultimately cumulative and duplicative submissions of copyright registrations and photographs when the predicate acts leading to infringement liability are the same.

When property records are retrieved from CoStar's database by an Internet user and incorporated into a report, photographs of the subject property are provided to the user.  *See* Lardizabal Decl. at ¶ 5.  A copy of the reports created by Pathfinder's computers are attached hereto as Exhibit K to the Williams Declaration.  CoStar's photographs would have been copied by Pathfinder's computer and rendered as a display on the computer screen.  *See* Lardizabal Decl. at ¶ 5.  Accordingly, by identifying CoStar's database records of the properties viewed and incorporated into a report by Pathfinder, CoStar has also identified the photographs that Pathfinder's computer has reproduced.

It is well established at this point that the copying of a copyrighted work in the memory of a computer constitutes a "reproduction" for the purposes of the Copyright Act.  *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701, 716 (9th Cir. 2007) (recognizing that a photographic "image stored in the computer is the 'copy' of the work for purposes of copyright law."); *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *Advanced Computer Servs. v. MAI Systems Corp.,* 845 F. Supp. 356, 363 (E.D. Va. 1994); *see generally,* Jane C. Ginsburg, *Putting Cars on the "Information Superhighway": Authors, Exploiters, and Copyright in Cyberspace,* 95 COLUM. L. REV. 1466, 1476 (1995) ("Copies of a work are made . . . when a temporary copy is received into the memory of [a] computer.").

Therefore, because Pathfinder created reproductions of CoStar's copyrighted photographs when it viewed and created reports including CoStar property records through its unauthorized access to CoStar's database, Pathfinder infringed CoStar's exclusive right of reproduction in those photographs.  *See* 17 U.S.C. § 501 (copyright infringement occurs when exclusive right of reproduction under 17 U.S.C. § 106 is violated).

Given that CoStar has shown that Pathfinder violated CoStar's exclusive right of reproduction in its copyrighted photographs, CoStar need only show that the violation of that right was unauthorized. As reflected in the declaration of Steven Williams, CoStar did not specifically authorize Pathfinder to use CoStar's products or reproduce its copyrighted photographs.  *See* Williams Decl. at ¶ 30.

Moreover, Pathfinder was not authorized under any license agreement to use CoStar's products. CoStar's license agreement with Alliance Valuation (Field's front company for his infringement ring) specifically provided that:

> The Licensed Product may be used by no more than the number of users set forth on the Subscription Form . . .  All of such users (the "Authorized Users") must be individuals (1) employed by Licensee or an Independent Contractor of Licensee . . . and (2) included on CoStar's list of Authorized Sites & Users for the Licensed Product. . . .  An "Independent Contractor" is defined as an individual person performing substantially the same services for Licensee as an employee of Licensee.

Pathfinder Motion for Summary Judgment (D.E. 75-3), Exhibit 2 to the Declaration of Mark Field at ¶ 1. Alliance did not identify any of the Authorized Users in that contract as Pathfinder employees, *see* Williams Decl. at ¶ 14, nor would CoStar's licensing practices have allowed a Pathfinder employee to be designated as an Authorized User, *see id.*  Accordingly, there is no reasonable dispute that Pathfinder was not authorized to access CoStar's database products by reason of the Alliance Valuation contract with CoStar.

Accordingly, because Pathfinder was not a licensed user of CoStar's products, it was not authorized to reproduce CoStar's copyrighted photographs, and its conduct constituted an infringement of CoStar's copyrights in those photographs.

