# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION and COSTAR GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MARK FIELD D/B/A ALLIANCE VALUATION GROUP, *et al.* <br><br> Defendants. | Civil Action No. 8:08-cv-663-AW |

**DEFENDANT RUSS A. GRESSETT OBJECTIONS AND ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

TO: Plaintiffs, CoStar Realty Information, Inc., and CoStar Group, Inc. by and through their attorney of record William J. Sauers, Crowell & Moring LLP, 1001 Pennsylvania Ave., Washington, DC 20004.

Pursuant to Fed. R. Civ. P. 33, Defendant Russ A. Gressett, hereby files his Answers and Objections to Plaintiffs' First Set of Interrogatories.

Respectfully submitted,

**GREENBERG TRAURIG, L.L.P.**

By: /s/ Pamela Ferguson
Mary-Olga Lovett
State Bar No. 00789289
Pamela A. Ferguson
State Bar No. 24059743
1000 Louisiana, Suite 1800
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR DEFENDANT RUSS A. GRESSETT**

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5, I hereby certify that on July 21, 2009, a true and correct copy of the foregoing instrument has been served upon the following counsel of record by certified mail, return receipt requested:

Simeon Brier
Gary A. Woodfield
Edwards Angell Palmer Dodge LLP
350 East Las Ola Blvd., Suite 1150
Fort Lauderdale, FL 33301
Telephone: (954) 667-6140
Facsimile: (954) 727-2601

R. Wayne Pierce
The Pierce Law Firm, LLC
133 Defense Highway, Suite 106
Annapolis, MD 21401-7015
Telephone: (410) 573-9959
Facsimile: (410) 573-9956

William J. Sauers (Bar No. 17355)
Crowell & Moring LLP
1001 Pennsylvania Ave.
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-8844

I further certify that on July 21, 2009, a true and correct copy of the foregoing instrument was sent by certified mail, return receipt requested to:

Mark Field
d/b/a Alliance Valuation Group
2858 Via Bellota
San Clementine, CA 92673

Mary Olga Lovett
Pamela Ferguson

HOU 406,703,314v1

# GRESSETTS'S ANSWERS AND OBJECTIONS TO INTERROGATORIES

## Interrogatory No. 1.

Describe the nature of the relationship between GRESSETT and ALLIANCE, including but not limited to any contractual agreements concerning the referral of clients or business or the sharing of expenses.

## Response:

Gressett was involved in Alliance through a national alliance with several small appraisal companies. Alliance represented the California part of National Valuation group. The small appraisal companies developed a website and marketing material under the business name of National Valuation Group. The intent of National Valuation Group was for the appraisal companies to cooperate and present themselves as a larger alliance so that they could market to and handle larger and more geographically diverse clients that preferred "national" appraisal groups. Each group owned their own company. National Valuation Group was a mechanism for the companies to refer business, resolve conflicts, share marketing, and share personnel if a larger assignment presented itself. National Valuation Group also had the intent of developing standardized reporting and sharing expenses where possible and work load if needed with fees negotiated on an individual basis in the event that a job assignment was shared. Both Gressett and Alliance were associated with National Valuation Group, thus part of the same alliance that began working together in late 2001 / early 2002. Upon an offer from Alliance in 2004, Gressett agreed to sub-license a user key from Alliance for CoStar at a price that Gressett was told represented a pro-rata share of Alliance's total cost for the license.

## Interrogatory No. 2.

Describe the nature of the relationship between GRESSETT and TEEL, including but not limited to any contractual agreements concerning the referral of clients or business or the sharing of expenses.

## Response:

Gressett's relationship with Teel has been strictly as an appraisal industry colleague. Gressett and Teel have not entered into any contractual agreements relating to client referral, business or the sharing of expenses. For a period of time, Teel forwarded $750/quarter to Gressett and was given CoStar pass codes to search for comps. Gressett believed that he had a valid CoStar sub-license and that in sub-licensing to Teel, he was acting within his rights under his sub-license.

## Interrogatory No. 3.

Describe the nature of the relationship between GRESSETT and QVAL, including but not limited to any contractual agreements concerning the referral of clients or business or the sharing of expenses.

**Response:**

Gressett's relationship with QVAL is strictly friendship as an appraisal industry colleague. There have been no contractual agreements relating to client referral, business or the sharing of expenses. Gressett and QVAL were planning to co-broker deals together and worked toward that end in a couple of situations. For a period of time, QVAL sporadically forwarded $125/month to Gressett and was given CoStar pass codes to search for comps. Gressett believed that he had a valid CoStar sub-license and that in sub-licensing to QVAL, he was acting within his rights under his sub-license.

**Interrogatory No. 4.**

Describe the nature of the relationship between GRESSETT and LAWSON, including but not limited to any contractual agreements concerning the referral of clients or business or the sharing of expenses.

**Response:**

Gressett and Lawson were involved in a national alliance with several small appraisal companies. The small appraisal companies developed a website and marketing material under the business name of National Valuation Group, and National Valuation Group's intent was to present themselves as a larger alliance so that they could market to and handle larger and more geographically diverse clients that preferred "national" appraisal groups. Aside from National Valuation Group, Gressett has no relationship with Lawson.

