# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# GREENBELT DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC. and COSTAR GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MARK FIELD D/B/A ALLIANCE VALUATION GROUP, *et al*. <br><br> Defendants. | Civil Action No. 8:08-CV-663-AW |

### COSTAR'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT RUSSELL GRESSETT

Pursuant to Fed. R. Civ. P. 56, Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc. (collectively, "CoStar"), through their counsel, hereby move for summary judgment against Defendant Russell Gressett ("Gressett").

### INTRODUCTION AND SUMMARY

Little did CoStar know, but during a period beginning in April 2004 and continuing until February 2008, it had a competitor in the Houston market for the sale of commercial real estate information services. Unlike other competitors, who spend millions of dollars creating databases and original content, this competitor had a distinct advantage: he could provide his customers with exactly the same content as available through CoStar at a fraction of the price. The competitor was Russell Gressett.

There was no magic to how Gressett competed with CoStar – he simply took his CoStar user name and password – itself surreptitiously obtained in a scheme arranged by co-Defendant Alliance Valuation Group – and provided it to commercial real estate companies in return for a

monthly or quarterly fee. There is no dispute on these points – Gressett has admitted these facts in his deposition and responses to CoStar's discovery requests.

What inexorably follows from Gressett's admission, and as set forth below, is that his conduct allowed his sub-sub-licensees to access CoStar's products without CoStar's permission and thereby make infringing copies of CoStar's copyrighted photographs. By allowing these illicit sub-sub-licensees to do so, Gressett himself is liable for their infringement under the doctrines of contributory infringement and vicarious infringement.[1]

By the same token, Gressett's admission that he was re-selling his CoStar access establishes as a matter of law that Gressett breached his agreements with CoStar. As is set forth below, CoStar prohibits its users in every possible way from providing their CoStar access to third parties, and Gressett's actions constitute a breach of CoStar's Terms of Use and the license agreement under which Gressett was provided access in the first place.

## STATEMENT OF UNDISPUTED FACTS

**I.  COSTAR BACKGROUND**

CoStar is the leading provider of commercial real estate information in the United States and the United Kingdom, with approximately 900 researchers collecting and maintaining data on over 3,000,000 properties and over 1,000,000 active commercial listings. *See* Declaration of Steven J. Williams ("Williams Decl.") at ¶ 3. CoStar's field researchers are trained in photography and have taken millions of professional-quality photographs of commercial real estate and buildings. *See id*, at ¶ 4.

---

[1] Although CoStar's First Amended Complaint does not contain a count for vicarious and contributory copyright infringement against Gressett CoStar has filed concurrently herewith a Motion for Leave to File Second Amended Complaint. D.E. 84.

As a part of its regular business practice, CoStar registers its copyrights in the photographs taken by its field researchers with the U.S. Copyright Office. *See id*, at ¶ 5. CoStar has applied for copyright registrations for approximately two and a half million photographs pursuant to the Copyright Office's regulations allowing for collective registration of photographic works. *See id*. Among these copyright registrations, CoStar has obtained registrations VA 1-386-342, VA 1-391-973 and VA 1-367-838. *See id*, at ¶ 6; *See* Exhibits ("Ex") 1, 2 and 3. Each of its registrations are based on registration applications that contain detailed lists of each of the commercial real estate photographs included in such applications. *See id*, (corresponding registration applications).

CoStar's commercial real estate information and photographs are made available to the commercial real estate community as a series of database products covering, individually and collectively, all of the U.S. markets. *See id*. at ¶ 7. CoStar's customers pay a license fee, typically computed on the basis of the number of commercial real estate professionals associated with the customer, for access to CoStar's products. *See id*. CoStar's license then allows them to, among other things, make limited reproductions of the photographs contained on those databases and make limited use of the compilation of information maintained in the database. *See id*. at ¶ 8.

CoStar's products are offered over an interface that resides on CoStar's website, www.costar.com. *See id*, at ¶ 9. Authorized users of CoStar's products are required to enter a user name and password to access those products, with each user required to either download a certificate restricting use of CoStar to a single computer or to enter a random number generated by a secure access device. *See id*.

