IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION and COSTAR GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MARK FIELD D/B/A ALLIANCE VALUATION GROUP, *et al.* <br><br> Defendants. | Civil Action No. 8:08-CV-663-AW <br><br> **DECLARATION OF STEVEN J. WILLIAMS** |

## DECLARATION OF STEVEN J. WILLIAMS

I, Steven J. Williams, declare as follows:

1. My name is Steven J. Williams. I am employed by CoStar Group, Inc. ("CoStar") as the Assistant Director of the Fraud, Theft & Litigation Team. The statements in this declaration are based upon personal knowledge and I would testify to such statements under oath if called upon as a witness.

2. I have been employed by CoStar for nearly 10 years, having first been hired in January of 2000. During my time at CoStar, I have worked as a researcher and in CoStar's customer support department. As a result, I am extremely familiar with CoStar' products, research practices, internal recordkeeping and business practices. Since September of 2003, I have worked in CoStar's legal department in various capacities related to the investigation of unauthorized use of CoStar's services. As a result of my experience, I have become very familiar with CoStar's policies, practices, and procedures for both licensing its online products,

providing service to its clients, investigating theft of its products, as well as the technological tools it uses to do those things.

3. CoStar is the leading provider of commercial real estate information in the United States and the United Kingdom, with approximately 900 researchers collecting and maintaining data on over 3,000,000 properties and over 1,000,000 active commercial listings.

4. Of CoStar's 900 researchers, approximately 100 are "field researchers" who are located on the ground in local commercial real estate markets canvassing for new commercial real estate availabilities, construction, and the like. These field researchers are employees of CoStar managed remotely by a field research team in our headquarters in Bethesda, Maryland. As a part of their responsibilities, CoStar's field researchers take photographs of the commercial real estate buildings they canvass for inclusion with CoStar's database of commercial real estate information. CoStar's field researchers are trained in photography and have taken millions of professional-quality photographs of commercial real estate and buildings.

5. As a part of my responsibilities in CoStar's legal department, I am responsible for registering the copyrights in the photographs taken by CoStar's researchers. CoStar makes it a part of its regular business practice to register its copyrights in the photographs taken by its researchers on a quarterly basis to ensure that those photographs have been registered within 90 days of their first publication in our database. CoStar registers its photographs collectively on a photographer by photographer basis pursuant to the Copyright Office's regulations allowing for group registrations of photographs. Pursuant to this process, CoStar has submitted applications for the registration of more than 2.5 million photographs.

6. Included in CoStar's registrations are registrations VA 1-386-342, VA 1-391-973 and VA 1-367-838. These registrations are for the photographs taken by Larry Kerner during

1999 (VA 1-367-838), Fred Gonzales during the period February 4, 2005 through August 23, 2005 (VA 1-386-342) and Richard Craig during the period from January 2, 2006 through July 12, 2006 (VA 1-391-973). Exhibits 1, 2 and 3 to CoStar's Motion for Summary Judgment against Defendant Gressett include not only copies of those registrations, but the supporting applications and materials submitted to the Copyright Office.

7. CoStar makes its commercial real estate information and photographs available to those in the commercial real estate industry as a set of databases that are available on CoStar's website, www.costar.com. CoStar sells its products all across the United States in over 100 markets, large and small. CoStar's computers located in Maryland serve customers in all of these markets.

8. In order to gain access to those database products, CoStar's customers enter into a license agreement with CoStar (typically on an office-wide basis) and a pay a license fee, which is usually computed on the basis of the number of commercial real estate professionals in the customer's office. CoStar's license agreement allows its customers to, among other things, access the information in the databases to which they have subscribed and make limited use of the photographs and information contained in those databases.

9. CoStar's database products are offered through an interface that users can access through CoStar's website, www.costar.com. In order to gain access to CoStar's products, users must enter their user names and passwords. For additional security, CoStar provides users with an electronic certificate that acts to limit use of each user's account to the single computer that downloads the certificate. For those users who do not want to be limited to a single computer, CoStar will offer them the ability to log in using a secure access device (known as a "DigiPass" or key token) that requires entry of a number generated by the secure access device at the time

the user logs into CoStar. This number is available only for a short period – less than a minute – before it changes to another number.

10. CoStar's licensees use a user name and password to access CoStar's products, accessing those products from the home page of the CoStar website. The first time a user logs in to their CoStar account, they are presented with the entire text of CoStar's Terms of Use and are required to click a button saying "I Accept" before using CoStar's services. Users are presented with CoStar's Terms of Use each month they use the service, and cannot proceed unless they click the "I Accept" button. I have attached a printout of CoStar's home page with the login area circled and a copy of CoStar's Terms of Use as Exhibit A to this declaration.

11. CoStar's database servers maintain detailed records of each user's access to CoStar's products in the ordinary course of CoStar's business operations. Among a number of other things, CoStar records the Internet address (the Internet Protocol or "IP address") from which the user is accessing CoStar, the time and date of the user's access, the number of pages the user has been served by CoStar's servers, and related data. In addition, CoStar records the identities of the specific property records that the user has retrieved from CoStar's database. In other words, CoStar's database records can determine which properties a user has looked at.

