IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

CoSTAR REALTY INFORMATION, INC.,
*et al.*,
         Plaintiffs,

v.                                                                          CIVIL ACTION NO. <u>AW -08-663</u>

Mark Field d/b/a Alliance
Valuation Group, *et al.*,
         Defendants.

DEFENDANT RUSS A. GRESSETT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT, AND RESPONSE TO
PLAINTIFFS' MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT

      Defendant Russ A. Gressett ("Gressett"), by and through undersigned counsel, files

this Memorandum in Opposition to Plaintiffs CoStar Realty Information, Inc.'s and CoStar

Group, Inc.'s (collectively referred to herein as "CoStar") Motion for Summary Judgment and

in Support of its Cross-Motion for Summary Judgment, pursuant to Local Rule 105(2)(c), as

well as, Response to CoStar's Motion for Leave to file Second Amended Complaint.   In

support thereof, respectfully states the following:

      I.     <u>OPPOSITION TO COSTAR'S MOTION FOR SUMMARY JUDGMENT</u>

      1.     CoStar seeks summary judgment on the following claims against Gressett:  (1)

Copyright infringement; (2) Contributory infringement; (3) Vicarious infringement; and (4)

Dockets.Justia.com

Breach of contract.[1]  Because a material issue of fact exists as to one or more elements of each claim and because there is a material issue of fact as Gressett's affirmative defenses of ratification and waiver/estoppel, CoStar's Motion for Summary Judgment should be denied.

A.    Standard of Review.

2.    Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Therefore, if Gressett, as the non-moving party, establishes a genuine issue of material fact as to either CoStar's claims or Gressett's affirmative defenses, summary judgment must be denied.  *Continental Airlines, Inc. fv. Intra Brokers, Inc.*, 24 F.3d 1099, 1103 (9th Cir. 1994).  In determining whether there is am material issue of fact, the Court must construe the facts and inferences from those facts in a light most favorable to Gressett as the nonmoving party.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), cert. denied, 513 U.S. 813 (1994).  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *Anderson*, 477 U.S. at 255.  Therefore, the Court must consider the record in its entirety, but it "must disregard all evidence favorable to

---

[1]    Gressett notes that CoStar's claims for contributory and vicarious infringement are the subject of CoStar's Motion for Leave to file Second Amended Complaint.  Gressett objects to the granting of such leave by the Court, but, out of an abundance of caution, files the foregoing substantive response, establishing that the Motion should be denied as it pertains to these two newly asserted claims should leave be granted.

the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).   Thus, the Court must consider evidence favoring the nonmovant and only the evidence supporting the moving party that is uncontradicted and unimpeached, if, that is, such evidence comes from disinterested witnesses.   *Id.* (internal quotation marks omitted).

B.    Facts to be Considered.

3.    Considering the evidence in the light most favorable to Gressett as the non-movant and taking all reasonable inferences therefrom, the facts are as follows:

4.    CoStar maintains a website which provides certain information regarding commercial real estate properties, including "comps," and charges a fee for access to such information.   To obtain access, a company must enter into a licensing agreement with CoStar. Defendant Alliance Valuation Group ("Alliance") obtained just such a licensing agreement from CoStar.     Alliance and Gressett, along with Defendant Lawson Valuation Group, Inc. as well as National Valuation Group-Austin, were associated for marketing purposes as National Valuation Group.   *See Deposition of Russ Allan Gressett*, at pgs. 15:23-16:13; 16:17-17:11; and 18:2-19; attached hereto as Exhibit A.   Gressett first obtained access to CoStar's website in April or May 2004 through a sub-license granted by Alliance.   *Id.*, at pgs. 41:22-42:4; attached hereto as Exhibit A.   Prior to being offered the sub-license by Alliance, Gressett had no experience with CoStar's web site service.   *Id.*, 46:16-21.

