**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

COSTAR REALTY INFORMATION and
COSTAR GROUP, INC.,

      Plaintiffs,

v.                                                  Civil Action No. 8:08-CV-663-AW

MARK FIELD D/B/A ALLIANCE
VALUATION GROUP, *et al*.

      Defendants.

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION FOR**
**SUMMARY JUDGMENT AGAINST DEFENDANT RUSSELL GRESSETT AND REPLY IN**
**SUPPORT OF THEIR MOTION TO AMEND COMPLAINT AND OPPOSITION TO**
**GRESSETT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc. (collectively, "CoStar")

hereby submit their Consolidated Reply in Support of Their Motion for Summary Judgment Against

Defendant Russell Gressett (D.E. 85), Reply in Support of Their Motion to Amend Complaint (D.E. 84),

and Opposition to Gressett's Cross-Motion for Summary Judgment (D.E. 89, 90).

**INTRODUCTION AND SUMMARY**

Defendant Russell Gressett's ("Gressett") opposition to CoStar's Motion for Summary Judgment

and his Cross-Motion for Summary Judgment boil down to a single factual allegation he makes that not

only is contracted by the documentary evidence presented by CoStar, but is inadmissible **double**

hearsay. Faced with his own admissions that, in fact, he purchased a CoStar user name and passcode

through Alliance Valuation Group ("Alliance'), and then **re-sold** access to CoStar to a number of third

parties – facts that unmistakably attach liability for copyright infringement and breach of contract – Gressett contends that someone at Alliance **told him** that someone at CoStar **told the person at Alliance** that CoStar had "cleared" Alliance's ability to act as a competitor to CoStar, reselling CoStar's products all across the country.  Gressett then assumes that, since Alliance had this extraordinary and unique right to buy access to CoStar's services and then to re-sell them in competition with CoStar, his **sub-license** from Alliance must have also allowed him to re-sell CoStar's services around the Houston market.

As an initial matter, Gressett's double-hearsay-unwritten-reseller agreement is not admissible evidence, and is thus not a competent basis for Gressett to avoid summary judgment against him. Gressett's testimony that someone at Alliance told him something that a CoStar salesperson had told his Alliance contact is hearsay under Fed. R. Evid. 801 and thus inadmissible.  Even assuming *arguendo* that the alleged statement by the CoStar representative was subject to an exception to the hearsay rule, Gressett's admission that he heard the alleged statement through **another person** means that it is double hearsay, and there is no possible exception to the hearsay rule that would cover the hearsay between Gressett and his Alliance contact.  Gressett's double hearsay testimony cannot, as a matter of law, defeat CoStar's motion for summary judgment.  *See Greensboro Prof. Fire Fighters Assn., Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995); Fed. R. Evid. 56(e).

Moreover, Gressett's double hearsay is not supported by a shred of admissible evidence. Directly contradicting Gressett's "heard it from a friend" testimony, the license agreement between CoStar and Alliance explicitly states that:

> **Licensee shall not** distribute, disclose, copy, reproduce, display, publish, transmit, assign, **sublicense**, transfer, **provide access to**, **use or sell**, directly or indirectly (including in electronic form), **any portion of the Licensed Product**.

CoStar Summary Judgment Br. (D.E. 85), Declaration of Steven Williams. ("Williams Motion Decl.") at Ex. E at § 2(b) (emphasis added). Further negating Gressett's double hearsay testimony is an integration clause explicitly stating that:

> This Agreement contains the entire understanding of the parties with respect to the Licensed Product and supersedes any prior oral or written statements and documents with respect to such subject matter.

*See id.* at § 18.

Further discrediting Gressett's self-serving testimony is the fact that the documentary evidence shows that Alliance represented that Gressett was an Alliance employee with an Alliance Valuation phone number. *See* Williams Motion Decl. Ex. E (list of authorized users). Had Alliance truly been approved by CoStar as a reseller of its services (and, indeed, the only such reseller in existence), it would not have needed to falsely characterize Gressett as an Alliance employee. In fact, characterizing Gressett as an Alliance employee was the *only* acceptable means for Gressett to gain access to CoStar under Alliance's license agreement. *See* Williams Motion Decl. Ex. E at § 1 (defining authorized users as employees of licensee or independent contractors working **solely** for the licensee).

Once the false façade of Gressett's unwritten, hearsay sub-sub-license collapses, Gressett has no remaining arguments. His reliance on out-of-circuit precedents such as *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 788 (9th Cir. 2007), to defeat CoStar's contributory infringement claim is misplaced. Gressett is not an Internet company like Amazon passively hosting material for anonymous third parties. Instead, he **actually provided** a CoStar user name, password and access code to QVAL and others for the express purpose of allowing them to access CoStar. His hands-on approach to enabling infringement by others sets him apart from the line of cases involving Internet companies. Similarly, his arguments for avoiding vicarious infringement liability and breach of contract – brief as they are – fall

flat on the mistaken premise that Gressett somehow had authority to act as a reseller of CoStar's services.

