IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| CoSTAR REALTY INFORMATION, INC., *et al.*,<br>            Plaintiffs,<br><br>v.<br><br>Mark Field d/b/a Alliance<br>Valuation Group, *et al.*,<br>            Defendants. | CIVIL ACTION NO. <u>AW -08-663</u> |

DEFENDANT RUSSELL A. GRESSETT'S MOTION FOR LEAVE TO FILE
SUR-REPLY TO PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
MOTION TO AMEND COMPLAINT AND DEFENDANT'S CONSOLIDATED
SUR-REPLY AND REPLY TO PLAINTIFF'S RESPONSE TO
<u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Defendant Russell A. Gressett ("Gressett"), by and through undersigned counsel, files this Consolidated Motion For Leave To File Sur-Reply To Plaintiffs CoStar Realty Information, Inc. and CoStar Group, Inc.'s (collectively, "CoStar") Consolidated Reply in Support of Its Motion For Summary Judgment and Reply In Support Of Motion To Amend Complaint and Gressett's Consolidated Sur-Reply to CoStar's Reply in support of summary judgment and Reply to CoStar's Response to Defendant's Cross-Motion For Summary Judgment. In support thereof, Gressett respectfully states the following:

I.    <u>MOTION FOR LEAVE TO FILE SUR-REPLY</u>

Co-Star and Gressett have filed detailed Motions and Cross-Motions for Summary Judgment. In such a context, the issues and evidence to support or defeat the Motions necessarily overlap and are inextricably intertwined. The same evidence used to defeat

*HOU 406,842,341v1*

CoStar's Motion is also used to support Gressett's Cross-Motion. CoStar's infringement and breach of contract claims contained in its Motion for Summary Judgment are necessarily refuted by the evidence produced in support of Gressett's affirmative defenses. Furthermore, CoStar's Reply in support of it's Motion contains objections to Gressett's summary judgment evidence and new arguments and case precedent cited in opposition to Gressett's Response to CoStar's Motion. For these reasons, leave to file a Sur-Reply in conjunction with Gressett's Reply responding to CoStar's Response to his Cross-Motion is warranted and just. Accordingly, Gressett respectfully requests leave to file the Sur-Reply included herein. Per Local rules, Gressett attaches hereto a Proposed Order granting this Motion as Exhibit A.

## II.  RESPONSE TO PLAINTIFF'S OBJECTIONS TO GRESSETT'S SUMMARY JUDGMENT EVIDENCE

In its Consolidated Reply and Response ("Reply/Response"), CoStar focuses almost exclusively on "discrediting" or "contradicting" Gressett's summary judgment evidence that CoStar, after entering into its licensing agreement with Alliance, ratified or waived its right to enforce the "no sharing" clause in the Alliance agreement by expressly informing Alliance that it would allow for the use and sub-licensing by Gressett. CoStar's objections to such evidence are unfounded and, as argued further below, its attempts to discredit or contradict this evidence only further establishes that a fact issue exists on each of the claims made subject of CoStar's Motion for Summary Judgment.

The Reply/Response repeatedly argues that the admissions by CoStar to Alliance are "double hearsay" to which on exception applies and which should not be considered because

the statements are inadmissible. This position is untenable. Summary judgment evidence is not required to be in an format that would be admissible at trial; instead, the party offering the summary judgment evidence must be able to prove the underlying facts at trial with admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000). "In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987). The statements regarding CoStar's expressed agreement to authorize Gressett's use and sublicensing of the CoStar website passwords as he did are an admission by a party opponent and, therefore, admissible as an exception to the hearsay rule under FED. R. EVID. 801(d)(2). At trial, the statements may easily be supported by testimony elicited during cross-examination of CoStar's representatives. At this stage of the proceedings, the Court must assume that CoStar would admit to such authorizations. For this reason alone, CoStar's objection should be overruled.

Furthermore, the statements by Alliance to Gressett indicating CoStar's agreement to his use and sub-licensing go to effect on the listener as well as serving as an operative fact surrounding the alleged contract at issue, since such an admission would prohibit enforcement of the contract terms and copyright protections at issue in this case. While CoStar can present evidence which arguably "contradicts" or "discredits" the alleged admission, such efforts go to the weight and not the admissibility of Gressett's evidence.

