**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

COSTAR REALTY
INFORMATION, INC., *et al.*,                    *

    Plaintiffs,
                          *

    v.                              Civil Action No.   AW-08-00663

MARK FIELD, *et al.*,                    *

    Defendants.                    *

\* \* \* \* \* \*

## MEMORANDUM OPINION

Pending before this Court are the following motions: (1) Defendant Pathfinder's Motion for Summary Judgment (Doc. No. 75); (2) Plaintiffs' Motion for Leave to Amend (Doc. No. 84); (3) Plaintiffs' Motion for Summary Judgment as to Defendant Gressett (Doc. No. 85); (4) Defendant Gressett's Cross-Motion for Summary Judgment (Doc. No. 89); (5) Plaintiffs' Motion for Default Judgment as to Defendant Mark Field (Doc. No. 94); (6) Defendant Pathfinder's Motion for Attorney's Fees (Doc. No. 99); and (7) Defendant Pathfinder's Motion for In Camera Review for its Motion for Attorney's Fees (Doc. No. 100).   The Court held a hearing on all pending motions on August 20, 2010.   For the reasons articulated below, the Court GRANTS IN PART AND DENIES IN PART all motions for summary judgment, DENIES Plaintiffs' Motion for Leave to Amend, GRANTS Plaintiffs' Motion for Default Judgment and Defendant Pathfinder's Motion for Attorney's Fees, and DENIES Pathfinder's Motion for an In Camera Review.

## FACTUAL BACKGROUND

Plaintiffs CoStar Realty Information, Incorporated, and CoStar Group, Incorporated, (collectively referred to as "CoStar") provide commercial real estate information through their Internet website, and is incorporated in Delaware with its principal place of business in Bethesda,

Maryland.  CoStar's website has a database that includes photographs of real property and enables its users to find property for sale or rent.  CoStar hires field researchers to gather this information and to take photographs of the property and registers the photographs for copyright protection.  Generally, CoStar issues licenses to authorized users to access the database and charges a subscription fee based on individual contracts with CoStar ("License Agreement").  Authorized users listed in License Agreements with Costar are assigned a username and passcode and then are permitted to access the database to, inter alia, make reproductions of the photographs or to use the compilation of the information contained in the database.  CoStar assigns authorized users with usernames and passwords to enter the database for them to use on a single computer, and in some cases, CoStar assigns users with login information for mobile use.  CoStar is able to track user access to its database by recording the IP addresses, which is an identifying number associated with a specific computer that displays when a computer accesses a website.

In the login portion of CoStar's website, the words "Login/Use Subject to Terms" appears in the area of the website where a user enters his or her username and password, and includes a hyperlink to the word "Terms," that when selected, sends the user to another webpage containing CoStar's Terms of Use.  (Doc. No. 80, 5.)  In relevant part, the Terms of Use prohibit authorized users from sharing their login information with unauthorized users and from providing unauthorized users with access to the database.  Moreover, the Terms of Use provide that only authorized users may access the database and defines an authorized user as an individual who is employed with or is an independent contractor for a CoStar customer and who is listed as a user under a License Agreement with CoStar.  In order to access the database, a user

must select a link to accept the Terms and Conditions upon the first use and at periodic intervals throughout the license term.

Many of the allegations in the Complaint involve the actions of Mark Field ("Field"), a named Defendant, who is doing business as Alliance Valuation Group ("Alliance").  Alliance had a License Agreement with CoStar, which CoStar alleges prohibited unauthorized users from sharing its passcode with third parties, from providing third parties with access to the database, or from sublicensing use of the database.  According to CoStar, Mark Field provided third parties with his login information and with access to the database, including Defendant Pathfinder Mortgage Company ("Pathfinder").   Furthermore, CoStar contends that Alliance listed individuals who were not its employees or independent contractors as authorized users in the License Agreement, including Defendant Russell Gressett ("Gressett").  CoStar has filed the instant Motion for Default Judgment against Field, claiming that he has failed to comply with discovery request or to conduct any discovery in this matter.  Field has not filed a response to the Motion for Default Judgment against him.

Pathfinder provides mortgage services to real estate customers and represents that it has ceased its business operations in early 2009.  As early as October 2002, the CoStar/Alliance License Agreement listed Brad Christensen ("Christensen"), part owner and president of Pathfinder, as an employee of Alliance and an authorized user.  CoStar discovered that Christensen was no longer affiliated with Alliance and thus terminated his account in December 2005.   However, CoStar alleges that Christensen continued to access the database from December 2005 through January 2008, apparently by using the accounts of Field and Barbara Quannie, both of whom are listed as authorized users under Alliance's License Agreement with CoStar.  According to CoStar, IP addresses assigned to Pathfinder's computers were recorded in

conjunction with over sixty (60) logins to CoStar's database.  Pathfinder acknowledges that Field accessed CoStar's database from its computers on occasion when Field was in its offices.  CoStar claims that at least two logins associated with Pathfinder's IP addresses coincided with IP addresses frequently associated with Field's account, indicating that someone used a Pathfinder computer to login into the database at the same time that someone accessed the database from a different computer under Field's login information.  Moreover, CoStar alleges that logins associated with Pathfinder's computers and Field's account occurred forty-five (45) minutes apart, although Pathfinder's office is more than a one-hour car drive from Field's office.  CoStar sued Pathfinder for direct copyright infringement, breach of contract, and violation of 18 U.S.C. § 1030 involving fraud in connection with computer activity.  Pathfinder has moved for summary judgment (Doc. No. 75) on all claims against it.

Defendant Gressett is "a commercial real estate broker and appraiser residing in the Houston, Texas, area" and is doing business under two names, TGC Realty Counselors and National Valuation Group-Houston.  (Doc. No. 85, 5.)  Alliance listed Gressett as an authorized user under its License Agreement with CoStar on April 9, 2004, and provided CoStar with a California address and telephone number on the form used to obtain mobile access to the CoStar database for Gressett.  However, at some point CoStar discovered that Gressett is not an employee of Alliance and that Alliance sublicensed access to the CoStar database to Gressett for a fee.  Furthermore, Gressett admitted in his deposition that he provided access to the CoStar database to other third parties, namely QVAL Property Advisors ("QVAL"), Steve Bilick, Gerald A. Teel Co. ("Teel"),[1] and Situs Companies for various fees.  According to Plaintiffs, the IP addresses assigned to computers of these companies have been associated with logins to the

---

[1] Gerald A. Teel Co. was originally listed as a Defendant in this matter, but Plaintiffs have stipulated to the dismissal of Gerald A. Teel Co. as a Defendant (Doc. no. 35).

