# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC, *et al*. <br> Plaintiffs, <br><br> v. <br><br> MARK FIELD D/B/A ALLIANCE EVALUATION GROUP, *et al.*, <br> Defendants. | Action No. 08:08–CV–0663—AW |

## **MEMORANDUM OPINION**

This case was filed on March 13, 2008. A bench trial was conducted in this matter on October 28, 2010. (Doc. No. 108). The Court has received the parties proposed findings of fact and conclusions of law in this matter and makes the findings of fact and conclusions articulated herein.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs CoStar Realty Information, Inc., and CoStar Group, Inc., (collectively referred to as "CoStar") provide commercial real estate information through their Internet website. CoStar is incorporated in Delaware with its principal place of business in Bethesda, Maryland. CoStar's website has a database that includes photographs of real property and enables its users to find property for sale or rent. CoStar hires field researchers to gather this information and to take photographs of the property and registers the photographs for copyright protection. Generally, CoStar issues licenses to authorized users to access the database and charges a subscription fee based on individual contracts with CoStar ("License Agreement").

Authorized users listed in License Agreements with Costar are assigned a username and passcode and then are permitted to access the database to, inter alia, make reproductions of the photographs or to use the compilation of the information contained in the database. CoStar assigns authorized users with usernames and passwords to enter the database for them to use on a single computer, and in some cases, CoStar assigns users with login information for mobile use. CoStar is able to track user access to its database by recording the IP addresses, which is an identifying number associated with a specific computer that displays when a computer accesses a website.

In the login portion of CoStar's website, the words "Login/Use Subject to Terms" appears in the area of the website where a user enters his or her username and password, and includes a hyperlink to the word "Terms," that when selected, sends the user to another webpage containing CoStar's Terms of Use. (Doc. No. 80, 5.) In relevant part, the Terms of Use prohibit authorized users from sharing their login information with unauthorized users and from providing unauthorized users with access to the database. Moreover, the Terms of Use provide that only authorized users may access the database and defines an authorized user as an individual who is employed with or is an independent contractor for a CoStar customer and who is listed as a user under a License Agreement with CoStar. In order to access the database, a user must select a link to accept the Terms and Conditions upon the first use and at periodic intervals throughout the term.

Many of the allegations in the Complaint involve the actions of Mark Field ("Field"), a named Defendant, who is doing business as Alliance Valuation Group ("Alliance"). Alliance had a License Agreement with CoStar, which CoStar alleges prohibited unauthorized users from sharing its passcode with third parties, from providing third parties with access to the database,

or from sublicensing use of the database. According to CoStar, Mark Field provided third parties with his login information and with access to the database, including Defendant Pathfinder Mortgage Company ("Pathfinder"). Furthermore, CoStar contends that Alliance listed individuals who were not its employees or independent contractors as authorized users in the License Agreement, including Defendant Russell Gressett ("Gressett").

Pathfinder provides mortgage services to real estate customers and represents that it has ceased its business operations in early 2009. As early as October 2002, the CoStar/Alliance License Agreement listed Brad Christensen ("Christensen"), part owner and president of Pathfinder, as an employee of Alliance and an authorized user. CoStar discovered that Christensen was no longer affiliated with Alliance and thus terminated his account in December 2005. However, CoStar alleges that Christensen continued to access the database from December 2005 through January 2008, apparently by using the accounts of Field and Barbara Quannie, both of whom are listed as authorized users under Alliance's License Agreement with CoStar. According to CoStar, IP addresses assigned to Pathfinder's computers were recorded in conjunction with over sixty (60) logins to CoStar's database. Pathfinder acknowledges that Field accessed CoStar's database from its computers on occasion when Field was in its offices. CoStar claims that at least two logins associated with Pathfinder's IP addresses coincided with IP addresses frequently associated with Field's account, indicating that someone used a Pathfinder computer to login into the database at the same time that someone accessed the database from a different computer under Field's login information. Moreover, CoStar alleges that logins associated with Pathfinder's computers and Field's account occurred forty-five (45) minutes apart, although Pathfinder's office is more than a one-hour car drive from Field's office.