**C.    CoStar Has Adduced Sufficient Evidence to Support its 18 U.S.C. § 1030 Claim Against Pathfinder**

CoStar's evidence of Pathfinder's access to its web-based database products, together with CoStar's evidence of loss, are sufficient to support a claim of unlawful access to a protected computer under 18 U.S.C. § 1030. Among other things, 18 U.S.C. § 1030 makes it unlawful to: (1) intentionally access a computer without authorization or exceed authorized access and thereby obtain information from a protected computer involved in interstate commerce (18 U.S.C. § 1030(a)(2)(c)); and (2) knowingly and with intent to defraud, access "a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value" (18 U.S.C. § 1030(a)(4)). A protected computer is defined as one "which is used in interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). To prevail on a civil claim under 18 U.S.C. § 1030, a plaintiff need show a violation of Section 1030(a) and a loss in excess of $5,000. *See* 18 U.S.C. §§ 1030(g) (providing for civil claim), 1030(e)(11) (defining "loss"), § 1030(a)(5)(B) (defining conduct subject to civil action).

Here, CoStar has produced more than enough evidence to support each element of its claim under Section 1030. *First*, it has shown, as described in section I.A.1.a above, that Pathfinder gained unauthorized access to CoStar's database products. Given that Pathfinder did not have a license to use CoStar's products, and knew of the need to obtain a license to obtain such access from its sales contacts with CoStar, *see* Williams Decl. at ¶¶ 12-13, 30, the inference can be drawn that Pathfinder's repeated unauthorized access was intentional. *See, e.g., United States v. Browning*, 390 F.2d 511, 512 (4th Cir. 1968) (intent can be inferred from acts of the parties and circumstances of the case). Additionally, because Pathfinder knew it needed to have a license to access CoStar's services and engaged in discussions to obtain legitimate access, it can be inferred that Pathfinder's use of CoStar's products

using Field's user account, thereby impersonating Field, intended to defraud CoStar of the value of its database products. *See United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001) (specific intent to defraud**,** may be inferred from the totality of the circumstances).

*Second,* CoStar's database products are hosted on computers that are definitively involved in interstate commerce – with CoStar serving customers in over 100 U.S. markets. *See* Williams Decl. at ¶ 7.

*Third*, CoStar's loss in this case exceeded $5,000. As the Court stated in its ruling on the motion to dismiss in this case, CoStar's loss of licensing revenues constitutes a loss for the purposes of Section 1030. *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 675 (D. Md. 2009). Had CoStar properly licensed Pathfinder for the databases it accessed through Field's subscription, Pathfinder would have paid CoStar in excess of $300,000 in license fees. *See* Williams Decl. at ¶ 30.

Accordingly, CoStar has adduced sufficient evidence to support its claim under 18 U.S.C. § 1030 and Pathfinder's motion for summary judgment on that claim must be denied.

## II.   PATHFINDER'S MOTION SHOULD BE DENIED BECAUSE IT WILLFULLY FAILED TO MEET ITS DISCOVERY OBLIGATIONS

Pathfinder's Motion for Summary Judgment should be denied outright and in the first instance because its failures to comply with CoStar's discovery in this case are so pervasive that CoStar was forced to file a pending motion to compel even the most basic discovery. It is thus perverse for Pathfinder and its counsel to request a summary judgment declaring that CoStar has produced "no evidence" on its claims where Pathfinder has essentially shirked its obligations to comply with the Federal Rules when it comes to discovery.

As set forth in CoStar's pending Motion to Compel, Pathfinder's discovery violations include:

(1) Destroying relevant electronic documents;

(2) Refusing to conduct a search documents that it admits are relevant;

(3) It refused to contact the key person conducting the day to day operations of Pathfinder for relevant evidence for the purposes of a Rule 30(b)(6) deposition; and

(4) It has refused to identify persons it admits has relevant information concerning its usage of CoStar's services.