**Interrogatory No. 5.**

Describe the nature of the relationship between GRESSETT and PATHFINDER, including but not limited to any contractual agreements concerning the referral of clients or business or the sharing of expenses.

**Response:**

Gressett has no relationship with Pathfinder and did not have any dealings with it. Aside from this lawsuit, Gressett has not heard of Pathfinder.

**Interrogatory No. 6.**

Describe the nature of GRESSETT's business, including a description of the nature of the goods or services provided to GRESSETT's customers.

### Response:

Gressett works as a commercial appraiser supplying appraisals and as a commercial real estate broker providing brokerage services. He analyzes data; his analysis and professional review are his work product.

### Interrogatory No. 7.

IDENTIFY all clients to whom GRESSETT provided goods or services from the period March 18, 2008 to the present.

### Response:

Gressett objects to this Interrogatory on the grounds that it is overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Gressett further objects to this Interrogatory on the grounds that it asks for Gressett's trade secrets. Subject to and without waiving the foregoing, Gressett will answer upon the Court's entry of a protective order.

### Interrogatory No. 8.

Provide the total revenues obtained by GRESSETT during the period June 2002 and March 13, 2008.

### Response:

Gressett objects to this Interrogatory on the grounds that it is irrelevant and overly broad to the extent that his revenues were derived from brokerage services. Gressett further objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers:

| Year | Total Revenue |
|---|---|
| 2004 through March 13, 2008 (without brokerage revenue) | $329,334 |

### Interrogatory No. 9.

Provide the total expenses by category incurred by GRESSETT during the period June 2002 and March 13, 2008.

### Response:

Gressett objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers:

| Category | Total Exp 2004 - March 13, 2008 |
| --- | --- |
| Vehicle | $41,583 |
| Depreciation | $5,995 |
| Insurance | $4,211 |
| Health insurance | $14,271 |
| G&A, Office, Supplies, Misc. | $53,255 |
| Travel | $15,185 |
| Meals & Entertainment | $3,830 |
| Dues, Licenses, Taxes | $52,222 |
| Wages | $4,355 |
| Charity Contributions | $101,225 |
| Home Office | $20,614 |
| Self-Employment and Income Taxes | $104,416 |
| Total | $421,162 |

Expenses for 2008 are not complete and definitely understated until a final tax return is completed (among other expenses, self employment and income taxes are not included and will be a large part of expenses).

The expense total does not have a salary for Gressett in it as he has done business as a sole proprietor.

## Interrogatory No. 10.

Itemize all payments made by GRESSETT to ALLIANCE from June 2002 through the present, including the date on which such payments were made, the amount of such payments, and the purpose for which such payments were made by GRESSETT.

## Response:

Gressett objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers:

```
2003 - 1 payment made to NVG-CA (aka Alliance) for $2,500 for appraisal work
2004 - 3 quarterly payments @ $1,251/quarter  = $3,753
2005 - 4 quarterly payments @ $1,251/quarter  = $5,004
2006 - 3 quarterly payments @ $1,251/quarter  = $3,753
       1 quarterly payments @ $1,327/quarter  = $1,327
2007 - 3 quarterly payments @ $1,327/quarter  = $3,981
       1 payment for lost key token       =       $150
       1 quarterly payments @ $1,350/quarter  = $1,350
```

2008 - 1 quarterly payments @ $1,350/quarter = $1,350

**Interrogatory No. 11.**

Itemize all payments made by TEEL to GRESSETT from June 2002 through the present, including the date on which such payments were made, the amount of such payments, and the purpose for which such payments were made by GRESSETT.

**Response:**

Gressett objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers:

| | | |
|---|---|---|
| 2006 - | $875 | (Jun-Sept) |
| | $750 | (Oct/Nov/Dec) |
| 2007 - | $750 | (Jan/Feb/Mar) |
| | $750 | (Apr/May/Jun) |
| | $750 | (Jul/Aug/Sep) |
| | $750 | (Oct/Nov/Dec) |
| 2008 | $750 | (Jan/Feb/Mar) |

**Interrogatory No. 12.**

Itemize all payments made by QVAL to GRESSETT from June 2002 through the present, including the date on which such payments were made, the amount of such payments, and the purpose for which such payments were made.

**Response:**

Gressett objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers:

| | | |
|---|---|---|
| 2005 - | $125 | (Feb) |
| | $125 | (Mar) |
| | $125 | (May) |
| | $250 | (Jun/Jul) |
| | $125 | (Aug) |
| | $250 | (Sep/Oct) |
| | $125 | (Nov) |
| | $125 | (Dec) |
| 2006 - | $500 | (Jan-April) |
| | $375 | (May-Jul) |

      2007 -        $625        (Feb-Jun)
                       $750        (Jul-Dec)

### Interrogatory No. 13

Itemize all payments made by LAWSON to GRESSETT from June 2002 through the present, including the date on which such payments were made, the amount of such payments, and the purpose for which such payments were made.