The first time each licensed user logs in, and every month thereafter, the licensed user is presented with CoStar's website Terms of Use. *See* Williams Decl. at ¶ 10. CoStar's Terms of Use specifically prohibit the sharing of CoStar user names and passwords:

> No Authorized User may share his Passcodes with any other person, nor may an Authorized User allow any other person to use or have access to his Passcodes.

*See* Williams Decl. at Ex. A ("Services").

CoStar's database servers maintain detailed records of each user's access to CoStar's products. *See* Williams Decl. at ¶ 11. As a part of these records, CoStar logs the Internet address (IP address) of the user, the time and date of the user's access, the database the user accessed, as well as the number of pages the user visits and the identity of the property records retrieved from CoStar's database – designated by CoStar's property identification number. *See id*. When a user "saves" a report of the results of a search conducted on CoStar's website, CoStar's computers also maintain a copy of that report, including the IP address from which the report was requested, the user name making the request, and other similar information. *See id*, at ¶ 12.

When CoStar users call up property records from CoStar's database, their computers create electronic copies of those records on their computers, including electronic files containing the photographs associated with the property records. *See* Declaration of Robert Lardizabal ("Lardizabal Decl.") at ¶ 2. The same is true when they create search results reports – each property photograph is separately copied by the user's computer as a part of the report. *See id*,

## II. UNDISPUTED FACTS CONCERNING GRESSETT'S LIABILITY

Defendant Russell Gressett is a commercial real estate broker and appraiser residing in the Houston, Texas, area. *See* Ex. 4, Deposition of Russell Gressett ("Gressett Dep. Tr.") at 5,

10. He operates using two "d/b/a" names, TGC Realty Counselors and National Valuation Group-Houston. *See id*, at 22-23.

On April 9, 2004, Alliance Valuation Group ("Alliance"), a California appraisal firm (and co-defendant in this case) designated Gressett as an Authorized User under an existing CoStar license, and CoStar assigned a user name and password to Gressett. *See* Williams Decl. ¶¶ 15-16, Exs. B & C. CoStar sent him an email instructing him on how to use his account. That email stated, among other things, that:

> This password is for your personal use only. Use of this password and the CoStar service(s) it allows you to access is subject to the provisions set forth in the written license agreement(s) between your company and CoStar as well as the accompanying online terms of use for the particular CoStar service(s). In particular, "No Authorized User may share their assigned passcodes with any other person, nor allow any other person to have access to their passcodes." Any related violations may result in immediate suspension of this password and possibly termination of your company[']s license with CoStar.

Williams Decl. at Ex. C.

On April 28, 2004, Alliance signed an addendum to its license agreement with CoStar in which it requested that Gressett be given a "key token" that allowed mobile access to CoStar's website. *See* Williams Decl. at ¶ 17, Ex. E. The accompanying form lists Gressett's phone number as a California number, and indicates that he is located in Alliance's Irvine, California office. *See id*, When Alliance signed a new license agreement in November 2004, Gressett was once again identified as an "appraiser" with a California phone number. *See id*,

Gressett was not, of course, an employee of Alliance. Instead, Alliance "sub-licensed" its access to Gressett for a quarterly fee. *See* Gressett Dep. Tr. 42, 57 (describing $1,350 quarterly fee). Indeed, Gressett has produced the invoices Alliance sent Gressett for his access to CoStar. *See* Ex. 5 (collection of invoices).

5

Apparently not content with being an unauthorized end user of CoStar's services, Gressett began sub-sub-licensing CoStar access in Houston. Gressett admitted that he provided the user name, password and temporary access code necessary to access his CoStar account to at least four entities: QVAL Property Advisors ("QVAL"), Steve Bilicek, Gerald A. Teel Co. ("Teel"), and Situs Companies. *See* Gressett Dep. Tr. at 53, 116. Gressett received payments back from these "sub-sub-licensees," $125 per month from QVAL (*see id*, at 40), $100 per month from Bilicek (*see id*, at 39), and $750 quarterly from Teel (*see id*, at 51). Calculating these fees, Gressett received a total of $1,425 per quarter from QVAL, Teel and Bilicek, meaning that he actually *pocketed* a profit of $75 per quarter on his sub-sub-licensing scheme – and received free access to CoStar's *national* sales comparable database – its most valuable and expensive product (with a minimum *monthly* fee of $2,500). *See* Williams Decl. at ¶ 19.