12. In addition, certain of CoStar's products allow customers to "save" reports generated from searches of CoStar's databases for later use. These "saved" reports are stored on CoStar's computer servers for later use through CoStar's web-based service. As with the records of each user's access, CoStar associates (and thus records) the IP address of the computer "saving" the report. As such, CoStar is able to determine whether there are any "saved" reports associated with access to CoStar's products through a particular IP address.

13. As a part of CoStar's normal business practices and in the ordinary course of its operations, it maintains records of contemporaneous communications it has had with its customer and prospective customers. Those records are maintained in a proprietary internal contact management system created by CoStar. Unfortunately, the records in this system are only easily viewable on CoStar's system, but I am able to make copies of those records and paste them into more easily readable and exchangeable documents such at text files, Microsoft Excel files, and Microsoft Word files.

14. CoStar entered into a license agreement with Alliance Valuation Group ("Alliance"), a California commercial real estate appraisal company, in June 2002. At the time CoStar entered into that license agreement, defendant Russell Gressett was not identified as a user on the Alliance account.

15. One of CoStar's business records is a recorded communication between a CoStar account representative and Mark Gautreau of Alliance on April 9, 2004, in which Mr. Gautreau "asked to add [a] user" to Alliance's account. The same day, another CoStar business record recording an e-mail from a CoStar account representative to a customer support department representative shows a request that a user name and password be created for Russ Gressett at "location id 358796," Alliance Valuation Group's headquarters in San Clemente, California. True and accurate copies of these business records are attached to my declaration as Exhibit B.

16. Upon receiving the request from the sales representative, CoStar's customer support representative created a user name and password for Gressett and sent an e-mail with that user name and password for use in gaining access to CoStar's products. A true and correct copy of that business record is attached to my declaration as Exhibit C. As this is one of the

documents that it only easily viewable on CoStar's system, the text of the recorded e-mail has been copied and exported to a Microsoft Word document and attached to the original record.

17. On April 28, 2004, Alliance signed an addendum to its license agreement with CoStar in which it request that Gressett be given a Digipass or "key token." A true and correct copy of the addendum is attached to my declaration as Exhibit D.

18. On November 15, 2004, Alliance signed a superseding license agreement with CoStar. A true and correct copy of that license agreement, as well as the user list submitted by Alliance to designate its authorized users, is attached to my declaration as Exhibit E.

19. CoStar's license agreement with Alliance provided Alliance's users with access to national CoStar COMPS data – the most extensive sales comparable database CoStar sells. The minimum monthly fee for CoStar COMPS is $2,500 per month for a single user organization.

20. As stated above, CoStar keeps internal records of each log-in session made to its products. These records are kept in CoStar's ordinary course of business and reflect the data gathered from CoStar's website as well as the information available from a user's computer and the Internet related to a particular log-on session.

21. CoStar's internal records show that, a person associated with QVAL Property Advisors ("QVAL"), Michelle Loftis, had temporary access to a CoStar product during two days in September 2004. Those records show that Ms. Loftis access CoStar from the IP address 69.150.143.34. A true and correct copy of the record of one of those login sessions is attached to my declaration as Exhibit F.

22. Computers using the same IP address, 69.150.143.34, began logging in to Gressett's CoStar account beginning in July 2004 and continuing through February 2008. Indeed, computers using that IP address logged into Gressett's account a total of 234 times

during that period. I am attaching a true and correct copy of an Excel spreadsheet prepared from CoStar's records showing the log-ins under the Gressett user name from the 69.150.143.34 IP address as Exhibit G to this declaration.

23. I note that QVAL eventually signed up for access to CoStar's products. Once QVAL began using CoStar's products under its own license, its access occurred from the same IP address – 69.150.143.34. I am attaching a true and correct copy of an Excel spreadsheet prepared from CoStar's records showing the log-ins to QVAL's user accounts during the period March 2008-April 2008 as Exhibit H to this declaration. QVAL apparently switched its IP address at the end of April, 2008.

24. As stated above, CoStar's computers maintain copies of the search reports saved by CoStar users on the CoStar website. These reports are available to me in my capacity as an investigator of unlicensed use of CoStar's database products. I am able to search CoStar's system for all reports saved by a user during a session associated with a particular IP address.

25. Attached hereto as Exhibit I are excerpts of reports saved by a person using the account assigned to Gressett from the QVAL IP address 69.150.143.34 in January 2008. Including in these reports are photographs and property information associated with (1) 9238 W IH 10, San Antonio, TX 78229; (2) 2900 Walker Ave., Houston, TX 77002; and (3) 629-657 Main Street, Passaic NJ.

26. Attached collectively as Exhibit J to this declaration are true and accurate copies of the CoStar photographs for the following properties: (1) 9238 W IH 10, San Antonio, TX 78229; (2) 2900 Walker Ave., Houston, TX 77002; and (3) 629-657 Main Street, Passaic NJ.

27. CoStar never authorized QVAL to use CoStar's products or reproduce its copyrighted photographs during the period July 2004 through February 2008, other than as a part of the temporary access provided to Ms. Loftis in September 2004.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of November at Bethesda, Maryland.

_____
Steven J. Williams