5.    CoStar approved Alliance's sub-license to Gressett despite his not being an employee or independent contractor of Alliance or, in other words, that CoStar had waived any such restriction.   *Id.*, at pgs. 42:8-13; 43:2-5; 47:22-25; 58:24-59:6.   Therefore, based on

CoStar's representations to Alliance, CoStar had agreed to allow Gressett, a non-employee of Alliance, unfettered use of its website passwords. *Id.*, at pgs. 42:8-13; 43:2-5; 47:22-25; 58:24-59:6. Under his sub-license with Alliance, Gressett had no restriction whatsoever on sharing his Co-Star website password. *Id.*, 51:3-6. Therefore, Alliance, by extension, granted Gressett a sub-license without any restriction on sub-licensing access to non-employees. Based on CoStar's approval of his sub-license, Gressett was never aware of any restrictions on his use or sharing of the CoStar password nor agreed to any such restriction. *Id.*, pgs. 81:20-82::18; 86:13-14; 90:6-91:5. This includes the Terms of Use document within the CoStar website, which he did not read because it would necessarily not apply to his sub-license through Alliance which was based on express approval or waiver of the restriction on sharing the password outside Alliance or on sub-licensing. *Id.*, pg. 85:15-17; 97:6-11.

C.    Copyright Infringement.

To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001); *see also, Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000) (*citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)). In this context, CoStar must prove as a matter of law that any copying of the copyrighted item was unauthorized or beyond the scope of any license. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989). More importantly, the unauthorized copying must have been done by Gressett, not a third party, such as QVAL. *CoStar Group, Inc. v. Loopnet, Inc.*, 164 F.Supp.2d 695-96 (D. Md. 2001).

CoStar's Motion improperly attempts to impute direct copyright infringement liability against Gressett for the actions of another party -- QVAL.  But QVAL and Gressett are separate legal entities.  Their only connection was the sharing of the CoStar passwords.  *See* Gressett's Answers to CoStar's Interrogatories, attached hereto as Exhibit B, at Interrogatory No. 3.  Therefore, QVAL's actions cannot be used to impute direct infringement liability against Gressett.  Not surprisingly, CoStar fails to cite any precedent that would allow the court to find that Gressett is liable for direct infringement based on the actions of QVAL. There is none.

CoStar is forced to take this position, because the evidence shows that Alliance, with CoStar's permission, granted Gressett a sub-license that would allow him to copy, for limited purposes, CoStar's copyrighted material. See Gressett Deposition, Exhibit A, at gps. 42:8-13, 43:2-5, 47:22-25; and 58:24-59:6.  Because CoStar's Motion fails to establish any direct infringement by Gressett, it must be denied as to CoStar's direct copyright infringement claims against Gressett.

D.      Contributory Infringement.

There is also a material issue of fact with regard to CoStar's claims of contributory infringement.  Unlike direct infringement, contributory infringement requiresthe person to be charged to have knowledge of the infringing conduct.  Gressett had no such knowledge with regard to QVAL.  Moreover, Gressett's providing of nothing more than access to CoStar's website, with nothing more, creates a material issue of fact with regard to whether he

materially contributed to QVAL's alleged infringement in order to be a contributory infringer. Therefore, summary judgment on these claims is precluded.

The two elements for contributory infringement are as follows: (1) supply of a product, and (2) knowledge of direct infringement. *National Fed'n of the Blind v. Loompanics Enters.*, 936 F. Supp. 1232, 1244 (D. Md. 1996)(citing *AT & T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1432 (3d Cir. 1994), cert. denied, 115 S. Ct. 1838 (1995)(internal quotation marks and citation omitted). It requires a party "who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Two types of activities that lead to contributory liability are: (i) personal conduct that encourages or assists the infringement; and (ii) provision of machinery or goods that facilitate the infringement. *ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs*, 785 F.Supp. 854, 861 n. 13 (E.D. Cal. 1992). With either activity; however, the Supreme Court has noted that contribution to infringement must be intentional for liability to arise. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). *Grokster* establishes that contributory liability be analyzed in light of "rules of fault-based liability derived from the common law," *Id.*, at 934-35, and common law principles establish that intent may be imputed. "Tort law ordinarily imputes to an actor the intention to cause the natural and probable consequences of his conduct." *DeVoto v. Pac. Fid. Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980); Restatement (Second) of Torts § 8A cmt. b (1965) ("If the actor knows that the consequences are certain, or substantially certain, to

result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."). Therefore, under *Grokster*, an actor may only be contributorily liable for *intentionally encouraging direct infringement* if the actor knowingly takes steps that are substantially certain to result in such direct infringement. Therefore, as the court in *Perfect 10* made clear, for contributory infringement to apply, the defendant must have "actual knowledge" that the "specific infringing material" is available. *Perfect 10, Inc. v. Amazon.Com, Inc*, 487 F.3d 788, 797-98 (9th Cir. 2007)(in discussing material contribution element of contributory infringement and stating knowledge of infringing activity required). Furthermore, something more than merely providing access is required. *Id.*, at 800. For example, in *Perfect 10*, the defendant was not held to be liable for contributory infringement when its payment system merely provided a means of profiting from the infringing material. *Id.*