Furthermore, Gressett's ratification, waiver and estoppels affirmative defenses to CoStar's claims have the same double-hearsay backbone as his defenses to the merits of CoStar's claims. Compounding this error is that Gressett wholly misapplies the doctrine of ratification to attempt to apply it in a situation – between a principal and its licensee – where that doctrine was never meant to be applied and never has been applied.

Finally, Gressett's cross-motions on CoStar's fraud and 18 U.S.C. § 1030 claims should be denied as meritless.  His motion on CoStar's 18 U.S.C. § 1030 claim is barred by the law of the case because it simply re-asserts arguments rejected by the Court in ruling on Gressett's motion to dismiss. His motion on CoStar's fraud claim should be denied because CoStar has adduced sufficient evidence that Gressett has engaged in a pattern of misrepresenting himself through words and action as an employee of CoStar's licensee when he never has been such an employee.

## <u>ARGUMENT</u>

## I.   COSTAR IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS OF COPYRIGHT INFRINGEMENT AGAINST GRESSETT

Gressett's Opposition fails to create a genuine issue of material fact as to Gressett's liability for infringing CoStar's copyrights as a contributory and vicarious infringer.  The undisputed facts are that Gressett acquired a user name and password to CoStar's services in violation of Alliance's license agreement with CoStar and then provided those materials to third parties, including QVAL, who used them to make unauthorized copies of CoStar's copyrighted photographs.  These facts establish as a matter of law that Gressett is liable for contributory and vicarious copyright infringement.

### A.    DIRECT INFRINGEMENT

Gressett apparently believes that CoStar was moving for summary judgment against Gressett for direct copyright infringement.  *See* Gressett's Opposition (D.E. 90) at 5.  While CoStar has ample evidence of Gressett's own unauthorized reproduction of CoStar's copyrighted works, it moved for summary judgment only on its contributory and vicarious infringement claims, as they present a stark picture of the illegality of Gressett's conduct.  CoStar's evidence of direct infringement by QVAL is necessary to establish the direct infringement **predicate** of Gressett's liability for contributory and vicarious infringement.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  Gressett does not challenge CoStar's evidence as to QVAL's infringement.

Furthermore, CoStar is submitting evidence of Gressett's personal unauthorized reproduction of CoStar's copyrighted works in the form of a declaration from Steven J. Williams.  Declaration of Steven J. Williams, attached hereto ("Williams Reply Decl.") at ¶¶ 7-15.  As CoStar noted in its opening brief, for the purpose of simplicity, it is moving only on a limited number of its claims against Gressett and only on a limited number of copyrighted works in order to establish the principle of Gressett's liability, and is leaving the fine details of the full number of copyrighted works infringed and the other claims (*e.g.*, violation of 18 U.S.C. § 1030) for trial.

### B.  CONTRIBUTORY INFRINGEMENT

As CoStar established in its original Motion for Summary Judgment, Gressett is liable for contributory infringement because he materially contributed to the infringing activity of QVAL, knowing that QVAL would engage in that infringing activity.  *See* CoStar Summary Judgment Br. (D.E. 85-2) at 8-14.  CoStar showed that Gressett provided his CoStar user name, password and digital access code to QVAL (and others), who then used those means to access CoStar's website and engage in

copyright infringement. *See id.* Gressett's principal defense to this claim is that, despite the fact of his personal involvement in providing the access to QVAL, he did not have the requisite **knowledge** of QVAL's infringing conduct. Gressett's argument, however, is premised on facially inapposite cases involving large providers of automatic, passive Internet services to anonymous third parties. There is no case, nor could there be a case, absolving someone personally involved in providing the means of infringement of liability for a lack of knowledge.

### 1. **Material Contribution**

First, Gressett states that "providing of nothing more than access to CoStar's website, with nothing more [sic], create a material issue of fact with regard to whether he materially contributed to QVAL's alleged infringement . . . ." Gressett's Opposition (D.E. 90) at 5-6. Not surprisingly, Gressett does not cite a single case in support of his position. Instead, as CoStar established in its opening brief, providing passwords to third parties for use in accessing copyrighted content is exactly the type of conduct that constitutes a "material contribution" to an infringement. *See* CoStar Summary Judgment Br. (D.E. 85-2) at 12-13; *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1114 (9th Cir. 2007) ("similarly, **providing passwords that enable users to illegally access websites** with copyrighted content may well amount to contributory infringement") (emphasis added).