The statements by CoStar authorizing Gressett's use and sub-licensing of access to CoStar's website, while not presented in admissible form, may easily be admissible at trial

and, therefore, CoStar's objections should be overruled. Moreover, such a statement authorizing Gressett's use and sublicensing creates a material issue of fact that compels denial of CoStar's Motion for Summary Judgment.

### III. CONSOLIDATED SUR-REPLY AND REPLY TO PLAINTIFF'S CONSOLIDATED REPLY TO GRESSETT'S SUMMARY JUDGMENT OPPOSITION AND RESPONSE TO GRESSETT'S CROSS-MOTION FOR SUMMARY JUDGMENT

#### A. Contributory Infringement

CoStar argues that there can be no material issue of fact with regard to contributory infringement, because the providing of passwords by Gressett is sufficient material contribution to the alleged third party infringement and because knowledge of the alleged infringing activity may be imputed to Gressett. However, when infringement does not occur by mere access or use of the website, but by the distinct act of downloading copyright images, as is alleged in this case, Gressett's mere providing of the password is not a material contribution and knowledge that downloads occur merely because they were possible is insufficient to impute knowledge to Gressett of infringing activity by third parties. Therefore, a material fact issue exists with regard to CoStar's contributory infringement claim and summary judgment must be denied.

To support its argument on contributory infringement, CoStar first argues that material contribution to the infringing activity is Gressett's providing of CoStar's website passwords to QVAL. But access to CoStar's website is not the infringing activity, it is the downloading of CoStar's copyrighted images. As pointed out by the U.S. Supreme Court in *Sony*, to have materially contributed to QVAL's direct copyright infringement, Gressett would have to do more than merely provide unrestricted and unsupervised access, as in a landlord-

tenant relationship, he would have to have maintained more direct involvement or been involved in encouraging or promoting the infringing activity. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 437-438, fn. 18 (1984)(comparing "dance hall" cases that supported contributory liability because the defendants promoted the infringement and "landlord-tenant" cases that did not support such liability because the defendant merely provided the means to infringe but did not participate directly in the infringement). Gressett only provided QVAL access to the CoStar website, there is no evidence that he had any direct involvement in the downloading of CoStar's copyrighted images or even that he had knowledge that downloading took place. To the contrary, Gressett affirmatively denied any such involvement.

Regardless of how many times CoStar's website was accessed by QVAL, a point strenuously trumpeted by CoStar as supporting liability, even CoStar admits that access alone does not equal infringement. Instead, it is the act of downloading the copyrighted images. The website may be accessed and utilized without ever downloading an image and, thus, without ever infringing potentially copyrighted images. Liability for contributory infringement requires a party "who, *<u>with knowledge of the infringing activity</u>*, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). The Supreme Court has noted that contribution to infringement must be intentional for liability to arise. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

CoStar's reliance on the *Arista Records* cases to impute such knowledge of infringing activity to Gressett is misplaced. First, *Arista Records v. USENET* is readily distinguishable. *Arista Records LLC v. USENET.com*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009). In *USENET*, the defendant's employees admitted that the primary purpose of defendant's service was to allow customers to download copyrighted material and that USENET's customers had expressly told its employees on multiple occasions that they were downloading copyrighted material. *Id.* ("Defendants' employees' own statements make clear that they were aware that Defendants' service was used primarily to obtain copyrighted material . . . employee "was aware the users of the Usenet.com service were downloading MP3s from the service" because "they told [her]" while she gave tech support . . . Indeed, employees acknowledged that Defendants' "primary audience" were "people who want to get free music, ilelgal [sic] or not,". . . and on many occasions, Defendants' users explicitly told Defendants' technical support employees that they were engaged in copyright infringement.") There is no such evidence here. There is no evidence that the primary or only service available on CoStar's website is the downloading of its copyrighted images or that Gressett's purpose in providing the passwords to QVAL was to allow it to download copyrighted images. Furthermore, there is no evidence that Gressett had any knowledge that QVAL was actually downloading CoStar's copyrighted images.