CoStar database through Gressett's account over 200 times during a forty-three (43) month period.  At least during some of the login sessions from various computers associated with these third parties, CoStar alleges that it has records indicating that reports involving different real estate properties, which included the copyrighted photographs of CoStar, were copied and saved on the companies' computers.  CoStar sued Gressett for breach of contract, fraud, direct copyright infringement, and violation of 18 U.S.C. § 1030.  CoStar filed a Motion for Leave to File Second Amended Complaint (Doc. No. 84) to add claims of contributory and vicarious copyright infringement against Gressett.  CoStar also filed a Motion for Summary Judgment Against Defendant Russell Gressett (Doc. No. 85) as to the contributory and vicarious copyright infringement claims and the breach of contract claim.  Gressett filed a Cross-Motion for Summary Judgment (Doc. No. 89) for all claims against him, except breach of contract.

## MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MARK FIELD

CoStar seeks an Entry of Default and a Default Judgment against Field for his failure to attend his properly noticed deposition and failure to respond to discovery requests.  At CoStar's request, the Court Order Field to Show Cause Why Default Should Not Be Entered on November 2, 2009, and gave Field fourteen (14) days to respond.  Field has not filed a response to the show cause order, or to CoStar's pending motion.  Under Rule 37(d) of the Federal Rules of Civil Procedure, where a party fails to attend its own deposition or fails to respond to interrogatories or request for inspection of documents after being properly served with notification, the Court may order sanctions provided under Rule 37(b)(2)(A)(i)-(iv).  These sanctions include "striking pleadings" and "rendering a default judgment against the disobedient party" as specifically requested by CoStar.  Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).  In addition, Rule 37(d) permits the Court to award attorney's fees in addition to the sanctions awarded.  The Fourth Circuit has articulated a four-factor test for courts to consider when deciding to enter default under Rule 37,

namely: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (citation omitted). The appropriateness of a Court's entry of a default judgment is further bolstered when the defendant has fair notice of the possibility of such an entry. *Steigerwald v. Bradley*, 229 F. Supp. 2d 445, 450 (D. Md. 2002). Furthermore, Rule 55 of the Federal Rules of Civil Procedure provides that the "when a party against whom a judgment for affirmative relief is sought has failed to . . . defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

As CoStar argues, and the Court agrees, the entry of default and default judgment is appropriate given that the evidence shows that Field has completely failed to respond to any discovery request, or to Plaintiffs' correspondence about discovery, and failed to attend his deposition after receiving repeated notification from CoStar. Field has not explained his failure to comply with discovery, as he has not filed any response to Plaintiffs' motion. In fact, Field has not respond to the Court's Show Cause Order issued on November 2, 2009, and has not responded to Plaintiffs' correspondences since July 2009. Moreover, CoStar alleges that Field provided access to its database to all the other Defendants, and the lack of discovery from Field potentially jeopardizes CoStar's ability to obtain evidence against the other Defendants. The Court is satisfied that Field has received proper notice of these various requests and correspondences because Costar has provided documentation that it sent notifications to the mailing address listed for Field in this litigation and to Field's e-mail address. The Court has received no notification that Field has changed his address and notes that as a pro se litigant,

Field has a continuing obligation to keep the clerk informed of an address "where notices can be served" in this District subject to entry of default judgment for failure to comply with this rule. Local Rule 102(b)(iii).  Thus, the Court believes that Field's utter failure to defend this matter or to otherwise cooperate with Plaintiffs and this Court warrants the striking of Field's answer and the entry of default judgment and finds that a less drastic sanction will be ineffective. Accordingly, the Court will grant Plaintiffs' Motion for Default Judgment and will defer ruling on damages and attorneys' fees until after resolution of the claims against the remaining Defendants.

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiffs seek to amend their complaint to add claims of contributory and vicarious copyright infringement against Defendant Gressett under Federal Rules of Civil Procedure 15(a)(2) and 15(b)(2).  In considering the Plaintiffs' motion, the Court is reminded that "the Federal Rules 'allow liberal amendment of pleadings throughout the progress of a case.'" *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367-68 (4th Cir. 2001) (citations omitted).  Although not specifically addressed by the Fourth Circuit, other Courts have held that Rule 15(b) "applies at the summary judgment stage," and that "when both parties squarely address[ ] [a claim] in their summary judgment briefs, it may be argued that the complaint was constructively amended." *Handzlik v. United States,* 93 Fed. App'x 15, 17 (5th Cir. 2004) (citing *Whitaker v. T.J. Snow Co.,* 151 F.3d 661, 663 (7th Cir. 1998)); see also *People for Ethical Treatment of Animals*, 263 F.3d at 367-68 (finding that plaintiff moved for leave to amend in its summary judgment briefs and that the district court granted such motion in its ruling on the summary judgment motion).  However, as the court in *Juergens v. Watt* recently held, "subsection (b) of Rule 15 applies only to amendments during and after trial."  No. 3:08CV007-SAA, 2009 WL 1375976 (N. D. Miss. May 15, 2009).  In fact, the headings of Federal Rule of

Civil Procedure 15 clearly state that subsection (a) applies to "Amendments Before Trial" and subsection (b) applies to "Amendments During and After Trial." Thus, this Court will only consider Plaintiffs' Motion for Leave to Amend under a Rule 15(a)(2) analysis. [2]

Under Rule 15(a), a party may amend its pleading where more than twenty-one (21) days have elapsed since service of a responsive pleading "only with the opposing party's written consent or the court's leave." In addition, Local Rule 103.6(d) requires "counsel to attempt to obtain consent" from opposing counsel "before filing a motion requesting leave to file an amended pleading." Courts "should freely grant leave when justice so requires," and should deny a motion to amend only if the opposing party would be subject to undue prejudice, the movant acted with bad faith, or the amendment would be futile. *IGEN Int'l. Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303 (4th Cir. 2003); *see also Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ("Delay alone is an insufficient reason to deny leave to amend a pleading; rather, the delay must be accompanied by prejudice, bad faith, or futility."). However, the Fourth Circuit explained that a party seeking to amend a pleading "after the deadlines provided by a scheduling order have passed," must show good cause "to justify leave to amend the pleading" as provided by Rule 16(b)(4). *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