Defendant Gressett is "a commercial real estate broker and appraiser residing in the Houston, Texas, area" and is doing business under two names, TGC Realty Counselors and National Valuation Group-Houston. (Doc. No. 85, 5). Alliance listed Gressett as an authorized user under its License Agreement with CoStar on April 9, 2004, and provided CoStar with a California address and telephone number on the form used to obtain mobile access to the CoStar database for Gressett. However, at some point CoStar discovered that Gressett is not an employee of Alliance and that Alliance sublicensed access to the CoStar database to Gressett for a fee. Furthermore, Gressett admitted in his deposition that he provided access to the CoStar database to other third parties, namely QVAL Property Advisors ("QVAL"), Steve Bilick, Gerald A. Teel Co. ("Teel"), and Situs Companies for various fees. According to Plaintiffs, the IP addresses assigned to computers of these companies have been associated with logins to the CoStar database through Gressett's account over 200 times during a forty-three (43) month period. At least during some of the login sessions from various computers associated with these third parties, CoStar alleges that it has records indicating that reports involving different real estate properties, which included the copyrighted photographs of CoStar, were copied and saved on the companies' computers.

In an Order entered on August 23, 2010, the Court granted Plaintiff's Motion for Default Judgment against Defendant Mark Field and granted summary judgment to Defendant Pathfinder and Defendant Gressett as to the Computer Fraud and Abuse Claim. Summary judgment was also granted to Plaintiffs against Defendant Gressett as to the breach of contract claim. The following claims were left for trial: 1) Breach of Contract as to Defendant Pathfinder; 2) Direct Copyright Infringement as to Defendant Pathfinder and Defendant Gressett. On October 26, 2010, a bench trial was held on this matter. At the conclusion of the bench trial, the Court

granted judgment as a matter of law to Defendant Gressett as to the fraud claim. Based on the evidence presented at the bench trial, the following constitute findings of fact and conclusions of law.

## I.     FINDINGS OF FACT

CoStar provides commercial real estate information through its Internet website. CoStar's website has a database that includes photographs of real property and enables its users to find property for sale or rent. CoStar hires field researchers to gather this information and to take photographs of the properties and registers the photographs for copyright protection.

CoStar offers a variety of products, including the COMPS® database. CoStar licenses its subscription-only products to a given business pursuant to the terms of a written license agreement. Among other provisions, the license agreement provides that a certain number of designated individuals who work for the company may be "Authorized Users" of one or more of the CoStar subscription-only products. Authorized Users are limited to those persons who are actually employees of a company, or independent contractors working exclusively for that company. Authorized Users of CoStar's products are required to enter a user name and password to access those products. Authorized Users can be permitted to use CoStar's products on a single computer. In order to access CoStar, a user must select a link to accept the Terms of Use upon the first use and at periodic intervals throughout the term of the user's license with CoStar. Among other things, the Terms of Use prohibit Authorized Users from sharing login information with unauthorized users and from providing unauthorized users with access to the CoStar database. Moreover, the Terms of Use provide that only Authorized Users may access the database. The Terms of Use define an Authorized User as an individual who is employed with or

is an independent contractor for a CoStar customer and who is listed as a user under a License Agreement with CoStar.

The Terms of Use in effect during the relevant time period stated that:

> Only Authorized Users for a Passcode Protected Product may access such product and they may access it solely using the user name, password and, if applicable, key token (collectively, the "Passcodes") assigned to such user by CoStar. No Authorized User may share his Passcodes with any other person, nor may an Authorized User allow any other person to use or have access to his Passcodes. An Authorized User is defined as an individual (a) employed by a CoStar Client or an Independent Contractor (as defined below) of a CoStar Client at a site identified in the License Agreement, and (b) who is specified in the License Agreement as a user of a specific Passcode-Protected Product. An "Independent Contractor" is defined as an individual person working solely for the CoStar Client and not another company with real estate information needs and performing substantially the same services for such CoStar Client as an employee of such CoStar Client.
>
> * * *
>
> Notwithstanding anything to the contrary herein, you shall not:
>
> (1) Access any portion of a Passcode-Protected Product unless you are an Authorized User for such Passcode-Protected Product using the Passcodes assigned to you by CoStar to access the components and services of the Passcode-Protected Product that your License Agreement authorizes you to access, subject to the terms contained therein and in these Terms of Use.
>
> * * *
>
> You shall not . . . distribute, disclose, copy, reproduce, display, publish, transmit, assign, sublicense, transfer, provide access to, use or sell, directly or indirectly (including in electronic form) any portion of the Product.