*See* CoStar's Motion to Compel Defendant Pathfinder, DE #70 (Memorandum) at 3-7.  As set forth in CoStar's Motion to Compel, Pathfinder's failure to conduct a reasonable investigation in response to CoStar's discovery requests and for its Rule 30(b)(6) denied CoStar the opportunity to learn materials facts concerning Pathfinder's use of CoStar's services and its involvement with co-Defendant Mark Field.  Specifically, Pathfinder made little or no effort to communicate with Brad Christensen, the person involved in day to day operations of Pathfinder's business and who had the relationship with Mark Field.  As such, CoStar did not obtain his knowledge about, among other things, the relationship between Pathfinder and Field, why (as set forth below) hundreds of login sessions to CoStar's products came from Pathfinder's IP address, as well as his communications with CoStar in which he indicated a belief that usage of CoStar might be occurring in Pathfinder's Los Angeles office.  The knowledge of Mr. Christensen – a 46% owner of the company and the obvious person most knowledgeable about the issues relevant to this case – simply was put out of reach of CoStar by Pathfinder's stonewalling.  As a result, CoStar's ability to obtain relevant evidence from Pathfinder has been prejudiced.

Accordingly, Pathfinder's Motion for Summary Judgment must be denied as a matter of law.  As the Fourth Circuit held, it is error for a court to enter summary judgment against a party without determining whether the discovery sought by that party in a pending motion to compel (even after the closure of a discovery deadline) is warranted under the Federal Rules.  *See Phillips v. General Motors*

*Corp.,* 911 F.2d 724 (table), 1990 U.S. App. LEXIS 14276, *22-*24 (4th Cir. Aug. 16, 1990);[4] *see also*

*Snook v. Trust Co. of Georgia Bank of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988), (reversing a

district court's grant of summary judgment, concluding that "generally summary judgment is

inappropriate when the party opposing the motion has been unable to obtain responses to his discovery

requests."). CoStar is submitting, consistent with this argument, a declaration under Fed. R. Civ. P.

56(f) supporting a stay pending resolution of CoStar's motion to compel and the subsequent discovery

based on that motion. Declaration of William J. Sauers ("Williams Decl.").

### III.   PATHFINDER'S MOTION SHOULD BE DENIED BECAUSE THE SUPPORTING AFFIDAVIT OF MARK FIELD SHOULD BE STRICKEN

Pathfinder's Motion should also be denied because the material support for of Motion –

Mark Field's declaration – should be stricken from the record. Field is the subject of an existing Motion

for an Order to Show Cause in which CoStar is requesting an entry of default judgment against Field for

his *total* failure to respond to *any* discovery in this case or to show up for a duly noticed and scheduled

deposition. It would be a miscarriage of justice for Pathfinder, which employs the same lawyer that

previously represented Mr. Field, to prevail on a summary judgment motion based on the testimony of a

witness who has evaded CoStar's legitimate attempts to obtain discovery from him.

As set forth in CoStar's Motion for an Order to Show Cause (D.E. 73), Defendant Field, after

answering the Complaint in this case, has consistently refused to participate in discovery. He failed to

answer the interrogatories and document requests issued to him, despite the fact that such discovery was

provided to him while he still was represented Mr. Pierce (who continues to represent Pathfinder).

---

[4] The Fourth Circuit's local rule 32.1 states that "If a party believes . . . that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if the requirements of FRAP 32.1(b) are met.

Furthermore, Field did not show for a properly noticed deposition, nor did he issue any objection to that deposition after being informed of the date, time and location of that deposition on multiple occasions by counsel.

It is thus incredible that Field, having ducked his responsibilities under the Federal Rules, is now acting as Pathfinder's star witness in support of Pathfinder's summary judgment motion. Under Federal Rules of Civil Procedure 37(b) and (d), the Court may impose sanctions upon a party that fails to comply with discovery requests or to appear for a noticed deposition, including the sanction of "prohibiting the disobedient party from supporting or opposing designated claims or defenses." Fed. R. Civ. P. 37(b)(2)(A)(ii). CoStar submits that, in the absence of Field's compliance with a valid deposition notice and completion of the discovery issued to him, Field should be prohibited from submitting evidence on his own behalf or on behalf of another party. *See Danjanovich v. Robbins*, No. 2:04-CV-623 TS, 2006 U.S. Dist. LEXIS 21295, *9-*11 (D. Utah Mar. 27, 2006) (striking affidavit from co-defendant where he had failed to appear for a deposition); *Dedvukaj v. Equilon Enters., L.L.C.*, 301 F. Supp. 2d 664, 667-68 (E.D. Mich. 2004) (striking summary judgment declaration from witness who had failed to appear for noticed deposition pursuant to Rule 37(d)).[5]