### Response:

None.

### Interrogatory No. 14.

Itemize all payments made by PATHFINDER to GRESSETT from June 2002 through the present, including the date on which such payments were made, the amount of such payments, and the purpose for which such payments were made.

### Response:

None.

### Interrogatory No. 15.

Describe all communications between GRESSETT and ALLIANCE concerning this lawsuit, including the date on which such communications were made and the substance of such communications.

### Response:

Gressett recalls that he took a single phone call from Mark Field early on, just after the lawsuit was made known. Gressett is not certain of the date but believes it was within the first several weeks after the lawsuit was filed. It was a short phone conversation, lasting less than a minute or two. Field was concerned and thought the defendants should all get one law firm and fight together. Gressett declined and indicated to him that evidently CoStar had a differing opinion as to the legality of the sub-license that Gressett had been paying Alliance for. Gressett recalls that Field had not been served at the time but had heard of the lawsuit. Gressett subsequently cut the phone call short and does not recall any other communications with Alliance. Gressett is not aware of any emails where they discussed this lawsuit.

### Interrogatory No. 16.

Describe all communications between GRESSETT and TEEL concerning this lawsuit, including the date on which such communications were made and the substance of such communications.

**Response:**

Gressett does not recall any communications with Teel.

### Interrogatory No. 17.

Describe all communications between GRESSETT and QVAL concerning this lawsuit, including the date on which such communications were made and the substance of such communications.

**Response:**

Gressett recalls that he spoke with Jerry Witte on a couple of occasions prior to the lawsuit being filed and prior to being served. Gressett is not certain of the actual dates. Jerry Witte told Gressett that he had received a demand letter and had been in a heated conversation with CoStar (or CoStar's attorney) that was not good and that he had been accused of wrongdoing as it relates to use of CoStar services. Jerry Witte expressed concern about the situation, as did Gressett. Jerry Witte said that he had set up a meeting with his attorney, and Jerry Witte and Gressett agreed that they would just tell the truth and not discuss the case any further with each other. Gressett has not spoken to Jerry Witte since that time. Gressett is not aware of any emails where they discussed this lawsuit.

### Interrogatory No. 18.

Describe all communications between GRESSETT and LAWSON concerning this lawsuit, including the date on which such communications were made and the substance of such communications.

**Response:**

Gressett spoke with Doug Lawson on two or three occasions early on after the lawsuit was filed. Gressett is not certain of the dates, but it would have been within the first several weeks after the lawsuit was filed. They both expressed concern about the situation but both agreed that they had acted in good faith concerning their sub-licenses and viewed their alliance as National Valuation Group as legitimate. They discussed that neither Gressett nor Lawson had hidden anything and assumed what they had been told by Alliance was true and correct. Alliance told them that CoStar was aware of Alliance's action regarding their sub-license. They also spoke about possibly getting an attorney to represent them both. Gressett recommended his attorney and gave Lawson her information. Lawson said that he would contact her. Gressett recalls that these short conversations took place within the first few weeks after the lawsuit was filed. Gressett and Lawson have not

communicated since that time. Gressett is not aware of any emails where they discussed this lawsuit.

**Interrogatory No. 19.**

Describe all communications between GRESSETT and PATHFINDER concerning this lawsuit, including the date on which such communications were made and the substance of such communications.

**Response:**

None.

**Interrogatory No. 20.**

IDENTIFY all persons AFFILIATED with GRESSETT who have used COSTAR's products or services since June 2002.

**Response:**

Gressett objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers: none, as Gressett is a sole proprietor, and no persons are affiliated with Gressett.

**Interrogatory No. 21.**

IDENTIFY all persons AFFILIATED with GRESSETT who, during their AFFILIATION with GRESSETT and during the period June 2002 to the present, have observed or received information or products derived from COSTAR's services, such as COSTAR market reports, printouts of search results, property details, or other such information.

**Response:**

Gressett objects to this Interrogatory on the grounds that it calls for speculation. Gressett further objects to this Interrogatory on the grounds that the time frame should be limited to the 2004 through March 13, 2008, as Gressett did not utilize CoStar's services prior to 2004. Subject to and without waiving the foregoing, Gressett answers: none, as Gressett is a sole proprietor, and no persons are affiliated with Gressett.

# VERIFICATION

STATE OF TEXAS § 
§ 
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day, Russ A. Gressett appeared, known to me to and whose name is subscribed to the foregoing Objections and Answers to Plaintiffs' First Set of Interrogatories as follows, and, after being duly sworn, did state that he has read the foregoing Answers and that the same are, to the best of his knowledge, true and correct and that he executed the same for the purposes and consideration therein stated.

*[signature]*
Russ A. Gressett

SUBSCRIBED AND SWORN TO BEFORE ME on this the 21st day of July, 2009 to certify which, witness my hand and seal of office.

*[signature]*
Notary Public in and for
the State of Texas

CLEMENCE EADEH
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-20-10