CoStar's computer records corroborate Gressett's sublicensing scheme. CoStar's computer records show, among other things, that computers using QVAL's IP address were accessing CoStar's products using Gressett's user name and password on a frequent basis – 234 times over a 43 month period. *See id*, at ¶¶ 20-23. CoStar's records further show that QVAL "saved" a number of reports under Gressett's user name and password. *See id*, at ¶¶ 24-25.

Among the scores of logins from QVAL's IP addresses, during one login session in January of 2008, the QVAL computer using Gressett's CoStar account saved a report containing a number of individual commercial real estate properties. *See* Williams Decl. at ¶ 25 & Ex. I. Among these properties, the report includes the property information and CoStar photographs associated with three different properties around the United States. *See id*, at ¶ 26 & Ex. J. As such, the report indicates that QVAL's computers made copies of each of those photographs in preparing that report.

6

## OPERATIVE LEGAL STANDARD

The Court recently set forth the operative legal standard for summary judgment in *Nat'l Cas, Co, v, Lockheed Martin Corp,,* Docket No. AW-05-1992, 2009 U.S. Dist. LEXIS 82583, *10-*12 (D. Md. Sept. 9, 2009):

> Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp, v, Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v, New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991) (citing *Anderson v, Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). When parties file cross motions for summary judgment, the Court must view each motion in a light most favorable to the non-movant. *Mellen v, Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec, Indus, Co, v, Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v, CSX Transp,, Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v, City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

On the substantive law of copyright infringement, the standards are also well known. To make out a *prima facie* case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright and (2) defendants violated one of the exclusive rights of the copyright owner. *See, e,g,, Feist Publ'ns, Inc, v, Rural Tel, Serv, Co,,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991).

Contributory infringement must follow a finding of direct or primary infringement. 3 *Nimmer on Copyright* § 12.04[A] at 12-42 to -42.1. The well-settled test for a contributory infringer is "one who, with knowledge of the infringing activity, induces, causes or materially

contributes to the infringing conduct of another." *Gershwin Publishing Corp, v, Columbia Artists Management, Inc,,* 443 F.2d 1159, 1162 (2d Cir. 1971)); *Columbia Pictures Indus,, Inc, v, Redd Horne, Inc,,* 749 F.2d 154, 160 (3d Cir. 1984); *see also Sony Corp, of America v, Universal City Studios, Inc,,* 464 U.S. 417, 437, 104 S. Ct. 774, 786 (1984) (defining a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."); 3 *Nimmer on Copyright* § 12.04 (generally discussing contributory infringement).

Liability for vicarious copyright infringement arises 'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" *Metro-Goldwyn-Mayer Studios, Inc, v, Grokster,Ltd,,* 545 U.S. 913, 931 n.9 (2005)).

## ARGUMENT

**I.  COSTAR IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS OF COPYRIGHT INFRINGEMENT AGAINST GRESSETT**

CoStar is entitled to summary judgment on its copyright infringement claims against Defendant Russell Gressett. As set forth below, Mr. Gressett has largely owned up to and admitted his unlawful conduct, and summary judgment on CoStar's copyright infringement claims is thus warranted by the undisputed evidence.

**A.  COSTAR OWNS VALID COPYRIGHTS**

CoStar has registered its copyrights in numerous photographs. CoStar is submitting, along with this motion, three copyright registrations covering three different photographs on three different commercial buildings. *See* Exs. 1, 2, and 3. These registrations cover the following building photographs:

| Registration | Building Photo |
|---|---|
| VA 1-386-342 | 9238 W IH 10, San Antonio, TX 78229 |
| VA 1-391-973 | 2900 Walker Ave., Houston, TX 77002 |
| VA 1-367-838 | 629-657 Main Street, Passaic, NJ |

Copies of the relevant photographs are attached hereto as Exhibit J to the Williams Declaration.