In this case, while aware that QVAL was accessing CoStar's products, Gressett was not aware of anything other than the frequency of access. *See* Gressett Deposition, at pg. 40:18-22, attached to CoStar's Motion as Exhibit 4. Gressett was not present when it occurred nor aware that copyrighted material had been copied by QVAL. More importantly, he had no knowledge that such activity could involve infringement as he believed that QVAL's use of the CoStar website, as with his own, had been expressly authorized by CoStar based on the representations to Alliance as to the scope of his sub-license. *See* Gressett Deposition, Exhibit A, at pgs. 51:3-6. Because a material issue of fact exists as to whether Gressett had knowledge of the infringing activity and was not actively involved in QVAL's

alleged infringement, summary judgment on CoStar's contributory and vicarious liability claims is improper.

E.     Vicarious infringement.

CoStar's Motion for Summary Judgment related to its vicarious infringement claim must also fail, because a material issue of fact exists as to whether Gressett supervised QVAL's infringing activity merely by having provided it the CoStar passwords.

Once again CoStar's Motion for Summary Judgment relies on the alleged direct copyright infringement by QVAL, a sub-licensee of Gressett.  CoStar's argument that Gressett supervised QVAL's infringing conduct by providing the CoStar passwords is errant. By providing nothing more than the means by which infringement could occur, Gressett can hardly be said to have supervised any alleged direct infringement by QVAL.

D.     Breach of Contract.

CoStar seeks summary judgment on its breach of contract claim.  However, summary judgment must be denied, because a material issue of fact exists as to a meeting of the minds or unilateral mistake with regard to the contract made the basis of CoStar's claims, its 'Terms of Use' document attached to its website.

According to Maryland law, the existence of a binding contract requires "an offer by one party and an unconditional acceptance of that precise offer by the other." *Lemlich v. Bd. of Trs.*, 385 A.2d 1185, 1189 (Md. 1978).  The basis of CoStar's claim is that Gressett entered into a contract with CoStar when he accepted CoStar's 'Terms of Use' notice when accessing CoStar's website.  One of those 'Terms of Use" restricted Gressett from sharing or otherwise disseminating his CoStar userid and password to others.  However, because Gressett believed

he had been granted a sub-license without such restriction which, in turn, was based on a license where CoStar had expressly waived any such restriction in  the terms in the 'Terms of Use" document as argued by CoStar, he did not read and, therefore, never agreed to any new term that would restrict such access.  *See* Gressett Deposition, Exhibit A, at pgs. 85:15-17; 97:6-11.  Therefore, a material issue of fact exists as to whether there was a meeting of the minds on this term which would make sharing of the CoStar passwords a material breach.

### F.    Affirmative Defense:  Ratification

Summary judgment regarding CoStar's breach of contract claim must also be denied, because the evidence, considered in the light most favorable to Gressett, establishes the affirmative defense of ratification.

The doctrine of ratification states that even if an agent, or in this case licensee, acts outside the scope of the actual or apparent authority, a principal is bound by the unauthorized acts of the agent if the transaction is not promptly rejected or is ratified in whole or in part.    *Proctor v. Metropolitan Money Store Corp.* 579 F.Supp.2d 724, 740-41 (D.Md. 2008).  Ratification requires an intention to ratify, and knowledge of all material facts.  *Id.* Intention to ratify may be inferred by words, conduct or silence on the part of the principal that reasonably indicates its desire to affirm the unauthorized act. *Id.*  The existence of ratification is essentially a question of fact.  *Id.*

The evidence shows that CoStar granted authority for Alliance to sub-license access to CoStar's website without the typical restriction on sharing the passwords with non-employees or agents.  See Gressett Deposition, Exhibit A, at pgs. 42:8-13.  During the four years Gressett used the CoStar website, CoStar never objected to Gressett's use even when

Gressett called CoStar for customer service with no further inquiry. *Id.* In this way, CoStar's silence as to Gressett's unrestricted use, ratified the terms of the sub-license between Alliance and Gressett, which, in turn, authorized his use and sharing of his CoStar access codes.