Indeed, Gressett's conduct is exactly the type that renders a party liable for contributory infringement. As the Second Circuit stated, liability for contributory infringement exists if the defendant engages in "**personal** conduct that encourages or assists the infringement." *Matthew Bender & Co. v. West Publ'g Co.,* 158 F.3d 693, 706 (2d Cir. 1998); *see also* 3 David Nimmer, NIMMER ON COPYRIGHT, § 12.04[A][3][b], at 12-87 (2007). CoStar's evidence – which is Gressett's own testimony –

conclusively shows that Gressett was engaged in personal conduct that assisted QVAL's infringement. The following exchange is illustrative:

> Q:    And how did you go about providing your password to QVAL, Mr. Teel,   or Bilicek?
>
> A:    They would just call me on the phone, and I would give them a – the code.[1]

*See* Ex. 4 to CoStar Summary Judgment Br., Deposition of Russell Gressett ("Gressett Dep. Tr.") (D.E. 85-9) at 53.   Gressett **admitted** there was no other way for QVAL to access CoStar without the materials he provided.   *See id.* at 116; Williams Motion Decl. ¶ 9 (CoStar's databases cannot be accessed without user name and password and access code if a user is assigned a key token).   Given Gressett's admitted personal involvement in providing QVAL with the **sole means** by which QVAL was able to infringe CoStar's copyrights, there is no genuine issue of material fact that Gressett provided a material contribution to QVAL's infringement.

## 2.   Knowledge of Infringing Activity

Gressett's principal defense against CoStar's contributory infringement claim is his argument that, although he knowingly provided QVAL with the means to access CoStar's products (and thus the means to infringe CoStar's copyrights), he didn't know that QVAL would **actually** engage in copyright infringement of CoStar's works.   Gressett's argument not only contradicts the copyright law knowledge standard, but basic common sense.

---

[1] In order to access CoStar's products from multiple computers, a user must obtain a "key token" that generates a number that the user must enter into CoStar's web site in addition to the user's user name and password.   The number generated is displayed for a limited period of time – less than a minute.   As such, the user sharing access must either provide the person receiving access the key token itself or, if not, be prepared to provide the number on the key token on a real-time basis.   *See* Williams Motion Decl. at ¶ 9.   This short-term numeric code is what Gressett was referring to in his testimony.

a.  **Gressett's Knowledge That QVAL Was Accessing CoStar When Gressett Gave QVAL CoStar Access Codes Was Sufficient As a Matter of Law**

First, Gressett argues that he was "not aware of anything other than the frequency of [QVAL]'s access" and thus "not aware that copyrighted material had been copied by QVAL." Gressett's Opposition (D.E. 90) at 7. Gressett's statement, put in context, strains credulity. By Gressett's own admission, he provided QVAL with access codes every time they needed to access CoStar's products. *See* Gressett Dep. Tr. 53. According to CoStar's records, as disclosed in CoStar's summary judgment motion, QVAL logged into CoStar's computers **234 times** from July 2004 through March 2008. *See* Williams Motion Decl. at ¶ 22. That means that Gressett provided QVAL with the means of infringement **234 times**. His claimed ignorance that QVAL would be infringing CoStar's copyrights – even though CoStar places a copyright notice on the very page where Gressett or QVAL would log in to CoStar's products and every page thereafter – would be as hard to believe as a baker claiming that, despite all the loaves of bread she had sold, never knew that they would be **eaten**.

Not surprisingly, the law does not support Gressett's position. As the Supreme Court has held, courts should analyze contributory copyright infringement liability in light of "rules of fault-based liability derived from the common law." *Metro-Goldwyn-Mayer*, 545 U.S. at 934-35. Common law principles, of course, establish that intent may be imputed from actions; "[t]ort law ordinarily imputes to an actor the intention to cause the natural and probable consequences of his conduct." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (citing *DeVoto v. Pac. Fid. Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980)). Gressett cannot deny that the natural and probably consequence of physically providing his access code to QVAL was that QVAL would access and then reproduce CoStar's copyrighted content.

As courts have stated, the requisite knowledge for contributory infringement liability may be actual or constructive.  *See Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 474 (S.D.N.Y. 2002), *aff'd*, 409 F.3d 26 (2d Cir. 2005); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement.").  Thus, knowledge of specific infringements is *not required* to support a finding of contributory infringement.  *See Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009); *Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670 (JBS), 2006 U.S. Dist. LEXIS 14988 at *47-48 (D.N.J. Mar. 31, 2006).  Here, where Gressett actually provided QVAL with the access code necessary to infringe CoStar's copyrights, he cannot escape liability as a matter of law simply by arguing that he did not actually know that copyright infringement was occurring or which copyrights were being infringed.