Similarly, *Arista Records v. Flea World* is distinguishable. *Arista Records, Inc. v. Flea World, Inc.*, 2006 WL 842883 (D.N.J. March 31, 2006). In *Flea World*, the alleged infringers were directly involved in promoting the infringement. *Id.*, at *3 ("Defendants advertise extensively to promote the Market (as a "Bargain Hunters [sic] Dream") and the products of their

vendors. Advertising efforts include the operation of a web site promoting the Market, running seasonal promotions (such as specials that have holiday themes) and "tipping" bus drivers to "bring people to the Market.")(internal record citations omitted). Again, there is no evidence of similar activities or relationship between Gressett and QVAL. Gressett did not promote QVAL's business, assist with downloading the images, or bring QVAL customers who would require downloaded CoStar images. Therefore, he did not materially contribute to the infringement.

CoStar closes its argument by dropping a one-line site to the *Aveco* case, stating that it should control the Court's determination on this issue. *Columbia Pictures Indus., Inc. v. Aveco, Inc.*, 800 F.2d 59, 62 (3d Cir. 1986). But the statement itself defies credulity. In *Aveco*, the aspect of the defendant's business challenged by the plaintiff was providing a means of direct infringement, where the only possible result from providing those means would be infringement. *Id.* (liability could be established if defendant provided machinery "for purposes of an unauthorized public performance"). Aveco rented rooms to allow customers to view movies, and, therefore, the Third Circuit recognized that Aveco's purpose was to assist the direct infringement, not merely provide the means to infringe. *Id.* Again, Gressett had no such active involvement in QVAL's alleged infringing activity, nor is there any evidence his purpose was to assist such direct infringement. For that reason, *Aveco's* holding is inapposite.

This case is more directly related to the facts of *Sony* case where contributory infringement claim was rejected because Sony's only contact with the direct copyright infringers was at the point of sale or in providing the device that allowed for infringement to

occur. *Sony*, 464 U.S. at 437-438. Here, Gressett's only contact was the providing of the access code or password to QVAL. Otherwise, Gressett had no knowledge of how QVAL used the website or whether copyrighted images were downloaded, which CoStar admits was not the primary purpose of the website.

At its core, a contributory infringement claim must involve some active involvement or intent through knowledge, actual or constructive, and encouragement of "the infringing activity" *not the mere possibility of "infringing activity."* Because CoStar has failed to show, as a matter of law, that Gressett materially contributed to or had knowledge of QVAL's direct infringing activity, summary judgment must be denied.

B.   Vicarious Infringement

CoStar's argument regarding vicarious infringement compels a similar conclusion. CoStar argues there is no material issue of fact with regard to vicarious infringement, because control of the third party's alleged infringing activity may be imputed to Gressett by nothing more than his ability to provide or refuse to provide the CoStar password (an act for which it is uncontradicted he believed to be a lawful use of his sub-license agreement that was expressly authorize by CoStar). CoStar's argument analogizing the providing of passwords to the ownership of improved property or management of auction houses or flea markets is unpersuasive.

As with the Arista cases, CoStar relies on precedent involving evidence well beyond that present in this case. In *Nelson-Salabes*, the defendant held vicariously liable owned the property on which a building was constructed that was based on infringed design drawings. *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513-14 (4th Cir. 2002). The Court noted

that the defendant stood to directly profit from the infringing conduct itself, that being the increase in property value with the construction of the building. *Id.* Here, the only money exchanged between Gressett and QVAL was for access to CoStar's website, not for downloading copyrighted images. Gressett received no additionally financial incentive tied directly to infringement. He received payment regardless of whether QVAL ever accessed the site. Such indirect involvement, unattached to the infringing activity of downloading images, cannot establish vicarious infringement liability as a matter of law.