Here, CoStar seeks to amend its complaint nearly six months after the June 1, 2009, deadline provided in the scheduling order for amendments to the pleadings and approximately three months after the August 31, 2009, deadline for completion of discovery. CoStar contends that Defendant Gressett will not be prejudiced by the addition of these two claims against him

---

[2] The Court recognizes that the tactical difference between requesting leave to amend under Rule 15(b)(2), which would require the Court to amend the pleadings if it finds that the parties have "tried an issue by express or implied consent" while an amendment under Rule 15(a) is within the Court's discretion. Nevertheless, the Court believes that seeking to amend a pleading before a trial must be analyzed under Rule 15(a).

because it alleged the facts necessary to hold Gressett liable on these claims as early as its First Amended Complaint, filed on April 3, 2008, in which CoStar asserted that Gressett provided his login information to other individuals who were not authorized users.   Furthermore, CoStar points to Gressett's Answer to the First Amended Complaint, answers to CoStar's interrogatories, and deposition testimony to show that Gressett has admitted to providing his login information to unauthorized users and receiving a fee in exchange.   CoStar explains that it did not seek to amend by the June 1, 2009, deadline for amendment to the pleadings because it did not receive Gressett's answers to interrogatories until July 21, 2009, and did not conduct his deposition until July 28, 2009.   CoStar also emphasized that the Court, in its Order denying another Defendant's Motion to Dismiss, acknowledged that CoStar alleged that Gressett had engaged in an enterprise to sell his passcode to third parties.   Thus, CoStar contends that the parties have always litigated the case with the contributory and vicarious copyright infringement claims in mind.

Defendant counters that CoStar's Motion to Amend is untimely.   First, Gressett points to CoStar's acknowledgment that it was aware of and pled facts suggesting that Gressett had accepted fees in exchange for providing his login information to unauthorized users as early as CoStar's First Amended Complaint, which CoStar filed on March 3, 2008.   Moreover, Gressett asserts that despite knowing of these facts at least since he provided answers to CoStar's interrogatories on July 21, 2009, and the taking of his deposition on July 28, 2009, CoStar waited until months after the expiration of the discovery deadlines to assert these additional claims against him.   Gressett claims that this delay causes him undue prejudice because it prevents him from conducting discovery with respect to the contributory and vicarious copyright right infringement claims.   The Court finds that Plaintiffs have not provided a sufficient explanation

for why they waited until months after the close of discovery to seek leave to amend their Complaint, especially where the facts related to these two claims were alluded to as early as the First Amended Complaint.   Accordingly, the Court denies Plaintiffs' Motion for Leave to Amend.

## MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).   The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).   To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.   *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998).   Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment.   *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Given that the summary judgment motions concern different claims, the Court will address each in turn.   To the extent that the law on any claims overlap, the Court will simply refer to the section of this Opinion, which discusses the legal principles of that claim.

## I.     Defendant Pathfinder's Motion for Summary Judgment

Defendant Pathfinder primarily argues that it should be granted summary judgment to all claims against it because all of its documentation is in storage as a result of ceasing it operation; and thus, it "has been unable to identify any evidence within its control that allows it to determine whether any of its former employees accessed the CoStar database without authorization." (Doc. No. 75.)  It then conclusory asserts that CoStar does not have any evidence that it gained unauthorized access to CoStar's database.   CoStar counters that Pathfinder's motion does not refute the claims against it but merely asserts that it cannot determine whether it engaged in such actions.   Lastly, CoStar contends that it has evidence that a reasonable jury could rely on in finding that Pathfinder is liable for all claims asserted against it.[3]

### A.  Breach of Contract

Maryland law governs the state claims in this action because the parties have diversity of citizenship.  *See Mercantile-Safe Deposit & Trust Co. v. Chi. Title Ins. Co.*, No. CCB-05-2217, 2007 WL 892103, at *4 (D. Md. Mar. 20, 2007).   Under Maryland law, to prevail on a breach of contract claim, a plaintiff must show that the defendant owed plaintiff a contractual obligation and breached that obligation.  *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). CoStar seeks to establish the formation of a contract by an individual's act of affirmatively accepting the Terms of Use of its Internet database, which occurs when the individual clicks on a box labeled, "I agree."   There appears to be no Maryland case law directly addressing the formation of a contract in the Internet context; however, this Court has acknowledged that several other jurisdictions have enforced Internet Terms of Use contracts when a website provider requires its users to affirmatively click an "Agree" button before entering the website.

---

[3] Pathfinder failed to attend the 11:30 a.m. hearing, although the Court was advised that counsel for Pathfinder appeared at Court at 1:30 p.m.,  and the Court will rely on the arguments it raised in its briefings to address its summary judgment motion.

*CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669-70 (D. Md. 2009) (quoting *Burcham v. Expedia, Inc.*, No. 4:07CV1963, 2009 WL 586512, at *2 (E.D. Mo. March 6, 2009) (citing *A.V. v. iParadigms, L.L.C.*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008))); *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 921 (N.D. Ill. 2003). Furthermore, as the Court stated in its prior ruling on the Motion to Dismiss in this case, "failure to read an enforceable online agreement, 'as with any binding contract, will not excuse compliance with its terms.'" *CoStar Realty Info.*, 612 F. Supp. 2d at 669 (citing *Burcham,* 2009 WL 586513, at *2). Lastly, in finding that the non-licensed parties in this case were also bound by the forum selection contained in CoStar's term of use, the Court, in ruling on the Motion to Dismiss, found persuasive the holding in *Motise v. America Online, Inc.* In *Motise*, pursuant to a derivative rights theory "a third party user of a contracting party's online account is bound by the same user agreement as the contracting party even though the third party user was not presented with and did not assent to the online user agreement." 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004). Although this Court's earlier Memorandum Opinion n focused on the enforcement of the forum selection contained in the online agreements, these principles apply equally to all terms contained therein.