CoStar maintains extensive records related to a users' use of CoStar. For example, CoStar is able to track each user's access to its database by recording, among other things, the IP address, which is an identifying number associated with a specific computer that displays when a computer accesses a website. CoStar logs the IP address of the user, the time

and date of the user's access, the database the user accessed, as well as the number of pages the user visits and the identity of all property records retrieved from CoStar's database – designated by CoStar's property identification number. CoStar maintains session histories, which list the properties that were accessed by each user during login sessions. When a user "saves" a report of the results of a search conducted on CoStar's website, CoStar's computers also maintain a copy of that report, including the IP address from which the report was requested, the user name making the request, when the reports were saved, and other similar information.

### A. Breach of Contract

CoStar entered into a license agreement with Mark Field, doing business as Alliance Valuation Group ("Alliance"), on June 24, 2002. The license agreement covered CoStar's COMPS® commercial real estate database, and the fee was for approximately $5,000 per month. Alliance identified 11 Authorized Users under the 2002 license agreement. The persons identified by Alliance during the course of the 2002 contract included Mark Field himself, Brad Christensen, who was identified as a user in October 2002, and Russ Gressett, who was identified as a user in April 2004. The 2002 agreement contained standard Terms & Conditions; it did not contain any special clauses that allowed re-licensing.

CoStar entered into a superseding license agreement with Alliance on November 18, 2004. This license agreement also included a National COMPS® license in addition to the COMPS® commercial real estate database. Alliance identified 11 Authorized Users under the 2004 agreement. Russ Gressett and Brad Christensen were identified as "Authorized Users" on the 2004 agreement. Gressett was listed as an "Appraiser" and identified with an Alliance phone number.

Both Brad Christensen and Russ Gressett would have had to agree to CoStar's

Terms of Use in order to be able to access CoStar's services.  On December 12, 2005, Christensen's account with CoStar was deleted after Field told CoStar that Christensen had "moved" and was no longer at Alliance.  Both Brad Christensen and Russ Gressett would have had to agree to CoStar's Terms of Use in order to be able to access CoStar's services.  The 2004 agreement between Alliance Valuation Group and CoStar contained the following language:

> The Licensed Product may be used by no more than the number of users set forth on the Subscription Form, and except as set forth below, only at the site(s) specifically identified herein.  All of such users (the "Authorized Users") must be individuals (1) employed by Liscensee or an "Independent Contractor" is defined as an individual person performing substantially the same services for Liscensee as an employee of Liscensee.

### i. Gressett

Defendant Russ Gressett is "a commercial real estate broker and appraiser residing in the Houston, Texas, area" and is doing business under two names, TGC Realty Counselors and National Valuation Group-Houston.    Alliance identified Gressett as an Authorized User under its 2002 License Agreement with CoStar on April 9, 2004.  Alliance provided CoStar with a California address and telephone number on the form used to obtain mobile access to the CoStar database for Gressett.   Gressett was involved in Alliance through a national alliance with several small appraisal companies.  The small appraisal companies developed a website and marketing material under the business name of National Valuation Group.   Both Gressett and Alliance were associated with National Valuation Group, thus part of the same alliance that began working together in late 2001/early 2002.

Russ Gressett had no affiliation with Alliance.  At no time was Russ Gressett an employee or an independent contractor of Alliance.  Gressett never entered into a license with CoStar.  Gressett was not an "Authorized User" under CoStar's agreements with Alliance and his access to CoStar's products was a breach of CoStar's Terms of Use.