## IV.   COSTAR SHOULD BE PERMITTED TO FILE AN AFFIRMATIVE MOTION FOR SUMMARY JUDGMENT ONCE FIELD AND PATHFINDER COMPLY WITH THEIR DISCOVERY OBLIGATIONS

Because, as set forth above, both Field and Pathfinder have failed to comply with their discovery obligations, CoStar is not able to make an affirmative motion for summary judgment at this juncture.

---

[5] Moreover, because Field's testimony is central to Pathfinder's defense, CoStar submits that, pursuant to Rule 56(f), summary judgment would need to be delayed pending Field's response to CoStar's discovery requests. *See* Sauers Decl. ¶¶ 10-13; Fed. R. Civ. P. 56(f).

Accordingly, CoStar requests that it be granted leave once defendants complete their discovery obligations to file its own affirmative motion for summary judgment.

## **CONCLUSION**

For the aforementioned reasons, CoStar requests that the Court deny Pathfinder's motion for summary judgment in its entirety.

Dated:  October 20, 2009                                    Respectfully submitted,


                                                            _____/s/_____
                                                            Shari Ross Lahlou, Bar. No. 16570
                                                            William J. Sauers, Bar. No. 17355
                                                            Sanya Sarich Kerksiek, Bar. No. 17636
                                                            Crowell & Moring LLP
                                                            1001 Pennsylvania Avenue, N.W.
                                                            Washington, D.C. 20004
                                                            Telephone (202) 624-2500
                                                            Facsimile (202) 628-5116
                                                            Email   slahlou@crowell.com
                                                                    wsauers@crowell.com
                                                                    skerksiek@crowell.com

                                                            *Attorneys for Plaintiffs CoStar Realty Information,*
                                                            *Inc., a Delaware Corporation, and CoStar Group,*
                                                            *Inc., a Delaware Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the above document was served upon the attorneys of record for the following parties by electronically filing the document with the Clerk of Court using the CM/ECF system, which caused a Notice of Electronic Filing (NEF) to be sent to the following on October 20, 2009:

Mary-Olga Lovett
Pamela Ferguson
Greenberg Traurig
1000 Louisiana Street, Suite 1800
Houston, TX 7700
Telephone: 713.374.3500
Facsimile: 713.374.3505
lovettm@gtlaw.com
fergusonp@gtlaw.com

*Attorneys for Defendant Russ A. Gressett*

R. Wayne Pierce
The Pierce Law Firm, LLC
133 Defense Highway, Suite 106
Annapolis, MD 21401-7015
Telephone: 410.573.9959
Facsimile: 410.573.9956
wpierce@adventurelaw.com

*Attorney for Defendant Pathfinder*
*Mortgage Company*

**I FURTHER CERTIFY** that on October 20, 2009, a true copy of the foregoing was sent by electronic and first class mail to the attorneys listed above and to:

Mark Field
Alliance Valuation Group
638 Camino De Los Maries, Suite H130A
San Clemente, CA 92673
mark.field@cox.net

and

Lawson Valuation Group, Inc.
8895 N. Military Trail, Suite 304E
Palm Beach Gardens, FL 33410-6263
lawsonmai@aol.com

Dated:  October 20, 2009                    Respectfully submitted,


                                            _____/s/_____
                                            William Sauers Bar. No. 17355
                                            Crowell & Moring LLP
                                            1001 Pennsylvania Avenue, N.W.
                                            Washington, D.C. 20004
                                            Telephone (202) 624-2500
                                            Facsimile (202) 628-5116
                                            Email  wsauers@crowell.com

                                            *Attorneys for Plaintiffs CoStar Realty
                                            Information, Inc., a Delaware Corporation,
                                            and CoStar Group, Inc., a Delaware
                                            Corporation*