As indicated in the registrations, the photographs were first published within 90 days of the date the registrations were submitted. *See id*. Accordingly, these registrations constitute *prima facie* evidence that CoStar is the owner of the copyrighted works identified therein and that the copyrights are valid. *See* 17 U.S.C. § 410(c); *Service & Training, Inc, v, Data General Corp,*, 963 F.2d 680, 688 (4th Cir. 1992). No further proof from CoStar is required, and at no time has Gressett ever disputed CoStar's ownership of its copyrights.[2]

### B. COSTAR'S COPYRIGHTS WERE INFRINGED BY PERSONS TO WHOM GRESSETT PROVIDED ILLICIT COSTAR ACCESS

There is no dispute that QVAL Property Advisors, a company to whom Defendant Gressett provide with CoStar access, used Gressett's user name, password and key token access to engage in the reproduction of CoStar's copyrighted photographs.

In his deposition, Gressett admitted that he provided his CoStar access and the code necessary to access CoStar's website to QVAL over the phone. *See* Gressett Dep. Tr. at 39-40, 53. Mr. Gressett admitted that he collected a monthly fee of $125 from QVAL for providing his

---

[2] CoStar notes that its evidence of copyright ownership for the purposes of this motion is exemplary in nature rather than comprehensive. At any trial to establish the measure of Gressett's damages liability, CoStar would come forward with evidence of the additional copyrighted photographs and other works that Gressett has infringed during the course of the infringing activity described herein to sustain its burden to obtain such damages. CoStar does not wish to burden the Court with extensive and ultimately cumulative and duplicative submissions of copyright registrations and photographs when the predicate acts leading to infringement liability are the same.

9

CoStar access. *See id*, at 39-40. Gressett believed that QVAL used his CoStar service "more" than the other parties to whom he gave access. *See id*, at 40.

Not surprisingly, CoStar's internal electronic records corroborate Gressett's admission that he provided access to QVAL and thereby QVAL's infringement of the identified CoStar copyrighted photographs. CoStar's computer records show that QVAL's computers accessed Gressett's user account 234 times from July 2004 through February 2008. *See* Williams Decl. at ¶¶ 20-22. CoStar's computer records show that computers using QVAL's IP addresses accessed the property records associated with the photographs identified in Section I.A. above by creating reports that included such properties. *See* Williams Decl. at ¶¶ 24-25. When property records are retrieved from CoStar's database by an Internet user and incorporated into a report, photographs of the subject property are provided to the user. *See* Lardizabal Decl. at ¶ 2. A copy of the relevant reports created by QVAL's computers is attached hereto as Exhibit I to the Williams Declaration. CoStar's photographs would have been copied by QVAL's computer and rendered as a display on the computer screen. *See id*. Accordingly, by identifying CoStar's database records of the properties viewed and incorporated into a report by QVAL, CoStar has also identified the photographs that QVAL's computer has reproduced.

It is well established that copying of a copyrighted work in the memory of a computer constitutes a "reproduction" for the purposes of the Copyright Act. *See, e,g,, Perfect 10, Inc, v, Amazon,com, Inc,*, 487 F.3d 701, 716 (9th Cir. 2007) (recognizing that a photographic "image stored in the computer is the 'copy' of the work for purposes of copyright law."); *MAI Systems Corp, v, Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993); *Advanced Computer Servs, v, MAI Systems Corp,*, 845 F. Supp. 356, 363 (E.D. Va. 1994); *see generally*, Jane C. Ginsburg, *Putting Cars on the "Information Superhighway": Authors, Exploiters, and Copyright in*

*Cyberspace*, 95 COLUM. L. REV. 1466, 1476 (1995) ("Copies of a work are made . . . when a temporary copy is received into the memory of [a] computer.").

Therefore, because QVAL created reproductions of CoStar's copyrighted photographs when it viewed CoStar property records through QVAL's illicit access to CoStar's database, QVAL infringed CoStar's exclusive right of reproduction in those photographs.[3]

Given that CoStar has shown that QVAL has violated CoStar's exclusive right of reproduction in its copyrighted photographs, CoStar need only show that the violation of that right was unauthorized. As reflected in the declaration of Steven Williams, CoStar did not specifically authorize QVAL to use CoStar's products or reproduce its copyrighted photographs. *See* Williams Decl. at ¶ 12. Gressett further admits that he would have known if QVAL had a CoStar license, and to his knowledge QVAL had no such license. *See* Gressett Dep. Tr. at 111-12.