G.      Affirmative Defense: Waiver/Estoppel.

In regard to CoStar's infringement and breach of contract claims, summary judgment must be denied based on Gressett's affirmative defenses of waiver and estoppel.

(i)      *Waiver and Estoppel of Infringement claims;*

Equitable estoppel "is properly invoked where the enforcement of rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Veltri v. Building Serv. 32 B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (quoting *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001)); see 4 Nimmer on Copyright § 13.07 (noting that equitable estoppel applies in copyright infringement actions, and may deprive a plaintiff of an otherwise meritorious copyright infringement claim). Copyright estoppel applies when the alleged infringer can show that (1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). A copyright owner can be estopped not only by words and actions but also by silence and inaction. *Carson*, 344 F.3d at 453; *Hampton*, 279 F.2d at 104.

In this case, the evidence shows that CoStar was aware of Gressett's use of the CoStar website and of QVAL's use and copying. *See* Exh. 5 to CoStar's Memorandum in Support of

Motion for Summary Judgment [Doc. No. 85-2], at pg. 6.   Gressett was unaware that any downloading would be infringement, since he believed his sub-license, and, therefore, QVAL's was unrestricted.  *See* Gressett Deposition, Exhibit A, at pgs. 81:20-82:18, 86:13-14; and 90:6-91:5.  Therefore, he freely sub-licensed to QVAL.  *Id.*, and Gressett Transc., Exh. 4 to CoStar's Motion, at pgs. 40 and 51.

Because there is a material issue of fact with regard to Gressett's affirmative defense of waiver, summary judgment as to CoStar's infringement claims must be denied.

*(ii)      Waiver of breach of contract claims;*

In similar fashion, the evidence creates a material issue of fact with regard to Gressett's affirmative defense of waiver related to CoStar's breach of contract claim.  Because CoStar waived its right to enforce the limitation on shared use provision of its Terms of Use document by expressly allowing Alliance and, thereby, Gressett to sub-license use of the CoStar Website, summary judgment must be denied.

A party to a contract may waive a right under the contract.  *Commonwealth Equity Services, Inc. v. Messick*, 831 A.2d 1144, 1151-52 (Md. App. 2003).  Waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such a right."  *The Redemptorists v. Coulthard Services, Inc.*, 80 A.2d 1104,  (Md. App. 2002).  The acts relied upon as constituting waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing such provisions. *Charles J. Frank, Inc. v. Assoc. Jewish Charities of Baltimore, Inc*, 450 A.2d 1304, 1307 (Md. App. 1982) (quoting *BarGale Indus., Inc. v. Robert Realty Co.*, 343 A.2d 529 (Md. App. 1975)).  Determining whether

a party's actions constitute waiver involves analysis of the parties' intent that usually turns on the factual circumstances of each case. *Id.*

Assuming facts in favor of Gressett as the non-movant, CoStar agreed to allow Alliance to sub-license to Gressett, who was not an employee or independent contractor of Alliance. *See* Gressett Deposition, Exhibit A, at pgs. 42:8-13; 43:2-5: 47:22-25; and 58:24-59:6., and Gressett Interrogatory Responses, Exhibit B, at Interrogatory No. 3. Thus, Gressett's ability to sub-license to others was also waived CoStar's authorization for Alliance sub-license to him. CoStar unequivocally waived any right to enforce the restriction on sub-licenses contained in the "Terms of Use" document on its website. Accordingly, a material issue of fact exists with regard to waiver which precludes summary judgment on CoStar's breach of contract claims.

### H.     Conclusion

For these reasons, a fact issue exists as to one or more elements for each of the claims made the basis of CoStar's Motion for Summary Judgment and the Motion must be denied. Moreover, a fact issue exists as to Gressett's affirmative defenses such that the Motion, as it pertains to CoStar's breach of contract and infringement claims, must be denied.