Gressett cites *Perfect 10, Inc. v. Amazon.com, Inc.*, as the sole support for his argument that he is required to have "actual knowledge" of the "specific infringing material."  However, the Ninth Circuit expressly stated in that case that it was applying a contributory infringement standard **adapted to Internet service providers**.  *See* 508 F.3d at 1171 ("We have further refined [the standard] in the context of cyberspace to determine when contributory liability can be imposed on a provider of Internet access or services.").  Further, the facts of that case make Gressett's position even more untenable; Perfect 10 sued Google and Amazon.com based on the automated functioning of Google's search engine, which creates an index of all the web pages accessed by Google's computers, including Perfect 10's copyrighted content.  *See id*. at 1155.  To equate Gressett's physical provision of access codes to QVAL knowing that QVAL would use the codes to access CoStar's copyrighted database and photographs with Google's computers cataloging the Internet, regardless of content is self evident folly.

Instead, Gressett is much more akin to the defendant in *Columbia Pictures Indus., Inc. v. Aveco, Inc.*, 800 F.2d 59, 62 (3d Cir. 1986), who provided the direct infringer with the videocassette, VCR and a room to watch movies, knowing full well what the natural consequences of that act would be.

> **b.     Gressett's Argument That He Had the Right to Sub-Sub-License QVAL Fails as a Matter of Law**

As a secondary reason why he does not have the knowledge, Gressett argues that he could not have known that QVAL's activity was infringing because he believed that he had a lawful ability to sub-sub-license CoStar access from Alliance. Gressett's basis for this argument is that CoStar "expressly authorized" both Gressett's own use and his sub-sub-license to QVAL. Gressett's Opposition (D.E. 90) at 7. Gressett's contentions concerning his alleged unlimited right to re-sell his user name and password are both inadmissible and contradicted by the license agreement between CoStar and Alliance.

First, Gressett's testimony that Mark Gautreau of Alliance had **told him** that someone at CoStar had **said that** both Gressett's use of CoStar even though he was not an Alliance employee and Gressett's ability to re-sell CoStar to others was acceptable to CoStar is inadmissible double hearsay. *See* Fed. R. Evid. 801; Fed. R. Evid. 805 (hearsay within hearsay requires separate bases for admissibility); *McDonald v. Friedman*, Docket No. RDB-02-2812, 2004 U.S. Dist. LEXIS 27670 at *16 (D. Md. Feb. 4, 2004). It is a basic principle that because hearsay is inadmissible at trial, it is also cannot considered on a motion for summary judgment. *See Greensboro Prof. Fire Fighters*, 64 F.3d at 967; *Maryland Highways Contractors Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)) ("hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"); *see also* Fed. R. Evid. 56(e). Accordingly, because Gressett's testimony of an alleged conversation between a CoStar representative and Alliance is double hearsay, he cannot rely upon it to avoid summary judgment.

Second, the record evidence shows conclusively that there was no such sublicensing arrangement between CoStar and Alliance, and that Gressett, by agreeing to CoStar's Terms of Use, knew that he could not share his password with QVAL.  CoStar's license agreement with Alliance specifically stated:

> The Licensed Product may be used by no more than the number of users set forth on the Subscription Form . . . .  All of such users (the "Authorized Users") must be individuals (1) employed by Licensee or an Independent Contractor of Licensee at a site identified on the Subscription Form. . . .  An "Independent Contractor" is defined as an individual person performing substantially the same services for Licensee as an employee of Licensee.

Williams Motion Decl. at Ex. E, Section 1.  Further, the license agreement between CoStar and Alliance specifically excludes the possibility of an unwritten oral agreement with a merger clause.  *See id*. at Section 18 (stating that the agreement supersedes any prior oral statement and that it may only be modified in writing).  Accordingly, as a matter of law, Alliance did not have any right to provide Gressett, who was neither an employee nor an Independent Contractor (as defined narrowly in the agreement) of Alliance, with access to CoStar's licensed products.

The negation of Gressett's argument is supported by more than just CoStar's agreement with Alliance.  Gressett himself personally acknowledged that he was not allowed to share his user name and password when he accepted CoStar's Terms of Use.  As noted by the Court in its earlier decision in this case, Gressett accepted CoStar's Terms of Use when he first logged into his CoStar account and on a regular basis thereafter.  *CoStar Realty Information, Inc. v. Field*, 612 F. Supp. 2d 660, 668-69 (D. Md. 2009).  CoStar reintroduced that evidence in its summary judgment motion, *see* Williams Motion Decl. at ¶ 10, and Gressett has not challenged that evidence.  Those Terms of Use make it clear that the kind of password sharing Gressett engaged in was strictly prohibited:

> Only Authorized Users for a Passcode Protected Product may access such product and they may access it solely using the user name, password and, if applicable, key token (collectively, the "Passcodes") assigned to such user by CoStar. No Authorized User may

share his Passcodes with any other person, ***nor may an Authorized User allow any other person to use or have access to his Passcodes***.