CoStar's argument that the control or supervision required to establish vicarious liability is something well below that analogous to an employer-employee relationship ignores the underpinnings and origin of vicarious infringement liability claims. The *Fonovisa* case cited by CoStar establishes this principle: "The concept of vicarious copyright liability was developed in the Second Circuit as an outgrowth of the agency principles of *respondeat superior.*" *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-62 (9th Cir. 1996). While it is true that an actual employer-employee relationship is not required for vicarious liability, it is also true that something far more substantive than merely supplying the means of infringement is needed, even if the defendant is paid for supplying those means. In its discussion, *Fonovisa* provided a similar discussion as that in *Sony*, where, to be liable for the actions of a third-party infringer, a defendant, like Gressett, must do more than serve in a "landlord-tenant" capacity. *Id.*, at 262. To be vicariously liable, Gressett must have a financial interest <u>*in the infringing activity*</u>, not in the means of infringing alone. In this way, *Fonovisa* is distinguishable. *Fonovisa* found a defendant liable for vicarious infringement for not only providing the infringing parties access to his auction house but also because the

defendant "patrolled" the infringing parties and directly oversaw their activities. *Id.* The defendant, who ran a business similar to that in *Flea World* (*supra*), also promoted and advertised the infringers' activities. *Id.* No such evidence exists here to support vicarious liability against Gressett. After supplying the passwords, Gressett had no interaction or supervision of QVAL's business or use of the CoStar website. Again, CoStar admits that accessing the website alone is not infringement, instead it is the act of downloading images from the site that constitutes infringement, an act by QVAL to which Gressett had no connection, knowledge, or financial interest. In fact, his financial interest was not predicated upon the the alleged infringing activity in any way. He received payment regardless of how the CoStar website was used by QVAL. Therefore, a material issue of fact exists as to both Gressett's control and financial interest in QVAL's alleged infringing activity, and summary judgment as to CoStar's vicarious infringement claims must be denied.

    C.    Breach of Contract

To support summary judgment on its breach of contract claim, CoStar again attacks the testimony with regard to CoStar's express authorization, made subsequent to Alliance entering into its licensing agreement with CoStar, of Gressett's use and sublicensing of the CoStar passwords. CoStar's attempts to refute evidence of its own authorization or waiver only serves to further establish that a fact issue exists with regard to whether Gressett may be held liable for breach CoStar's Terms of Use.

As noted above, the authorization by CoStar of Gressett's use and sublicensing meets an exception to the hearsay rule and, therefore, may be considered by the Court in ruling on CoStar's Motion for Summary Judgment. Since that authorization came after Gressett

allegedly entered into the contract with CoStar, it serves as proof that CoStar either ratified Gressett's actions in contradiction to the contract terms or waived its right to enforce those terms, both recognized affirmative defenses to a breach of contract claim. Gressett's testimony makes clear that Alliance, after informing CoStar's representative of his relationship to Alliance and his sublicensing, was told by CoStar that such use was "okay." Therefore, CoStar, with full knowledge of activities that would breach its terms of use, ratified or waived the allegedly unlawful conduct by Gressett. Accordingly, liability for breach of contract is unsupportable, and summary judgment as to CoStar's breach of contract claim should be denied.

      D.    Waiver/Estoppel Affirmative Defense

In attempting to overcome Gressett's Motion for Summary Judgment related to his affirmative defense of waiver or estoppel, CoStar again hides behind the allegation that Gressett represented himself directly to CoStar as an employee of Alliance or that he never affirmatively stated that he was sub-licensing the passwords. However, this argument completely ignores the primary issue supporting waiver, CoStar's affirmative authorization of Gressett's use as a non-employee and his the sublicensing of the passwords in conversations with Alliance. Even in its lengthy Response, CoStar never directly contradicts this testimony, other than a blanket statement that it simply "would never do it."[1] This falls short establishing evidence necessary to warrant judgment as a matter of law.

---

[1] While CoStar provides testimony that includes a blanket denial by its corporate representative, Williams (Williams Reply Decl. at ¶3), it fails to provide any testimony from the CoStar representatives who actually spoke to Alliance or to directly contradict the testimony from Gressett, information it appears to readily have in its possession based on the documentation provided in support of its Motion. Regardless, the contradicting testimony does nothing

A fact issue exists as to whether CoStar waived its rights to prohibit sublicensing as to Gressett alone. The evidence shows that CoStar granted authority for Alliance to sub-license access to CoStar's website without the typical restriction on sharing the passwords with non-employees or agents. See Gressett Deposition, Exhibit A, at pgs. 42:8-13. During the four years Gressett used the CoStar website, CoStar never objected to Gressett's use even when Gressett called CoStar for customer service with no further inquiry. *Id.* In this way, CoStar's silence as to Gressett's unrestricted use, ratified the terms of the sub-license between Alliance and Gressett, which, in turn, authorized his use and sharing of his CoStar access codes.