Here, Pathfinder never entered into a formal License Agreement with CoStar, although its president and part owner, Brad Christensen, was once listed as an authorized user and employee of Alliance under the Alliance/CoStar License Agreement. Pathfinder contends that Field, one its independent contractors who was an authorized user of the CoStar database under the CoStar/Alliance License Agreement, occasionally accessed the database on Pathfinder's computers. In support of its Motion for Summary Judgment, Pathfinder essentially argues that it is unable to determine whether any of its employees accessed the Plaintiffs' database without

authorization, specifically independent of Field's usage of its computers, because documentation related to such computer usage is now in storage.  As Plaintiffs counter, inability to determine one's liability is hardly a showing that one is entitled to judgment as a matter of law.

Instead, Plaintiffs have offered sufficient evidence that at least raises a reasonable inference that IP addresses assigned to Pathfinder's computers accessed CoStar's database via Field's account at least sixty (60) times from December 2005 through January 2008.  Plaintiffs explain that it has a mechanism to record the IP addresses, a computer's numerical identification, associated with each login to their database.  Plaintiffs contend that their records show that on at least two occasions the IP addresses assigned to Pathfinder's computers logged into the CoStar database via the Field account at the same that the Field account was logged into with the IP addresses more frequently associated with computers that Field generally used to assess the database.  Moreover, CoStar contends that it has records reflecting that Pathfinder's computers logged into Field's account within forty-five (45) minutes of recorded logins from computers associated with Field's office despite the fact that the car distance between Pathfinder's office and Field's office is at least one hour.

CoStar argues that this evidence at least raises a genuine dispute as to whether Pathfinder's agents accessed the CoStar database on its computers even when Field was not in its offices, which a reasonable jury could interpret to mean that Pathfinder accessed the database as an unauthorized user.  One of the conditions of CoStar's Terms of Use for its database is that unauthorized users could not access the website; thus, in drawing the inferences in favor of Plaintiffs, that Pathfinder assessed the database independent of Field's physical use of a Pathfinder computer, Pathfinder's use of Field's login information to access the database constitutes a breach of CoStar's Terms of Use.  Lastly, as the Court has already recognized,

Pathfinder's use of an authorized user's account is sufficient to establish that Pathfinder accepted the Terms of Use even where Pathfinder may not have affirmatively clicked the "agree" button before entering the database. Therefore, the Plaintiffs have presented sufficient evidence to raise a genuine dispute as to whether Pathfinder accepted the Terms of Use of the CoStar database by logging into the database without authorization, thereby breaching the Terms of Use prohibition on unauthorized users entering the database, making summary judgment inappropriate on this claim.

### B. Copyright Infringement

To prevail on a claim for copyright infringement, a plaintiff must prove (1) the ownership of a valid copyright and (2) the defendant copied protected elements of the work or otherwise violated a copyright owner's exclusive rights. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 341 (1991). Registration of the work within "five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the [registration] certificate." 17 U.S.C. § 410(c) (2006). Specifically relevant in this case, is the copyright owner's exclusive right to copy the copyrighted work. § 106. The Copyright Act defines the term "copies" as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." § 101. Furthermore, the Copyright Act provides that a "work is 'fixed' in a tangible medium of expression when its embodiment in a copy . . . under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of . . . images . . . that are being transmitted, is 'fixed'" . . . if a fixation of the work is being made simultaneously with its transmission." *Id.*

In *Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*, the court explained that "when a person browses a website, and by doing so displays [copyrighted material], a copy of the [work] is made in the computer's random access memory (RAM), to permit viewing of the material.  [I]n making a copy, even a temporary one, the person who browsed infringes the copyright" in the absence of express permission by license.  75 F. Supp. 2d 1290 (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993)).  As articulated in *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, "copies of webpages stored automatically in a computer's cache or random access memory ("RAM") upon a viewing of the webpage fall within the Copyright Act's definition of 'copy.'"  507 F.2d 511, 1096, 1105 (C.D. Cal. 2007) (citing *MAI Sys. Corp.*, 991 F.2d at 519).  The court in *Ticketmaster L.L.C.*, explained that the cache copy of a webpage, which is automatically stored in the temporary memory of a user's computer upon viewing a webpage, alone constitutes copyright infringement, especially where the infringer was a competitor of the copyright owner and engaged "in conduct that violate[d] the Terms of Use" of the webpage.  *Id.* at 1110.  *Ticketmaster L.L.C.*, distinguished the competitive and commercial browsing of a website that contained copyrighted material in violation of the website's Terms of Use from the Ninth Circuit's ruling in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), in which the fair use doctrine would protect an Internet user's noncommercial view of a webpage from liability arising from the automatic cache copy of the webpage in the computer's memory.

Pathfinder did not directly address the elements of CoStar's copyright infringement claims; rather it relies on a general argument that the cessation of its business operations makes it unable to determine whether its employees accessed CoStar's database in an unauthorized manner, namely by logging into Field's account from Pathfinder's computers when Field was not

present in Pathfinder's office.   As discussed above, Pathfinder's inability to defend against its liability is not a sufficient ground to grant summary judgment.  CoStar has produced certificates of registration from at least some of their copyrighted photographs contained in the Internet database, which indicates that CoStar registered the works within ninety-days (90) from first publication, and in the absence of rebuttal evidence, these certificates constitute prima facie evidence of ownership of valid copyrights.   CoStar also contends that it has evidence that Pathfinder "saved" reports of properties listed in its protected database, which resulted in Pathfinder's computers making an automatic copy of its copyrighted photographs in the creation of these reports in the temporary memory of Pathfinder's computers.  Furthermore, as discussed above, CoStar alleges that agents of Pathfinder accessed the database through another user's account, without the presence of that user, in violation of the website's Terms of Use.   As Pathfinder has not filed a reply to the arguments presented by CoStar, the Court finds that Plaintiffs have successfully demonstrated a genuine dispute of material fact concerning whether Pathfinder created reports of commercial properties during its alleged unauthorized login sessions to the CoStar database and whether the creation of the reports constitutes a copy as defined by the Act.  Therefore, the Court denies Pathfinder's Motion for Summary Judgment on the direct copyright infringement claim.