Gressett was purchasing access to CoStar from Alliance for his own business, TGC Realty Counselors or National Valuation Group-Houston. CoStar sent an email to Gressett instructing him on how to use his account. That email stated, *inter alia*, "No Authorized User may share their assigned passcodes with any other person, nor allow any person to have access to their passcodes." Gressett agreed to CoStar's Terms of Use, which specifically prohibited the use of CoStar by unauthorized users and the sharing of user names and passwords.

Gressett admitted to accessing CoStar, although he did not qualify as an Authorized User under an existing License Agreement with CoStar. The IP address 67.67.88.75 belonged to Gressett. Gressett accessed CoStar's subscription database from April 2004 to February 2008 (47 months). During that time, Gressett reproduced at least 36 of CoStar's copyrighted works. The monthly rate that Gressett would have been required to pay for CoStar's national COMPs ® service is $2,500. CoStar licenses for year-long commitments. Had Gressett signed up for access when he started accessing CoStar, he would have had to pay for four full years, for a total of 48 months.

Gressett provided access to the CoStar database to other third parties, namely QVAL Property Advisors ("QVAL"), Steve Bilicek ("Bilicek"), Gerald A. Teel Co. ("Teel"), and Situs Companies ("Situs") for various fees. Gressett's login information was being used from a large number of IP addresses. Several of the IP addresses belonged to third parties, including QVAL, Teel, Situs, and Bilicek.

Teel had access to CoStar from July 2004 to February 2008 (44 months). CoStar for During the 44 months of access, Teel reproduced at least 10 of CoStar's copyrighted works. QVAL had access to CoStar from July 2004 to February 2008 (44 months). During the 44 months of access, QVAL reproduced at least 10 of CoStar's copyrighted works. Situs had

access to CoStar from May 2004 to February 2008 (46 months). Bilicek had access to CoStar for approximately 48 months. The monthly rate that QVAL would have been required to pay for CoStar's national COMPS® service is $4,150. The monthly rate that Teel would have been required to pay for CoStar's national COMPS® service is $1,650. The monthly rate that Situs Co. would have been required to pay for CoStar's national COMPS® service is $3,487. The monthly rate that Bilicek would have been required to pay for CoStar's national COMPS® service is $2,500.

When Gressett provided access to the CoStar databases to third parties, the third parties would call Gressett, and Gressett would read the number off of the key token. The first time Gressett logged on to CoStar's database, and at periodic intervals thereafter, Gressett was required to select "Agree" button to the Terms of Use before CoStar's system would permit him to enter the database. Had Gressett told CoStar that he was not an employee or independent contractor of Alliance (and was therefore an unauthorized user), or that he was sharing licenses with third parties, CoStar would have ended his access immediately. CoStar's minimum license terms for its COMPs services are one year in length.

### ii. Pathfinder

Defendant Pathfinder provides mortgage services to real estate customers. Pathfinder has now ceased business operations. Pathfinder was a business client of defendant Mark Field, trading as Alliance Group. Pathfinder never entered into a formal license agreement with CoStar. CoStar/Alliance License Agreement listed Brad Christensen, who is the 46% owner, president, and former manager of Pathfinder, as an employee of Alliance and an Authorized User.

Brad Christensen was not an employee or an independent contractor of Alliance, from at least December 12, 2005 through March 31, 2008. In 2008, CoStar investigated the IP addresses associated with the Alliance account. Using the login history database, CoStar was able to see that the Alliance account was being accessed from multiple IP addresses, including at least two addresses assigned to Pathfinder, 64.60.12.210 and 64.60.231.251.

From the initial set up of the Brad Christensen account in 2002 and until the Christensen user account was terminated in December 12, 2005, Brad Christensen or someone else at Pathfinder accessed the Christensen user account through a computer located at the IP addresses 64.60.12.210 and 64.60.231.251. No other user account assigned to Alliance had usage from those IP addresses prior to December 19, 2005. CoStar's database records show that computers using Pathfinder's IP addresses accessed the property records by creating reports that included such properties. Field's account was being used simultaneously, or almost simultaneously, from Pathfinder's computers and Field's own computers.