QVAL was not authorized under any license agreement to use CoStar's products, nor was Gressett authorized to provide access to QVAL. Until March 2008, QVAL never had a license agreement with CoStar. *See* Williams Decl. at ¶ 27. Furthermore, Gressett was specifically prohibited from sharing his access with QVAL. Gressett agreed to CoStar's Terms of Use when he first accessed his account (*see id*, at ¶ 10), which specifically state that:

> **You shall not** . . . distribute, disclose, copy, reproduce, display, publish, transmit, assign, **sublicense**, transfer, **provide access to**, **use or sell**, directly or indirectly (including in electronic form) **any portion of the Product**

---

[3] Gressett admitted that he provided access to parties other than QVAL, including former defendant Gerald A. Teel Co., Steve Bilicek, and Situs Companies. *See* Gressett Dep. Tr. at 53. However, given that the facts concerning Gressett's provision of access to these entities are essentially the same, and for the purposes of simplicity, CoStar presents only the facts related to QVAL for the purposes of this summary judgment motion. At a trial establishing the scope of Gressett's liability, CoStar would submit proof of the access he provided to the other entities as well as the damages resulting therefrom.

Williams Decl. Exh. A ("Prohibited Uses") (emphasis added). Similarly, CoStar's license agreement with Alliance Valuation, under which Gressett obtained access to CoStar's products, states that:

> **Licensee shall not** distribute, disclose, copy, reproduce, display, publish, transmit, assign, **sublicense**, transfer, **provide access to**, **use or sell**, directly or indirectly (including in electronic form), **any portion of the Licensed Product**.

Williams Decl. Exh. E at § 2(b) (emphasis added). Accordingly, there is no genuine issue of fact that QVAL's access to CoStar, and thus its copying of CoStar's copyrighted photographs, was unauthorized.

### C. GRESSETT IS LIABLE FOR CONTRIBUTORY INFRINGEMENT

In addition to demonstrating that a direct infringement occurred, the undisputed facts demonstrate that Gressett engaged in contributory copyright infringement because he materially contributed to that infringement by providing QVAL with the means for the infringement with knowledge that QVAL was engaged in infringing activity. As such, CoStar is entitled to judgment as a matter of law that Gressett is liable for contributory infringement. *See*, *e.g.*, *CoStar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 696 (D. Md. 2001) ("It is, today, a given that one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer") (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'" *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

*First*, there is no dispute that Gressett was aware that QVAL was accessing CoStar's products. Gressett's testimony establishes this conclusively:

> Q: And how did you go about providing your password to QVAL, Mr. Teel, or Bilicek?
>
> A: They would just call me on the phone, and I would give them a – the code.[4]

Gressett Dep. Tr. 53. Gressett further stated that QVAL's use of his CoStar access exceeded the use of at least one other party to which he provide access – indicating that he was not only aware of QVAL's general use, but how much QVAL was using his access in particular. *See id*, at 40.

*Second*, there is no dispute that Gressett materially contributed to QVAL's infringement. As stated above, Gressett provided QVAL with the user name, password, and temporary access code necessary for QVAL to access his CoStar account. *See* Gressett Dep. Tr. 116 (Gressett not aware of any other means of accessing CoStar without access code); Williams Decl. ¶ 9 (CoStar's databases cannot be accessed without user name and password and access code if a user is assigned a key token); Ex. 6 at 4 (Gressett's Response to CoStar's Interrogatories) ("QVAL sporadically forward $125/month to Gressett and was given CoStar pass codes to search for comps."). Gressett's provision of the very means of infringement constitutes a "material contribution" to QVAL's infringement as a matter of law. *See*, *e,g*, *Perfect 10, Inc, v, Amazon,com, Inc,*, 508 F.3d 1146, 1172 (9th Cir. 2007) (providing Internet facilities to access websites and engage in infringing activity would be considered a material contribution); *Fonovisa, Inc, v, Cherry Auction, Inc,*, 76 F.3d 259, 264 (9th Cir. 1996) (material contribution found where "t would be difficult for the infringing activity to take place in the