### III.    CROSS-MOTION FOR SUMMARY JUDGMENT

### A.     CoStar's Copyright Infringement Claim.

As previously discussed, CoStar may only prevail on a claim of direct copyright infringement against Gressett, if it can establish that it owned a registered copyright and that Gressett copied the original elements of that copyright. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). While CoStar appears to own copyrights in various

photographs contained on it website, its Motion for Summary Judgment makes abundantly clear that there is no evidence that Gressett ever copied the copyrighted materials so as to establish direct infringement.   Therefore, Gressett is entitled to summary judgment on CoStar's direct copyright infringement claims, pursuant to FED. R. CIV. P. 56(b).

      B.     CoStar's Contributory and Vicarious Infringement Claims.

      To prevail on a claim of contributory infringement, CoStar is required to show that Gressett induced, caused, or materially contributed to infringing conduct by another.   CoStar must also produce evidence that Gressett was aware of the infringing conduct.   As previously shown, there is no evidence Gressett was specifically aware of QVAL's allegedly infringing conduct.   To the contrary, the evidence establishes that Gressett had no idea QVAL's regular use of the CoStar website could involve infringement.

      Moreover, to prevail on a claim of vicarious infringement, CoStar must show that Gressett had "a right and ability to supervise the direct infringer."   In this case, there is no evidence that Gressett had the right to supervise any alleged direct infringer.   While Gressett allowed QVAL to use his CoStar password as provided by Alliance, he had no other business relationship with these parties nor any control over how they used the website.

      For these reasons, summary judgment as to CoStar's contributory and vicarious infringement claims, to the extent the Court allows such untimely claims to be asserted in this case, should be granted.

      C.     CoStar's Fraud Claim.

      To prevail on a claim for fraud, a plaintiff must show:  (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or

that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Gourdine v. Crews*, 405 Md. 722, 758 (Md. 2008). A "false representation" is a statement, conduct, or action that intentionally misrepresents a material fact. *Snyder v. Herbert Greenbaum & Associates*, 380 A.2d 618 (Md. 1977). A "material" fact is one on which a reasonable person would rely in making a decision. *Id.* A defendant may be liable for fraud or deceit "only if he knows that his representation is false, or is recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995). Moreover, in order to recover for fraud, the misrepresentation must be made with the deliberate intent to deceive. *Wrexham Aviation*, 350 Md. at 704, 715 A.2d 188; *Ellerin*, 337 Md. at 230, 652 A.2d 1117.

The basis of CoStar's fraud claim is the allegation that Gressett identified himself as an employee or independent contractor working exclusively for Alliance in order to gain unauthorized access to CoStar's website. *See* CoStar's Amended Complaint [Doc. No. 6], at paras. 40-43. However, there is no evidence of this allegation. In fact, the evidence produced by CoStar in its Motion for Summary Judgment contradicts this claim. It was Alliance, not Gressett, who obtained the access codes for Gressett and it was Alliance, not Gressett, who represented Gressett's relationship to Alliance to obtain the access codes. *See* CoStar's Motion for Summary Judgment [Doc. No. 85], at pg. 5, and Williams Decl., attached thereto, as Exhibits B & C, at paras. 15-16. Furthermore, it was Alliance, and not Gressett,

who contacted CoStar and obtained a "key token" for Gressett to use for remote access. *See* Williams Decl., at para. 17.   Therefore, there is no evidence that Gressett made any fraudulent statement to gain access to CoStar's website as alleged.

Furthermore, there is no similarly no evidence of intent to deceive.   Gressett has testified that he had been expressly told that Alliance obtained the access codes and that it had accurately portrayed its relationship with Gressett.   Moreover, Gressett was told that CoStar had approved Gressett's sublicense without restriction.   Therefore, there is similarly no evidence of intent to deceive which would support a finding of liability against Gressett for fraud.   Therefore, summary judgment in favor of Gressett for CoStar's fraud claim is warranted.

> E.   CoStar's Fraud Related to Computers, 18 U.S.C. § 1030, Claim.