Williams Motion Decl. at Ex. A (page 1, "Services")(emphasis added).  Accordingly, Gressett should have known – or was willfully blind to the fact – that he was not allowed to share his CoStar access with QVAL and others.[2]

Finally, it is proper to put in context what Gressett is asking the Court to believe in submitting double hearsay testimony concerning an alleged unlimited right to sublicense CoStar's products.  CoStar has never offered, nor ever would offer, an unlimited right to sublicense access to CoStar's products. *See* Williams Reply Decl. at ¶ 3.  Gressett never provides a plausible reason why Alliance or Gressett qualify for such special and unique treatment.  Given that the essence of what CoStar sells is *access* to those database products, such a license would be tantamount to the sale of CoStar's business. Accordingly, Gressett asks the Court to believe that CoStar voluntarily and knowingly gave up its business model in an oral sublicensing arrangement with Alliance – a concept too farfetched to avoid the issuance of summary judgment.

## C.     VICARIOUS INFRINGEMENT

Gressett spends only two paragraphs (and less than one half of a page) trying to defend against CoStar's claim of vicarious infringement.  *See* Gressett's Opposition (D.E. 90) at 8.  That is probably efficient, as Gressett truly has no defense – his re-sale of access to CoStar's copyrighted content constitutes prototypical vicarious infringement.

---

[2] Gressett's only response to the Alliance license agreement and the Terms of Use is that he neither read those agreements nor did he believe that the Terms of Use would counteract his double-hearsay right to sublicense CoStar.  That argument is circular; he argues that his double hearsay license is not contradicted by the only written agreements in this case because his double hearsay license cannot be contradicted by those written agreements.

Gressett's argument is based on the premise that he had no ability to **supervise** QVAL's infringing conduct and therefore cannot be liable for vicarious infringement.[3]   That argument is frivolous in two respects.   First, vicarious infringement does not require employer-employee-type oversight as Gressett apparently presumes, but only the **right and ability to control** the infringing conduct.   *See*, *e.g.*, *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513-14 (4th Cir. 2002) (recognizing vicarious infringement liability in instance where defendant owned property and thus had the "right and ability to control" the development that took place on that property); *see also Fonovisa*, 76 F.3d at 262 (finding vicarious liability where owner of swap meet had the right and ability to control non-employee vendors selling infringing materials).

*Second*, the personal way in which Gressett allowed QVAL to engage in copyright infringement transcends any semantic argument Gressett may make concerning whether he could only "control" or whether he was "supervising" QVAL's infringement.   As discussed above, Gressett actually provided QVAL with CoStar access codes over the phone **more than 200 times**.   Without Gressett providing those access codes, QVAL could not infringe CoStar's copyrights.   Gressett was in full control of QVAL's access to CoStar and therefore as a matter of law had the right and ability to control and the right and ability to supervise QVAL's infringement.

## II.   GRESSETT IS LIABLE FOR BREACH OF CONTRACT

Gressett spends only a little more time defending himself against CoStar's showing that it is entitled to summary judgment on its claim of breach of contract against Gressett than he does defending against CoStar's vicarious infringement claim.   In doing so, Gressett simply re-hashes the same

---

[3] Gressett does not challenge CoStar's showing that he directly profited from QVAL's infringement as a result of QVAL's payments to Gressett for CoStar access.

argument that CoStar had permitted him to share his CoStar access via a double-hearsay oral sublicensing agreement with Alliance.  As discussed above, that argument fails as a matter of evidence and as a matter of contract law.

Gressett contends that there was no "meeting of the minds" between CoStar and Gressett when Gressett accepted CoStar's Terms of Use.  That argument, however, is precluded by the Court's prior ruling in this case holding that CoStar's Terms of Use are valid and enforceable against Gressett. *See Field*, 612 F. Supp. 2d 668-69.  Gressett's double hearsay testimony that a conversation between a CoStar representative and someone at Alliance cannot undo the binding nature of that agreement. *See* Fed. R. Evid. 801; Fed. R. Evid. 805.  As stated above, the license agreement between CoStar and Alliance contained and integration clause that precludes any oral understandings between the parties. *See* Williams Motion Decl. at Ex. E, Section 18.  Accordingly, CoStar is entitled to judgment as a matter of law on its breach of contract claim against Gressett.

## III.   GRESSETT'S AFFIRMATIVE DEFENSES ARE MERITLESS

Gressett sets forth two affirmative defenses against CoStar's copyright and breach of contract claims: ratification and waiver.  For essentially the same reasons that Gressett's attempt to create a double-hearsay unwritten sublicensing arrangement is meritless, those defenses fail.