E.   Motion for Leave to Amend.

Finally, CoStar seeks to justify its Motion for Leave to Amend to add contributory and vicarious infringement claims, by arguing that the facts supporting such claims had previously been pled. This argument would effectively negate any requirement that a plaintiff timely assert all claims to be presented to a jury. As long as facts had been pled that would support the late-filed claims, CoStar would have this Court rule that any additional claims could be added up to the time of trial with complete disregard for the deadlines imposed by this Court. This is not the law and certainly prejudicial not only to Gressett but to the powers of this Court to control the litigation process for a particular case.

CoStar's argument ostensibly admits that it possessed all facts necessary to assert the claims for contributory and vicarious infringement long before the pleadings deadline in this case and long before Gressett's deposition, but should be given a free pass for failing to

---

more than create a material issue of fact as to whether CoStar, as to Gressett, waived its rights under the alleged contract.

*HOU 406,842,341v1*                                     12

timely assert those claims.  It then attempts to defeat the necessary prejudice of such dilatory tactics against Gressett by stating Gressett has not served written discovery in the case. Certainly, CoStar does not need to be reminded that Gressett, as defendant, does not bear the burden of proof on any of CoStar's claims -- including those for vicarious and contributory infringement?  These new claims, however, change the required proof drastically by placing a large amount of the evidence at issue with third parties who were not part of the dealings between Gressett, Alliance, and CoStar.  To allow such a late filing, with no further justification than "Gressett had to know we were going to do this" is not only prejudicial to Gressett but a direct assault on this Court's and the Federal Rules of Civil Procedure's protections against a plaintiff's or any party's opportunistic pleading and trial by ambush.

## V.   Conclusion

For these reasons, a material issue of fact exists as to each of CoStar's claims made the basis of their Motion for Summary Judgment or, in the alternative, a material issue of fact exists that would excuse liability based on Gressett's affirmative defenses.  Accordingly, CoStar's Motion for Summary Judgment must be denied, and the case be allowed to proceed to a trial on the merits.

Furthermore, because there is no evidence to support one or more elements of CoStar's claims against Gressett for: (1) copyright infringement; (2) contributory and vicarious infringement; (3) common law fraud; and (4) fraud related to computers pursuant to 18 U.S.C. 1030, summary judgment is proper as to each.  Gressett respectfully requests entry of summary judgment against the foregoing CoStar claims.

Finally, CoStar's request for leave to file a Second Amended Complaint adding claims for contributory and vicarious infringement should be denied as untimely and unfairly prejudicial to Gressett. Pleading further, Gressett requests all other and further relief to which it may be justly entitled.

Respectfully Submitted,

GREENBERG TRAURIG, L.L.P.

By: /s/ Mary-Olga Lovett
Mary-Olga Lovett (*pro hac vice*)
Pamela A. Ferguson (*pro hac vice*)
Christopher C. Miller
1000 Louisiana, Suite 1700
Houston, Texas  77002
Telephone:    713-374-3500
Facsimile:     713-374-3505
lovettm@gtlaw.com
fergusonp@gtlaw.com

Steven M. Schneebaum
Maryland Bar No. 04160
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: 202-530-8544
Facsimile:   202-261-2665
schneebaums@gtlaw.com

ATTORNEYS FOR DEFENDANT
RUSS A. GRESSETT

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2009, a true and correct copy of the foregoing instrument was served upon all parties by and through their counsel of record, via the Court's CM/ECF system, pursuant to FED. R. CIV. P. 5.

I further certify that on December 24, 2009, a true copy of the foregoing was sent by U.S. mail to the following unrepresented parties:

Mark Field
Alliance Valuation Group
638 Camino De Los Maries, Suite H130A
San Clemente, CA 92673

and

Lawson Valuation Group, Inc.
8895 N. Military Trail, Suite 304E Palm Beach Gardens, FL 33410-6263

/s/Christopher C. Miller
Christopher C. Miller