### C.  Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act ("CFAA") is primarily a criminal statute intended to "prohibit individuals from illicitly accessing" computers as defined by the statue.  18 U.S.C. § 1030.  The CFAA provides for a civil cause of action to "any person who suffers damage or loss by reason of a violation of this section . . . against the violator to obtain compensatory damages and injunctive relief or other equitable relief," but "only if the conduct involves [one] of the factors" enumerated in § 1030(c)(4)(A)(i).  *Id.* at § 1030(g).  It appears that CoStar is asserting

that Pathfinder violated sections § 1030(a)(2)(c) and (a)(4) of the CFAA.  Under § 1030(a)(2)(c) a person violates the CFAA by "intentionally access[ing] a computer without authorization or exceed[ing] authorized excess and thereby obtain[ing] information from a protected computer." A violation also occurs pursuant to § 1030(a)(4) when an individual "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . ." The CFAA defines "protected computer" as a computer which "is used in or affecting interstate or foreign commerce or communication."  § 1030(a)(2)(c); § 1030(e)(2)(B).  Therefore, the violations in this case must involve an interstate communication.  However, courts have already held that accessing an Internet website constitutes an interstate communication.  *Paradigm Alliance, Inc. v. Celeritas Techs., LLC,* 248 F.R.D. 598, 602 (D. Kan. 2008) ("It has been held that '[a]s a practical matter, a computer providing a 'web-based' application accessible through the internet would satisfy the 'interstate communication' requirement.'").

Moreover, of the factors listed in § 1030(c)(4)(A)(i), only subclause I, which provides that the violation must cause "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" applies to the facts of this case.  Plaintiffs do not assert that the Defendant's violation of the CFAA caused Plaintiffs to suffer any other injury listed under § 1030(c)(4)(A)(i), such as: impairment of medical treatment, physical injury, "a threat to public health or safety," damage[4] to a computer used by an entity of the United States Government, or "damage affecting 10 or more protected computers during any 1-year period."  Thus, in order for Plaintiffs to bring an action for violation of the CFAA, they must demonstrate that they suffered

---

[4] Under the CFAA, "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8).  However, because Plaintiffs claim does not involve one of the enumerated injuries of § 1030(c)(4)(a)(i) that relates to suffering "damage" as defined by the statute, the meaning of damage is irrelevant to the Plaintiffs' CFAA claim.

a qualifying "loss," as defined by the statute.  The CFAA defines "loss" as "any reasonable cost to the victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.  § 1030(e)(11).

The Court finds that Plaintiffs have presented sufficient evidence to demonstrate a material dispute of fact as to Pathfinder's liability for violation of the CFAA.  CoStar contends that it has established the jurisdictional threshold of §1030(c)(4)(A)(i)(I), which requires that the loss suffered as a result of the CFAA violation must exceed $5,000 before bringing a private civil suit, because the value of the license fees that Pathfinder would have paid CoStar for access to the database exceed $300,000.  Defendant Pathfinder did not raise an issue as to whether Plaintiffs claim of loss revenue satisfies the jurisdictional requirement for bringing a private cause of action under the CFAA in its motion for summary judgment.  However, as more fully discussed in section II.D, infra, the Court finds that Plaintiffs' claim of loss based solely on the lost revenue from the license fees that Plaintiffs would have recouped from Pathfinder if it had entered into a License Agreement is insufficient to qualify as a loss under the CFAA. Accordingly, the Court will dismiss the CFAA claim against Defendant Pathfinder.

## II.    CoStar and Defendant Gressett's Cross-Motions for Summary Judgment

CoStar seeks summary judgment against Gressett on claims for breach of contract and contributory and vicarious copyright infringement.  Gressett's cross-motion requests summary judgment on all claims asserted against him, except for breach of contract.  Although Defendant has sought a Motion for Leave to File a Surreply, such leave is not necessary pursuant to Local Rule 105.2.a.c. because the party filing a cross-motion may file a reply after the party who first filed a motion replies.

### A.  Breach of Contract

CoStar argues that Gressett's admission that he provided his login information to the passcode-protected database to unauthorized third parties, who in turn accessed the database, breached CoStar's Terms of Use prohibition against users sharing their login information with unauthorized parties.  Moreover, CoStar contends that Gressett accepted the Terms of Use when he affirmatively selected the "Agree" button on his first login to the database and on a monthly basis thereafter.  Gressett counters that he believed Alliance granted him a sublicense agreement that was not limited by the restrictions contained in the Terms of Use associated with the general login area.  Gressett counters that the Alliance/CoStar License Agreement expressly waived the general Terms of Use.  Moreover, Gressett argues that he is entitled to the defenses of ratification and waiver as to the contract claim.  Essentially Gressett asserts that CoStar's failure to object to his use of the passcode-protected database as an authorized user under the CoStar/Alliance License Agreement, despite the fact that he was not an employee or independent contractor of Alliance, ratified the terms of his sublicense agreement with Alliance.  Gressett also argues that CoStar's waiver of the Terms of Use requirement that authorized users must be an employee or independent contractor of a CoStar client in essence waives the prohibition against sharing login information with third parties.

As discussed in section I.A. above, a user's affirmative act of clicking an "Agree" button in order to enter the website binds the user to the Terms of Use associated with using the website.  The Court finds that CoStar has established that Gressett accepted the Terms of Use with evidence that its system required Gressett to select the "Agree" button before permitting him to enter the passcode database on his initial login attempt and on an a monthly basis thereafter. Moreover, Gressett has admitted to accessing the database, although he did not actually qualify as an authorized user under an existing License Agreement with CoStar, and to

sharing his login information with third parties.  The Court agrees with CoStar that admission of such acts are clear breaches of the provision against sharing login information with unauthorized users and use of the database by an unauthorized user.  Gressett has offered no evidence, other than his speculation and alleged hearsay, to argue that the Terms of Use associated with the login area of CoStar's passcode-protected database did not apply to the Alliance/CoStar License Agreement, under which he was listed as an authorized user.  Instead, the evidence presented by CoStar shows that the License Agreement between Alliance and CoStar specifically provides that individuals not listed as authorized users under the agreement may not use the licensed products, authorized users must be employees or independent contractors of the licensee, and has a clause incorporating the general Terms of Use provisions into the License Agreement.  Thus, the Court finds that Gressett's allegation that Alliance agents told him that the Terms of Use did not apply to the License Agreement between CoStar and Alliance is hearsay without any evidentiary support, besides his self-serving deposition testimony, which is insufficient to create a genuine dispute of material fact on this claim to survive summary judgment.