Pathfinder's unauthorized access through the Mark Field account began in at least December 2005. Alliance's access was terminated by CoStar in February 2008. Pathfinder therefore had access for 26 months through the Mark Field user account. During the 26 months of access, Pathfinder reproduced at least 20 of CoStar's copyrighted works through the use of the CoStar service. CoStar owns the copyrights to the photos that Pathfinder accessed. CoStar licenses for year-long commitments. Had Pathfinder signed up for access when each third party started accessing CoStar, it would have had to pay for three full years for a total of 36 months. Pathfinder would have paid $12,170 per month for national COMPS ® access. The first time Pathfinder logged on to CoStar's database, and at periodic intervals thereafter, Pathfinder was

required to select the "Agree" button to the Terms of Use before CoStar's system would permit him to enter the database.

## II. CONCLUSIONS OF LAW

### a. Direct Copyright Infringement: Gressett and Pathfinder are Liable for Direct Copyright Infringement

To prove a successful claim for copyright infringement, the Plaintiff must prove that it 1) its ownership of a valid copyright and 2) that Gressett and Pathfinder copied protected elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "The copies of webpages stored automatically in a computer's cache or random access memory ("RAM") upon a viewing of the webpage fall within the Copyright Act's definition of 'copy.'" *Ticketmaster L.L.C. v. RMG Technologies, Inc*., 507 F.Supp.2d 1096, 1105 - 1106 (C.D. Cal. 2007), citing *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 519 (9th Cir.1993) ("We recognize that these authorities are somewhat troubling since they do not specify that a copy is created regardless of whether the software is loaded into the RAM, the hard disk or the read only memory ('ROM'). However, since we find that the copy created in the RAM can be 'perceived, reproduced, or otherwise communicated,' we hold that the loading of software into the RAM creates a copy under the Copyright Act.").

CoStar owns the copyrights that Pathfinder and Gressett allegedly infringed. Gressett and Pathfinder violated CoStar's exclusive right to reproduce its copyrighted works. Gressett directly infringed 36 of CoStar's copyrights as a result of his unauthorized access to and reproduction of CoStar copyrighted photographs. Pathfinder directly infringed 20 upon CoStar's copyrights as a result of his unauthorized access to and reproduction of CoStar copyrighted photographs. The Court finds that the issue of whether Gressett and Pathfinder's conduct was willful presents a close question. However, the Court is not willing to find that these defendants

knew that their use of CoStar's services was wrongful and that they recklessly disregarded the facts that demonstrated their conduct violated CoStar's rights. Therefore, the Court finds that neither Gressett's nor Pathfinder's acts of copyright infringement were willful.

### b. Breach of Contract: Pathfinder is Liable for Breach of Contract

Under Maryland law, to prevail on a breach of contract claim, the Plaintiff must show that Pathfinder owed CoStar a contractual obligation and breached that obligation. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Non-licensed parties are bound by the forum selection contained in an enforceable online term of use agreement. *See Motise v. America Online*, *Inc.*, 346 F. Supp. 563, 566 (S.D.N.Y. 2004). "[F]ailure to read an enforceable online agreement, 'as with any binding contract, will not excuse compliance with its terms.'" *CoStar Realty Info.,Inc. v. Field*, 612 F.Supp. 2d 660, 669 (citing *Burcham*, 2009 WL 586513, at *2). When Pathfinder clicked "Accept" to the Term of Use on CoStar's online database, a valid contractual obligation was established between Pathfinder and CoStar. Pathfinder breached its contractual obligation when it accessed CoStar as an unauthorized user.

### III. DAMAGES FOR BREACH OF CONTRACT

#### a. Gressett

The measure of damages for breach of contract under Maryland law is CoStar's expectation interest as measured by (a) the loss in value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or loss that he avoided by not having to perform. *See David Sloan*, *Inc. v. Stanely G. House & Associates, Inc.*, 311 Md. 36, 42, 532 A.2d 694, 697 (Md. 1987). CoStar has suffered damaged in the amount of $120,000 based on Gressett's use

of CoStar's national COMPS ® service at a monthly rate of $2,500 ($2,500 multiplied by 48 months).