---

[4] In order to access CoStar's products from multiple computers, a user must obtain a "key token" that generates a number that the user must enter into CoStar's web site in addition to the user's user name and password. The number generated is displayed for a limited period of time – less than a minute. As such, the user sharing access must either provide the person receiving access the key token itself or, if not, be prepared to provide the number on the key token on a real-time basis. *See* Williams Decl. at ¶ 9. This short-term numeric code is what Gressett was referring to in his testimony.

massive quantities alleged without the support services provided by the [defendant]"); *Columbia Pictures Indus., Inc. v. Aveco, Inc.*, 800 F.2d 59, 62 (3rd Cir. 1986) (provision of means of infringement - videocassette, VCR and a room to watch movie - constituted material contribution); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1114 (9th Cir. 2007) ("Similarly, providing passwords that enable users to illegally access websites with copyrighted content may well amount to contributory infringement."); *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995) (holding that provision of Internet services with knowledge of infringing activity could support a contributory infringement claim). *See generally* 3 David Nimmer, NIMMER ON COPYRIGHT, § 12.04[A][3][b], at 12-87 (2007).

Because there is no genuine issue of material fact that Gressett knew of QVAL's infringing activity and provided the essential means of such infringing activity, CoStar is entitled to summary judgment on its contributory infringement claim against Gressett.

### D. GRESSETT IS LIABLE FOR VICARIOUS INFRINGEMENT

The undisputed facts demonstrate that Gressett engaged in vicarious copyright infringement because he had the right and ability to control QVAL's infringing conduct and received a direct financial benefit from that infringing conduct – a monthly check. As such, CoStar is entitled to judgment as a matter of law that Gressett is liable for vicarious infringement. *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931, 125 S. Ct. 2764, 2776 (U.S. 2005) (vicarious infringement "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer") (citing *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir 1963)).

First, it is undisputed that Gressett had the right and ability to control QVAL's infringement. As described above, Gressett directly provided QVAL with the means necessary

14

to infringe CoStar's copyrights and was in a position to deny QVAL access simply by refusing to give out CoStar's then-current access code. That is the very essence of the "ability to control" an infringement.

Second, Gressett acknowledged in his deposition that he received a direct financial benefit from QVAL's use of his CoStar access. Gressett testified that he received $125 per month from QVAL for providing access to his CoStar subscription. *See* Gressett Dep. Tr. at 39-40. That money went directly into Gressett's account. *See id*, at 52. Mr. Gressett even produced copies of the checks he received from QVAL for access to CoStar. *See* Ex. 7. In other words, Gressett was acting as a re-seller of CoStar's products in the Houston area, effectively competing with CoStar by offering CoStar's own service. These facts warrant the conclusion that Gressett received a direct financial benefit from QVAL's infringement as a matter of law. *See, e,g,, Fonovisa*, 76 F.3d at 262 (traditional vicarious infringement occurs when party receives a payment for the infringing activity). Indeed, the payments from QVAL to Gressett for CoStar access are of the archetypical "quid pro quo" variety that establishes a causal relationship between financial benefit and infringing activity. *See Ellison v, Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) ("The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit.").

Accordingly, there is no genuine issue of material fact that Gressett is liable for vicarious copyright infringement.

## II. GRESSETT BREACHED HIS CONTRACT WITH COSTAR BY PROVIDING HIS USER NAME AND PASSWORD TO THIRD PARTIES

There is no genuine issue of material fact that Gressett breach his contract with CoStar by providing CoStar access to third parties. As discussed in Section I.A.1 above, to prove its breach of contract case, CoStar must show: (1) the defendant owed the plaintiff a contractual obligation; and (2) that the defendant breached that obligation. *See Taylor v, NationsBank, N,A.*, 365 Md. 166, 175, 776 A.2d 645 (2001).