CoStar has also brought a claim for fraud related to computers under 18 U.S.C. §1030 (the "CFAA").   CoStar's CFAA claim is allegedly based entirely on Gressett's access of CoStar's website.   However, this alone is insufficient to support a claim under the CFAA. Plaintiff's First Amended Petition alleges that it has suffered "damage" and the amount of its loss in the aggregate exceeds $5,000 during a one-year period.   *Plaintiff's Amended Petition*, (DOC. 19, at pg. 17, para. 70).

Under the CFAA, a civil action may be maintained by "any person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g).   However, the violation of the statute must involve "[one] of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." *Id.*   The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S .C.

1030(e)(8).  The CFAA then defines loss as "any reasonable cost to any victim, including the

cost of responding to an offense, conducting a damage assessment, and restoring the data,

program, system, or information to its condition prior to the offense, and any revenue lost,

cost incurred, or other consequential damages incurred because of interruption of service."

18 U.S.C. § 1030(e) (11).   The plain reading of the definition of loss requires a plaintiff to

show an "interruption of service" in order to make a claim, as CoStar is here, for a loss from

"revenue lost, cost incurred, or other consequential damages incurred." *Nexan Wires, S.A. v.*

*Sark-USA, Inc.*, 166 Fed. Appx. 559, 562 (2nd Cir. 2006) (plain language of the statute treats

lost revenue as a different concept from incurred costs, and permits recovery of the former

only where connected to an "interruption in service.")(citing, *Nexans Wires S.A. v. Sark-USA,*

*Inc.*, 319 F.Supp.2d 468, 477 (S.D.N.Y. 2004); *Civic Ctr. Motors, Ltd. v. Mason Street Import Cars,*

*Ltd.*, 387 F.Supp.2d 378, 382 (S.D.N.Y. 2005) (citing the district court in *Nexans*, and ruling

that loss of "competitive edge" claim not caused by computer impairment or computer

damage was not cognizable under the CFAA); see generally *Register.com, Inc. v. Verio, Inc.*, 126

F.Supp.2d 238, 252 n. 12 (S.D.N.Y. 2000) ("Although lost good will or business could

provide the loss figure required ..., it could only do so if it resulted from the impairment or

unavailability of data or systems.") (construing earlier version of current statute)); *Cohen v.*

*Gulfstream Training Academy, Inc.*, 2008 WL 961472, *4 (S.D. Fla. 2008) (finding that any loss

must be related to an interruption of service).[2]  While the statute is less than clear, it is clear

that the losses referred to in the last phrase relate to an interruption of service.  Therefore, an

"interruption of service" is necessary if the victim is claiming a loss from revenue lost, costs incurred, or other consequential damages.

This Court in its Memorandum Opinion of March 31, 2009 [Doc. No. 51], noted that there existed a split of authority in regard to whether an interruption of service must be proven by a plaintiff in asserting a claim under the CFAA. To date, the Fourth Circuit has yet to address the issue directly in the context of summary judgment. However, even based on the authority cited by this Court in its Opinion, the Court should follow those circuit and district courts which require "interruption of service" to maintain a claim under the CFAA when the loss or damage claimed involves only lost revenue. First, the *Frees, Inc.* case is factually distinguishable from CoStar's claims, because it involved a plaintiff alleging interruption of or damage to the computer services at issue and claims of loss directly attributed to investigation and remedy of that loss or damage. *See Frees, Inc. v. McMillian*, No. 05-1979, 2007 WL 2264457, at *4-5 (W.D. La. Aug. 6, 2007). Furthermore, the *Frees, Inc.* holding has been rejected by at least one district court. *See Continental Group, Inc. v. K.W. Property Mgt., LLC*, 622 F.Supp.2d. 1357, 1370-71 (S.D. Fla. 2009)(rejecting the conclusion of the *Frees, Inc.* court and requiring an interruption in service when the only allegation was loss due to improper "downloading of documents.").

In this case, there is no evidence of "interruption of service" for CoStar's website. To the contrary, as has been judicially admitted by CoStar, it seeks nothing more than lost revenue based on Gressett not paying it directly for a license to use its product. This, without more, is insufficient to sustain a claim for computer fraud. Because the alleged computer fraud against Gressett did not cause any interruption in service for CoStar's website, or any

damage to the website or computers of CoStar whatsoever, CoStar has failed to produce evidence that would support liability under the CFAA against Gressett. Accordingly, summary judgment as to CoStar's CFAA claim against Gressett should be granted.