### A.   Gressett Fails to Establish a Ratification Defense

Gressett's Opposition asserts that CoStar "ratified" the authority of Alliance to sub-license access to CoStar's website.  That defense fails on a number of grounds:

- First, Gressett's reliance on the ratification doctrine is wholly misplaced.  Ratification acts to bind a principal to the acts of an agent with respect to a **third party**, not the agent itself.  In other words, ratification works when an employee or agent exceeds his authority to promise something on a principal's behalf to a third party.  Once the principal has ratified the employee or agent's promise, the **third party** may enforce the promise against the principal, not the **agent**. *See* RESTATEMENT (THIRD) OF AGENCY § 4.01.  There is no precedent for the

doctrine of ratification to be used in the case of a licensee, *i.e.*, a contractual counterparty, that has no rights whatsoever to act on the principal's behalf. That is essentially what Gressett attempts to do here – use the defense of ratification to attempt to bind CoStar to Alliance's and Gressett's own wrongful acts. As such, a ratification defense is inapposite.[4]

- Second, Gressett's ratification claim is based the same double hearsay testimony described above. *See* Gressett's Opposition (D.E. 90) at 9 ("The evidence shows that CoStar granted authority for Alliance to sub-license access to CoStar's website without the typical restriction on sharing the passwords with non-employees or agents."). For the reasons mentioned above, that double hearsay testimony is inadmissible and cannot be used on summary judgment.

- Third, ratification requires "knowledge of all material facts." *See Progressive Cas. Ins. Co. v. Ehrhardt*, 69 Md. App. 431, 442, 518 A.2d 151 (1986). Gressett does not provide any evidence that CoStar was aware of all the material facts, *i.e.*, that Gressett was **not** an employee of Alliance and that Gressett was providing his user name and password to third parties, including QVAL. As discussed above, when Gressett's user account was set up by Alliance, he was identified as an Alliance "appraiser" and associated with an Alliance phone number. *See* Williams Motion Decl. Ex. E (list of Authorized Users). Gressett provides no evidence that he ever identified himself as not being an Alliance employee when he had conversations with CoStar's technical support. Had he done so, his account wouldn't have been terminated. *See* Williams Reply Decl. at ¶ 4.

## B.     Gressett's Waiver/Estoppel Defenses Fail As a Matter of Law

Gressett's waiver and estoppel defenses against CoStar's copyright infringement and breach of contract claims fail as a matter of law. As with his ratification defense, Gressett's waiver and estoppel defenses are based on two factual allegations: (1) that CoStar had knowledge that Gressett was using CoStar in violation of both the Alliance agreement and CoStar's Terms of Use; and (2) that Gressett was actually licensed by CoStar to sublicense to QVAL, via the same double hearsay testimony from Gressett.

Both of these factual bases are insufficient as a matter of law. As the Maryland Court of Appeals has held, waiver rests upon the intention of the party, *see Gould v. Transamerican Assocs.*, 224 Md. 285,

---

[4] Gressett's ratification defense, thus understood, is simply a repackaged waiver or estoppel defense, which is discussed below.

295, 167 A.2d 905, 909 (Md. 1961), and "therefore, **acts relied upon as constituting waiver must unequivocally demonstrate that waiver is intended**," *Taylor v. Mandel*, 402 Md. 109, 135-36, 935 A.2d 671, 686-87 (Md. 2007) (emphasis added). "The general rule is that there can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights, and of facts which will enable him to take effectual action for the enforcement of such rights." *Armour Fertilizer Works v. Brown*, 185 Md. 273, 278-79, 44 A.2d 753, 755 (1945). Similarly, an essential element of estoppel in the context of a copyright infringement action is that the copyright owner intended its conduct to be acted upon, or that the copyright owner acted such that the alleged infringer has a right to believe it was so intended. NIMMER ON COPYRIGHT, § 13.07.

First, Gressett was never identified as anything other than an Alliance employee to CoStar until just prior to this suit being filed. *See* Williams Motion Decl. Ex. E (identifying Gressett as an Alliance "appraiser"); Williams Reply Decl. at ¶ 4. Gressett does not provide any evidence that he told CoStar that he was not an Alliance employee. Moreover, there is no evidence, nor does Gressett claim that Gressett informed CoStar, that he was sub-licensing his own user name and password to third parties (including QVAL) in such a way that would violate CoStar's Terms of Use. Because waiver is the **intentional** relinquishment of a known right, *see In re Blessen H.*, 392 Md. 684, 698, 898 A.2d 980, 988 (2006), Gressett's failure to inform CoStar that he was not an Alliance employee and was providing his user name, password and access codes to third parties defeats his waiver and estoppel defenses.

Second, as described several times above, Gressett's evidence that he had the right to sublicense QVAL is double hearsay inadmissible for the purposes of summary judgment and contradicted by both Alliance's license agreement with CoStar and the Terms of Use Gressett specifically agreed to when

accessing CoStar.  Accordingly, Gressett cannot support his waiver and estoppel claims as a matter of law.

## IV. GRESSETT'S CROSS-MOTION ON COSTAR'S FRAUD CLAIM SHOULD BE DENIED

Gressett's cross-motion for summary judgment on CoStar's fraud claim should be denied because CoStar has adduced evidence that Gressett consistently misrepresented himself to CoStar in words, action, and omission by accessing CoStar's products by pretending to be an employee of Alliance.