Furthermore, as CoStar argues, central to a defense of ratification in the contract context is the existence of a principal/agent relationship between the parties.  *See Proctor v. Metro Money Store Corp.*, 579 F. Supp. 2d 274, 740 (D. Md. 2008).  The Court is simply not convinced that Defendant has demonstrated any evidence that establishes that the licensor/licensee relationship between CoStar and Alliance makes Alliance an agent of CoStar to bind CoStar to contracts Alliance subsequently entered with alleged sublicensees.  Accordingly, the Court finds that the defense of ratification is inapplicable to the facts presented in this case.  Moreover, as CoStar asserts, essential to the defense of waiver is a showing that the plaintiff intended to "relinquish a known right" with "full knowledge . . . of facts which will enable him to take

effectual action for the enforcement of such rights." *Taylor v. Mandel*, 935 A.2d 671, 686-87 (Md. 2007). CoStar represents that it had no knowledge that Gressett was not an employee or independent contractor until just prior to filling the instant lawsuit. Gressett does not point to any evidence suggesting that CoStar was aware of his true association with Alliance, other than claiming that he spoke with CoStar's customer service agents. However, there is no evidence that Gressett in anyway indicated that he was not an employee or independent contractor of Alliance during those conversations to support Gressett's defense of waiver. Thus, the Court finds that CoStar has provided sufficient evidence, specifically Gressett's own admission that he accessed the passcode-protected database and shared his login information with third parties, to establish that Gressett breached the Terms of Use associated with use of the database. Finally, given that Gressett can only offer hearsay to support his claim that his agreement with Alliance was not restricted by the general Terms of Use provisions contained in the Alliance/CoStar License Agreement, the Court cannot find that Gressett has demonstrated that a genuine dispute of material fact exists on the breach of contract claim, and summary judgment is granted to CoStar.

### B. Copyright Infringement

The Court outlined the general provisions of copyright infringement in section I.B. above. CoStar has brought a direct copyright infringement claim against Defendant Gressett. As the Court indicated at the hearing, and as discussed above, the Court will not permit Plaintiffs to add claims of contributory and vicarious copyright infringement against Defendant Gressett at this late stage in the litigation. To the extent that Gressett seeks summary judgment as to the direct copyright infringement claim, the Court finds that he has not provided a sufficient basis to dismiss the claim as a matter of law. CoStar's evidence that Gressett accessed its password-protected database, which contains its copyrighted photographic images, raises a genuine dispute

of material fact as to whether Gressett engaged in direct copyright infringement when he viewed

the copyrighted work on a website that he did not have proper authorization to enter.   Moreover,

as held in *Intellectual Reserve, Inc.*, simply browsing a website that contains copyrighted

material is sufficient to constitute copyright infringement because a copy of the work is made in

the computer's RAM to enable the images to display on the computer monitor.   Thus, Gressett's

Motion for Summary Judgment as to the direct copyright infringement claim is denied.   CoStar

has not sought summary judgment on its direct copyright infringement claim against Gressett;

and thus, Gressett's liability for direct copyright infringement is an issue reserved for trial.[5]

### C. Fraud

Under Maryland law, to prevail on a claim for fraud a plaintiff must prove:

> (1) the defendant made a false representation to the plaintiff, (2) that its
> falsity was either known to the defendant or that the representation was
> made with reckless indifference as to its truth, (3) that the
> misrepresentation was made for the purpose of defrauding the plaintiff,
> (4) that the plaintiff relied on the misrepresentation and had the right to
> rely on it, and (5) that the plaintiff suffered compensable injury resulting
> from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008).   Gressett argues there is no evidence

that he represented to CoStar that he was an employee or independent contractor of Alliance.

Instead, Gressett contends that the evidence presented by CoStar shows that Alliance, not

Gressett, communicated that Gressett was an employee or independent contractor to secure login

information for Gressett under the CoStar/Alliance License Agreement.   Moreover, Gressett

---

[5] Gressett also argues that an affirmative defense of estoppel prevents the Court from granting summary judgment to Plaintiffs on their claims of copyright infringement.   As held by the Fourth Circuit in *Service & Training, Inc. v. Data General Corp.*, "equitable estoppel may deprive a plaintiff of an otherwise meritorious copyright infringement claim."   963 F.2d 680, 689-91 (4th Cir. 1992).   In order to prevail on its defense of estoppel, a defendant must establish "four elements: (1) plaintiff knew the facts of defendant's infringing conduct, (2) plaintiff intended that its conduct be acted on or so acted that defendant had a right to believe it was so intended, (3) defendant was ignorant of the true facts, and (4) defendant was injured by its reliance on plaintiff's conduct." *N.A.D.A. Servs. Corp. v. Bus. Data of Va., Inc.*, 651 F. Supp. 44, 49 (E.D. Va. 1986).   However, the Defendant has not provided sufficient evidence to show that Plaintiffs were aware of the Defendant's purported infringement prior to engaging in a primarily investigation before bringing the instant claim for the Court to find that Plaintiffs intended for their silence to induce the Defendant to infringe its copyrights.   Accordingly, the Court does not find that Gressett is entitled to the defense of estoppel.

argues that there is no evidence demonstrating that he intended to deceive CoStar as to his association with Alliance.  Gressett reasserts his allegation that Alliance told him that Alliance accurately represented his relationship in obtaining the login information from CoStar.  CoStar counters that Gressett's act of accepting the Terms of Use when he logged into his account, which specifically limits use of the database to authorized users and defines authorized users as employees or independent contractors of CoStar's clients, demonstrates that Gressett represented himself as an employee or independent contractor of Alliance.  CoStar also argues that Gressett's conversations with its customer support employees, in which Gressett "never identified himself as not being an employee of Alliance," demonstrates that Gressett acted with intent to defraud CoStar.

The Court believes that CoStar has sufficiently shown a genuine dispute of material fact as to whether Gressett's use of the database and his conversation with a CoStar customer service agent constitute as misrepresentations to CoStar that he was an authorized user.  Moreover, because hearsay evidence is insufficient to support or defeat summary judgment, Gressett's allegation that he did not act with the intent to deceive CoStar because Alliance's agents told him they had correctly represented his association with Alliance in order to secure his login information is insufficient to warrant summary judgment on this claim.  Therefore, the Court denies Gressett's Motion for Summary Judgment on the fraud claim.