Gressett provided QVAL, Situs, Teel, and Bilicek access to CoStar's services in violation of CoStar's Terms of Use. CoStar provided Teel with access to CoStar's National COMPS service in violation of the Terms of Use for 44 months. The monthly rate that Teel would have been required to pay for CoStar's national COMPS ® service was $1,650. As CoStar licenses for year-long terms, had Teel signed up for access to National Comps when it started accessing CoStar through Gressett's password, it would have had to pay for four years of service. Therefore, CoStar's lost profits from Gressett's act of allowing Teel to use his password to access CoStar's database is $79,200 ($1,650 multiplied by 48 months).

Gressett provided Situs with access to CoStar's National COMPS service in violation of the Terms of Use from May 2004 to February 2008 (46 months). The monthly rate that Situs would have been required to pay for to access CoStar's National COMPS ® service is $3,400. Because CoStar licenses for year-long commitments, had Situs signed up for access to National COMPS when it started accessing CoStar through Gressett's passwords, it would have had to pay for four full years for a total of 48 months. The lost profit to CoStar from Situs' unpaid access to CoStar's service was $163,200 ($3,400 per month, multiplied by 48 months).

CoStar has suffered damages in the amount of $200,880 (the lost value to CoStar) based on QVAL's use of CoStar's national COMPS ® service at a monthly rate of $4,185. As CoStar licenses for year-long commitments, if QVAL had signed up for access it started accessing through CoStar through Gressett's password, it would have had to pay for four years of service, for a total of 48 months.

Gressett provided Bilicek with access to CoStar's National COMPS service for at least 38 months. The monthly rate that Bilicek would have been required to pay for CoStar's national COMPS® service is $2,500. Because CoStar licenses for year-long commitments, had Bilicek signed up for access to National COMPS when it started accessing CoStar through Gressett's password, it would have had to pay for four full years for a total of 48 months. Therefore, CoStar suffered damages in the amount of $120,000 based on Bilicek's use of CoStar's national COMPS ® service at a monthly rate of $2,500. The total amount of damages incurred as a result of Gressett's breach of contract is **$683,280** ($120,000 for Gressett's access, $280,880 for QVAL's access, $79,200 for Teel's access, and $120,000 for Bilicek's access).

### b. Pathfinder

Pathfinder's unauthorized access through the Mark Field account began in at least December 2005. Alliance's access was terminated by CoStar in February 2008. Pathfinder had access for 26 months through the Mark Field user account. The monthly rate that Pathfinder would have been required to pay to subscribe to National COMPS ® service is $12,170. As CoStar licenses for year long commitments, Pathfinder would have been required to pay for 3 years of service, for a total of 36 months. Therefore, CoStar has suffered damages in the amount of **$438,120** as a result of Pathfinder's breach of contract in the use of CoStar's National COMPS ® service at a monthly rate of $12,170.

### IV. Damages on Direct Copyright Infringement Claims

### a. Gressett

CoStar has suffered damages for direct copyright infringement by Gressett. The amount of damages for direct copyright infringement are subject to an election by CoStar as follows:

1. Actual damages in the amount of **$120,000** based on Gressett's use of CoStar's National COMPS ® service at a monthly rate of $2,500; OR

2. Statutory damages in the amount of $3,000 per each of the 36 works infringed by Gressett, for a total damage award of **$108,000**.

### b. Pathfinder

CoStar has suffered damages for direct copyright infringement by Pathfinder. The amount of damages for direct copyright infringement are subject to an election by CoStar as follows:

1. Actual damages in the amount of **$438,120** based on Pathfinder's use of CoStar's National COMPS ® service at a monthly rate of $12,170; OR

2. Statutory damages in the amount of $3,000 per each of the 20 works infringed Pathfinder, for a total damage award of **$60,000**.

### CONCLUSION

An order consistent with this memorandum opinion will follow.


Date:  December 20, 2010                                          /s/
                                                        Alexander Williams, Jr.
                                                        United States District Court