When he was provided with his user name and password for the first time, Gressett was specifically warned not to share his CoStar access. *See* Williams Decl. Ex. C. As detailed in the declaration of Steven Williams, when Gressett first logged into his account with CoStar, he was required to accept CoStar's Terms of Use by clicking "I agree" to those terms. *See* Williams Decl. at ¶ 10. Furthermore, Gressett was required to re-confirm his acceptance of the Terms of Use on a monthly basis over the four years in which he had an active account. *See id*, That evidence, of course, was the same evidence put before the Court on Gressett's Motion to Dismiss, and the Court ruled that CoStar's Terms of Use were enforceable against Gressett. *See CoStar Realty Info,, Inc, v, Field*, 612 F. Supp. 2d at 668-69. CoStar's evidence on this point is undisputed and, accordingly, the Terms of Use form a contractual obligation between CoStar and Gressett.

Likewise, there can be no dispute that Gressett breached CoStar's Terms of Use. As detailed in Section 1.A.1 above, CoStar's Terms of Use expressly prohibit the provision of access to CoStar's products to persons that are not authorized users. *See* Williams Decl. Ex. A (prohibited uses). The Terms of Use also state, in stark terms:

> No Authorized User may share his Passcodes with any other person, nor may an Authorized User allow any other person to use or have access to his Passcodes.

16

*Id*, ("Services"). As Gressett freely admits, he provided his passcode and other means of accessing CoStar's products to QVAL, Steve Bilicek, Gerald A. Teel Co., and Situs Companies. *See* Gressett Dep. Tr. at 53. Indeed, in Gressett's response to CoStar's Interrogatories, he further confirmed that he provided his passcodes to Gerald A. Teel and QVAL. *See* Ex. 6 at 3-4.

Accordingly, there is no genuine issue of material fact as to CoStar's breach of contract claim against Gressett and CoStar is entitled to summary judgment on that claim.

## CONCLUSION

For the aforementioned reasons, CoStar requests that the Court grant CoStar's Motion for Summary Judgment.

Dated: November 2, 2009

Respectfully submitted,

_____/s/_____
Shari Ross Lahlou, Bar. No. 16570
William J. Sauers, Bar. No. 17355
Sanya Sarich Kerksiek, Bar. No. 17636
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 624-2500
Facsimile (202) 628-5116
Email   slahlou@crowell.com
            wsauers@crowell.com
            skerksiek@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc,, and CoStar Group, Inc,*

# CERTIFICATE OF SERVICE

I hereby certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the above document, with attachments, was served upon the attorneys of record for the following parties by electronically filing the document with the Clerk of Court using the CM/ECF system, which caused a Notice of Electronic Filing (NEF) to be sent to the following on November 2, 2009:

Mary-Olga Lovett
Pamela Ferguson
Greenberg Traurig
1000 Louisiana Street, Suite 1800
Houston, TX 7700
Telephone: 713.374.3500
Facsimile: 713.374.3505
lovettm@gtlaw.com
fergusonp@gtlaw.com

*Attorneys for Defendant Russ A, Gressett*

R. Wayne Pierce
The Pierce Law Firm, LLC
133 Defense Highway, Suite 106
Annapolis, MD 21401-7015
Telephone: 410.573.9959
Facsimile: 410.573.9956
wpierce@adventurelaw.com

*Attorney for Defendant Pathfinder Mortgage Company*

**I FURTHER CERTIFY** that on November 2, 2009, a true copy of the foregoing was sent by electronic mail to the attorneys listed above and by electronic mail and U.S. mail to:

Mark Field
Alliance Valuation Group
638 Camino De Los Maries, Suite H130A
San Clemente, CA 92673
mark.field@cox.net

and

Lawson Valuation Group, Inc.
8895 N. Military Trail, Suite 304E
Palm Beach Gardens, FL 33410-6263
lawsonmai@aol.com

Dated: November 2, 2009                    Respectfully submitted,

                                           _____/s/_____
                                           William Sauers Bar. No. 17355
                                           Crowell & Moring LLP
                                           1001 Pennsylvania Avenue, N.W.
                                           Washington, D.C. 20004
                                           Telephone (202) 624-2500
                                           Facsimile (202) 628-5116
                                           Email   wsauers@crowell.com

                                           *Attorneys for Plaintiffs CoStar Realty Information, Inc,, a Delaware Corporation, and CoStar Group, Inc,, a Delaware Corporation*