IV.   RESPONSE TO COSTAR'S MOTION FOR LEAVE TO
FILE SECOND AMENDED COMPLAINT

On the same day it filed the its Motion for Summary Judgment, CoStar filed a Motion for Leave to file Second Amended Complaint [Doc. No. 84], in order to add additional claims of contributory and vicarious infringement (the "Claims") against Gressett. For the reasons stated herein, Gressett objects to the granting of any such leave.

First, CoStar's amendment is untimely. As it points out in the Motion for Leave, CoStar had the knowledge and opportunity to add the Claims prior to the Court's deadline to amend pleadings. CoStar instead argues that it did not have such information until Gressett's deposition was taken and answers to interrogatories were provided. However, Gressett's deposition was taken on July 28, 2009, and he provided answers to CoStar's interrogatories on July 21, 2009. *See* Gressett Answers to Interrogatories [Doc. No. 84-3], and Gressett Deposition Transcript, Exhibit A. CoStar waited until November 2, 2009, on the day it filed its Motion for Summary Judgment to assert these the Claims. CoStar should not be allowed to add the Claims at this late juncture in the case. Granting leave at this time would amount to trial by ambush.

Second, any such amendment will greatly prejudice Gressett. The discovery deadline in this matter passed on August 31, 2009. *See* Docket Control Order [Doc. No 55]. Despite CoStar's argument to the contrary, the Claims have not been tried by consent. Gressett has

never been on notice of such claims through CoStar's pleadings, and is now unable to conduct discovery to further investigate their validity or develop a proper defense.

For these reasons, CoStar's request for leave to file the Second Amended Complaint should be denied.

## V.     Conclusion

For these reasons, a material issue of fact exists as to each of CoStar's claims made the basis of their Motion for Summary Judgment or, in the alternative, a material issue of fact exists that would excuse liability based on Gressett's affirmative defenses.   Accordingly, CoStar's Motion for Summary Judgment must be denied, and the case be allowed to proceed to a trial on the merits.

Furthermore, because there is no evidence to support one or more elements of CoStar's claims against Gressett for: (1) copyright infringement; (2) contributory and vicarious infringement; (3) common law fraud; and (4) fraud related to computers pursuant to 18 U.S.C. 1030, summary judgment is proper as to each.   Gressett respectfully requests entry of summary judgment against the foregoing CoStar claims.

Finally, CoStar's request for leave to file a Second Amended Complaint adding claims for contributory and vicarious infringement should be denied as untimely and unfairly prejudicial to Gressett.   Pleading further, Gressett requests all other and further relief to which it may be justly entitled.

Respectfully Submitted,

GREENBERG TRAURIG, L.L.P.

By: /s/Mary-Olga Lovett
    Mary-Olga Lovett (*pro hac vice*)
    Pamela A. Ferguson (*pro hac vice*)
    Christopher C. Miller
    1000 Louisiana, Suite 1700
    Houston, Texas  77002
    Telephone:    713-374-3500
    Facsimile:    713-374-3505
    lovettm@gtlaw.com
    fergusonp@gtlaw.com

    Steven M. Schneebaum
    Maryland Bar No. 04160
    2101 L Street, N.W., Suite 1000
    Washington, D.C. 20037
    Telephone:  202-530-8544
    Facsimile:    202-261-2665
    schneebaums@gtlaw.com

    ATTORNEYS FOR DEFENDANT
    RUSS A. GRESSETT

CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2009, a true and correct copy of the foregoing instrument was served upon all parties by and through their counsel of record, via the Court's CM/ECF system, pursuant to FED. R. CIV. P. 5.

I further certify that on November 23, 2009, a true copy of the foregoing was sent by U.S. mail to the following unrepresented parties:

Mark Field
Alliance Valuation Group
638 Camino De Los Maries, Suite H130A San
Clemente, CA 92673

and

Lawson Valuation Group, Inc.
8895 N. Military Trail, Suite 304E Palm
Beach Gardens, FL 33410-6263

/s/Christopher C. Miller
Christopher C. Miller