CoStar has shown, both above and in its original motion, that Gressett was presented to CoStar as an Alliance employee "appraiser."  Gressett's contention in its summary judgment motion is that Alliance made this representation, not Gressett, and that therefore his dealings with CoStar have been aboveboard.  Gressett's contention is contradicted by the evidence, however.  As stated above, Gressett was required to agree to CoStar's Terms of Use, defines "Authorized User" as employees of CoStar's licensee and states that only Authorized Users may access CoStar's licensed products.  *See* Williams Motion Decl. at Ex. A.  By agreeing to those Terms of Use and accessing CoStar's services, Gressett represented that he was an Authorized User, and thus an employee of Alliance.  Gressett's fraud is thus separate and independent from Alliance's fraud to CoStar.

Gressett also had the requisite intent to support a fraud claim against him.  As Gressett points out, a defendant may be held liable for fraud where he "is recklessly indifferent in the sense that he lacks knowledge as to its truth or falsity."  *Ellerin v. Fairfax Savings, FSB,* 337 Md. 216, 232, 652 A.2d 1117 (Md. 1995).  Here, CoStar has adduced evidence that Gressett, despite calling CoStar customer support on several occasions, never identified himself as not being an employee of Alliance.  *See* Williams Reply Decl. at ¶ 4.  Gressett's fraudulent concealment of his true identity as operating a separate

business from Alliance gives rise to the inference that Gressett knew all along that a fraud was being committed on CoStar by Alliance and himself.

Accordingly, Gressett's motion for summary judgment on CoStar's fraud claim should be denied.

## V.   GRESSETT'S CROSS-MOTION ON COSTAR'S 18 U.S.C. § 1030 CLAIM SHOULD BE DENIED

Gressett's cross-motion for summary judgment on CoStar's claim under 18 U.S.C. § 1030 is merely a reiteration of the arguments made in his original Motion to Dismiss.  Notably, Gressett **does not** contend that CoStar has failed to set forth evidence of unauthorized access to a protected computer. Instead, as in his Motion to Dismiss, Gressett contends that an "interruption in service" is necessary to support a claim under 18 U.S.C. § 1030 and thus because CoStar concedes that no interruption of service occurred, he is entitled to a dismissal of CoStar's 18 U.S.C. § 1030 claim.

Gressett's argument is barred by the law of the case.  The Court specifically rejected Gressett's argument on the Motion to Dismiss.  *See Field*, 672 F. Supp. 2d at 675.  "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Dow v. Jones*, 311 F. Supp. 2d 461, 465 (D. Md. 2004) (quoting *Columbus-America Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000)).[5] Accordingly, Gressett's summary judgment motion should be denied on those grounds.

---

[5] To the extent necessary, CoStar hereby specifically incorporates by reference its Opposition to Gressett's Motion to Dismiss on this issue.  Moreover, CoStar's evidence, as set forth in CoStar's original motion and above, that Gressett engaged in unauthorized access to CoStar's computers and allowed others to gain access is enough to support CoStar's 18 U.S.C. § 1030 claim.

**VI.    COSTAR'S MOTION FOR LEAVE TO AMEND TO CONFORM ITS COMPLAINT TO THE EVIDENCE SHOULD BE GRANTED**

CoStar's Motion for Leave to Amend should be granted over Gressett's opposition.  CoStar's proposed Second Amended Complaint simply corrects an omission in CoStar's complaint and conforms CoStar's pleading to the evidence presented during the case to explicitly add contributory and vicarious copyright infringement claims against Gressett.   Furthermore, Gressett cannot claim prejudice concerning CoStar's amendment because the CoStar **actually made the factual allegations** that are the foundations of its contributory and vicarious infringement claims in its First Amended Complaint.

Gressett makes only two arguments in opposition to CoStar's motion:  (1) that CoStar's motion is untimely; and (2) that Gressett will be prejudiced because discovery deadline has passed in this case.  Each argument is meritless.

First, CoStar's Motion for Leave is not untimely because it is substantially a motion for leave to amend under Fed. R. Civ. P. 15(b)(2), which substantially allows parties to conform their pleadings to the evidence presented.  As set forth in CoStar's opening Motion for Leave (D.E. 84), CoStar's First Amended Complaint specifically alleges that Gressett "further distributed the user name and passcode to other individuals, including [Defendant Gerald A Teel Co.] and [John Doe defendants]" and that "third parties were able to use CoStar's commercial real estate services without paying the subscription and license fees that other firms pay for the service."  D.E. 6, First Amended Complaint at ¶ 26.  Thus, Gressett had actual notice that CoStar was making allegations that would, as described above, constitute contributory and vicarious infringement.  Gressett implicitly admitted to receiving "subscription fees" for allowing third parties to use CoStar's services in his Answer to paragraph 28 of CoStar's First Amended Complaint.  D.E. 53 at ¶ 28.  Indeed, the Court understood that CoStar was pursuing Gressett for re-selling CoStar access in its Order denying Gressett's motion to dismiss.  *See Field*, 672 F. Supp.