### D.  Computer Fraud and Abuse Act

Gressett does not dispute that his actions establish a violation of the CFAA; however, he argues that CoStar's allegation that it lost profits from the unpaid license fees that it would have otherwise obtained, is insufficient to show "damage or loss" as required under the statue for bringing a private civil action.  As discussed above, the CFAA provides a civil cause of action for "any person who suffers *damage or loss* by reason of a violation of this section . . . against

the violator to obtain compensatory damages and injunctive relief or other equitable relief."   §
1030(g) (emphasis added).   The parties dispute whether the term "loss," as defined under the
statute, requires an "interruption of service." Despite the Plaintiffs' contentions, the Court has
not ruled that Plaintiffs' claim for lost revenue from the misuse of its passcode-protected
database alone meets the statutory requirements for bringing this civil action under the CFAA.
On the contrary, the Court merely held that Plaintiffs' allegation as to the injury that they
suffered was sufficient to "pled the jurisdictional amount for loss required under the statute" in
order to survive the Defendant's Motion to Dismiss.

As discussed above in section II.C., Plaintiffs are attempting to bring their claim under
the CFAA by alleging that the Defendant's violation caused it to suffer loss totaling at least
$5,000 in value during a one-year period pursuant to subclause I of § 1030(c)(4)(A)(i).   As
recognized by *Frees, Inc. v. McMillian*, subclause I of § 1030(c)(4)(A)(i) requires a private
plaintiff to meet a minimum threshold amount of $5,000 of qualifying losses, unlike the other
factors listed in this section.   *See* No. 05-1979, 2007 WL 2264457, at *2 ("If the plaintiff has
suffered only 'loss,' the statute requires the plaintiff to establish a jurisdictional threshold, or
'loss' aggregating at least $5,000 in value, to maintain a cause of action.") (citation omitted).   As
discussed above, the CFAA defines the term "loss" as "any reasonable cost to the victim,
including the cost of responding to an offense, conducting a damage assessment, and restoring
the data, program, system, or information to its condition prior to the offense, and any revenue
lost, cost incurred, or other consequential damages incurred because of interruption of service."
§ 1030(e)(11).

Most courts have found that "the CFAA does not recognize lost revenue damages as
'loss' unless it was 'incurred because of interruption of service." *Global Policy Partners, LLC v.*

24

*Yessin*, 686 F. Supp. 2d 642, 653 (E. D. Va. 2010).  For instance, in *Nexans Wires S.A. v. Sark-USA, Inc.*, the court held that "the plain language of the statute treats lost revenues as a different concept from incurred costs, and permits recovery of the former only where connected to an interruption of service."  166 Fed. App'x 559, 562-63 (2nd Cir. 2006).  Similarly, the court in and *AtPac, Inc. v. Aptitude Solutions, Inc.*, explained that "the definition of 'loss' itself makes clear Congress's intent to restrict civil actions under subsection (I) to the traditional computer "hacker" scenario-where the hacker deletes information, infects computers, or crashes networks."  No. Civ. 2:10-294 WBS KJM, 2010 WL 3069255, at *10 (E.D. Cali. Aug. 4, 2010). Thus, the court concluded that loss of revenue "must result from the unauthorized breach itself" to constitute sufficient loss under the CFAA.  *Id.*

However, Plaintiffs, as originally argued in their Opposition to the Defendant's Motion to Dismiss, urge this Court to recognize the holdings of several other cases that Plaintiffs assert support their argument that the term "loss" is not limited to violations that cause an interruption of service.  In *Frees Inc.*, the court held that "the terms 'damage' and 'loss' are terms of art used to define a jurisdictional threshold; they do not control or limit what damages are available in a civil action if the substantive and thresholds standards are not met."  2007 WL 2264457, at *6. In sum, the court engaged in statutory interpretation of the term "compensatory damage" in § 1030(g) and concluded that "lost profits" are recoverable under the ordinary meaning of "compensatory" and "economic" damages.  *Id.* at *5.  The court further explained that Congress intended that the "required monetary threshold" to distinguish between a misdemeanor or felony offense for violation of the CFAA in a criminal context, but does not indicate that Congress intended "to limit the scope of recoverable damages in a civil action."  *Id.* at *6.  The Court does not find the reasoning of *Frees Inc.*, persuasive, however, because it appears to isolate the term

"compensatory damages" from the rest of the requirements of bringing a civil action under § 1030(g).  As outlined above, § 1030(g) provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclasses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

The language of this section creates two requirements that if met, will permit the plaintiff to recover "compensatory damages."  The beginning of the sentence sets forth the requirement that the plaintiff must suffer a "damage" or "loss" because of a violation.  The second requirement under § 1030(g) is that the violation must cause one of the five injuries listed in § 1030(c)(4)(A)(i).  In other words, a plaintiff is not entitled to "compensatory damages" unless he or she can first demonstrate the violation caused a "damage" or "loss," as those terms are defined by the statute.  Thus, at issue in this case is not whether the profits lost as a result of the Defendant's circumvention of the license fee charged for access to the passcode-protected database constitutes as compensatory damages under the statute; instead the appropriate inquiry is whether such injury satisfies the definition of the term "loss" under the CFAA.

The other cases that CoStar relies on to support its position are similarly unpersuasive.  In sum, these cases primarily addressed whether physical impairment was necessary under the definition of the term "damage," but do not provide convincing reasoning for whether the term "loss" requires an interruption of service.  *See generally, Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004) (holding that loss of business and loss of goodwill are economic damages under the CFAA but failing to discuss how the court reached its determination); *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991 (E.D. Cali. 2007) (explaining that unauthorized access that results in an impairment to the integrity of data

or information, as provided under the definition of "damage," is sufficient although data is not physically changed or erased, but failing to address whether loss required interruption of service); *George S. May Int'l Co. v. Hostetler*, No. 04 C 1606, 2004 WL 1197395 (N.D. Ill. May 28, 2004) (holding that defendant's infringement of plaintiff's copyrighted material that defendant downloaded from a protected computer qualified as impairment of the integrity of copyrighted information but did not address whether such action constituted as "loss" under the CFAA statute). In fact, *Pacific Aerospace & Electronics, Inc. v. Taylor*, a case Plaintiffs posit in support of their position, reaches its decision that any loss suffered as a result of any unauthorized access of a protected computer is actionable based on another case that explicitly interpreted the term "loss" under its ordinary meaning because the CFAA statute had not yet defined the term. 295 F. Supp. 2d 1188, 1197 (E.D. Wash. 2003) (citing *EF Cultural Travel BV, EF v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001) (holding that "in the absence of a statutory definition for 'loss,'" the court would apply its ordinary meaning, which the court found to broadly mean any "detriment, disadvantage, or deprivation . . .").