2d at 676. In his deposition and responses to interrogatories, Gressett admitted to selling access to CoStar to QVAL, Gerald A. Teel Co. and others. *See* Gressett Dep. Tr. at 53, 116; CoStar Summary Judgment Br. (D.E. 85-11) Ex. 6 at 4 (Gressett's Response to CoStar's Interrogatories) ("QVAL sporadically forward $125/month to Gressett and was given CoStar pass codes to search for comps."). Thus understood, Gressett's liability for sharing its user name and passwords with others has been in this case from the beginning and the parties have litigated these issues throughout the case.

Second, Gressett will not suffer any prejudice as a result of CoStar's conforming amendment. As described above, CoStar and Gressett have always litigated this action with contributory and vicarious infringement claims against Gressett in mind. Moreover, Gressett's assertion that "he is now unable to conduct discovery to further investigate" CoStar's claims is not only false in light of the fact that the parties have litigated these claims all along, but because **Gressett has not engaged in a single act of affirmative discovery in this case**. Gressett has not issued a single document request or interrogatory, nor has he noticed or taken a single deposition. The very concept that he would be prejudiced by CoStar's conforming amendment because he is being denied discovery is thus at odds with his own behavior in this case.

Furthermore, under the liberal standard of Rule 15(a), CoStar's amendment should also be allowed. The date for amendments under Rule 15(a) passed *prior* to Gressett's deposition in which he admitted to re-selling CoStar access to QVAL and others. Given that CoStar's amendment simply includes Gressett in CoStar's existing contributory and vicarious infringement claims based on evidence gleaned from Gressett himself, it cannot be said that he has been prejudiced by his inclusion in those claims. All of these things considered, leave should be granted under Rule 15(a) as justice requires the granting of such leave.

## CONCLUSION

For the aforementioned reasons, CoStar requests that the Court enter summary judgment in favor of CoStar on its contributory and vicarious copyright infringement claims and breach of contract claims against Gressett and deny Gressett's cross-motion for summary judgment in its entirety.  CoStar further requests that the Court grant CoStar's leave to amend its complaint to conform its pleading to the evidence.

Dated:  December 14, 2009                         Respectfully submitted,


                                                  _____/s/_____
                                                  Shari Ross Lahlou, Bar. No. 16570
                                                  William J. Sauers, Bar. No. 17355
                                                  Sanya Sarich Kerksiek, Bar No. 17636
                                                  Crowell & Moring LLP
                                                  1001 Pennsylvania Avenue, N.W.
                                                  Washington, D.C. 20004
                                                  Telephone (202) 624-2500
                                                  Facsimile (202) 628-5116
                                                  Email  slahlou@crowell.com
                                                         wsauers@crowell.com
                                                         skerksiek@crowell.com

                                                  *Attorneys for Plaintiffs CoStar Realty Information,*
                                                  *Inc, and CoStar Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the above document, with attachments, was served upon the attorneys of record for the following parties by electronically filing the document with the Clerk of Court using the CM/ECF system, which caused a Notice of Electronic Filing (NEF) to be sent to the following on December 14, 2009:

Mary-Olga Lovett
Pamela Ferguson
Greenberg Traurig
1000 Louisiana Street, Suite 1800
Houston, TX 77002
Telephone: 713.374.3500
Facsimile: 713.374.3505
lovettm@gtlaw.com
fergusonp@gtlaw.com

*Attorneys for Defendant Russ A. Gressett*

R. Wayne Pierce
The Pierce Law Firm, LLC
133 Defense Highway, Suite 106
Annapolis, MD 21401-7015
Telephone: 410.573.9959
Facsimile: 410.573.9956
wpierce@adventurelaw.com

*Attorney for Defendant Pathfinder Mortgage Company*

**I FURTHER CERTIFY** that on December 14, 2009, a true copy of the foregoing, with attachments, was sent by electronic and first class mail to the attorneys listed above and to:

Mark Field
Alliance Valuation Group
638 Camino De Los Maries, Suite H130A
San Clemente, CA 92673
mark.field@cox.net

Lawson Valuation Group, Inc.
8895 N. Military Trail, Suite 304E
Palm Beach Gardens, FL 33410-6263
lawsonmai@aol.com

Dated:  December 14, 2009

Respectfully submitted,

_____/s/_____

William J. Sauers, Bar. No. 17355
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 624-2500
Facsimile (202) 628-5116
Email   wsauers@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc, and CoStar Group, Inc.*