Finally, CoStar argues that the definition of the term "loss" should be broadly interpreted to include "any reasonable costs," and that Congress only intended to provide a non-exhaustive list of the types of injuries enumerated in the definition. However, as held in *Oil States Skagit Smatco, LLC v. Dupre*, this Court is persuaded by the rationale of courts holding that a violation of the CFAA must cause an interruption of service in order for lost revenue to constitute as a qualifying "loss" under the statute because, otherwise, the language of "because of interruption of service" in the definition of "loss" would be inoperative and violate a rule of statutory interpretation. No. 09-4508, 2010 WL 2605748, at *2 (E.D. La. June 21, 2010). Accordingly, the Court grants Defendant's Motion for Summary Judgment as to the CFAA claim.

## MOTION FOR ATTORNEY'S FEES

On September 24, 2009, nearly three weeks after the Court Ordered August 31, 2009, deadline for the completion of discovery, CoStar filed a Motion to Compel against Defendant Pathfinder alleging that its corporate designee provided deficient answers in his deposition testimony.   On November 10, 2009, Magistrate Judge Schulze denied CoStar's Motion to Compel as untimely and failing to specify the deficiencies in the corporate designee's deposition testimony.   Pathfinder seeks counsel fees for successfully opposing the Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), which provides:

> If the [Motion to Compel] is denied, the court . . .  must, after giving an opportunity to be heard require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award or expenses unjust.

"An individual's conduct is found to be 'substantially justified' if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' *Burkett ex rel. Estate of Burkett v. AIG Claim Servs., Inc.*, 244 F.R.D. 328, 330 (N.D.W. Va. 2005) (citing Charles Allen Wright et al., *Federal Practice and Procedure: Civil 2d* § 2288 (1994) ("Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule.").  Moreover, "where a prevailing party also acted unjustifiably," then the court may determine that an award of attorney's fees is unjust.   Fed. R. Civ. P. 37 advisory committee's note.

CoStar argues that it was justified in filing its Motion to Compel after the close of discovery because the deposition that revealed Pathfinder's failure to adequately comply with discovery request was not was taken until August 17, 2009.  Plaintiffs contend that it did not

receive the transcript of this deposition until August 27, 2009, three days before the close of discovery, and that it also attempted to resolve the discovery dispute with Defendant before involving the Court.   As Defendant Pathfinder argues, however, CoStar has not adequately explained why it did not seek an extension of the discovery deadline before filing the Motion to Compel after discovery closed.   Thus, the Court cannot find that CoStar was substantially justified in filing the Motion to Compel after the discovery deadline.   Furthermore, CoStar contends that it demonstrated the deficiency of Pathfinder's corporate designee's deposition testimony, namely that the designee did not educate himself about communications between Pathfinder's president and Alliance.   However, as Magistrate Judge Schulze explained, the arguments CoStar raised on the deficiency of the deposition testimony only shows what CoStar believed Pathfinder should have done to prepare for the investigation but does not demonstrate how such action would have improved the designee's ability to answer the deposition questions.

As Magistrate Judge Schulze recognized, Pathfinder is a nearly bankrupt party that has placed all of its business documents in storage and does not have employees to review the documents.   Although Pathfinder made the documents in storage available to CoStar for inspection, CoStar failed to undertake such an inspection.   Accordingly, the Court cannot find that Pathfinder acted unjustifiably in responding to CoStar's discovery request, including preparing its corporate designee for his deposition.   CoStar alleges that Pathfinder's attorney, who also original served as counsel for Defendant Mark Field, refused to assist CoStar in locating Field for purposes of CoStar's discovery but was somehow successful in persuading Field to submit an affidavit in support of Pathfinder's Motion for Summary Judgment demonstrates that an award of attorney's fees would be unjust in this situation.   The Court does not find Field's decision to provide discovery to one party over another supports a finding that

Pathfinder acted unjustly.   If anything such unjust action occurred because of Field, the defaulting party, and as Pathfinder's attorney no longer represents Field, he had no authority to control whom Field choose to assist in this litigation.   Nevertheless, as the Court explained during the hearing, the Court will only award Pathfinder for three hours worth of attorney's fees as the reasonable fee that Pathfinder's counsel expended in opposing the Motion to Compel. Moreover, because counsel for Pathfinder did not appear at the hearing, the request for an In Camera Review of Attorney's Fees is denied.   Accordingly, the Court finds that Pathfinder is entitled to $900, which constitutes three hours of work at a rate of $300 per hour, as reasonable attorney's fees for prevailing in its opposition to the Plaintiffs' Motion to Compel.

## CONCLUSION

In sum, the Court grants entry of default as to Defendant Mark Field.   Moreover, the only remaining claims against Defendant Pathfinder are breach of contract and copyright infringement.   As to Defendant Gressett, the Court grants Plaintiffs summary judgment for the breach of contract claim and denies Plaintiffs' request to assert claims for contributory and vicarious copyright infringement against him.   Moreover, the Court grants Defendants Gressett and Pathfinder summary judgment on the Computer Fraud and Abuse Act claim.   Thus, the remaining claims against Defendant Gressett are fraud and direct copyright infringement, and the claim for damages for the breach of contract claim.

For the reasons set forth in this Memorandum Opinion, and articulated during the hearing held on August 20, 2010, the Court DENIES Plaintiffs' Motion for Leave to Amend (Doc. No. 84) and Defendant Pathfinder's Motion for an In Camera Review of Attorney's Fees (Doc. No. 100).   The Court GRANTS Plaintiffs' Motion for Default Judgment against Defendant Field (Doc. No. 94) and Defendant Pathfinder's Motion for Attorney's Fees (Doc. No. 99).   Finally,

the Court GRANTS IN PART AND DENIES IN PART all Motions for Summary Judgment

(Doc Nos. 75, 85, and 89).


__August 23, 2010__                                   _____/s/_____
      Date                                                Alexander Williams, Jr.
                                                United States District Court Judge